## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, an unincorporated association; Henry Reuss Federal Plaza Suite 300 310 Wisconsin Ave Milwaukee, WI 53203 | ) ) ) ) ) ) ) |  |
| DAVID AGATSTEIN; Suite 500 800 E. Colorado Avenue Pasadena, CA 91101 | ) ) ) ) ) |  |
| KARL ALEXANDER; 6 Suburban Court Morgantown, WV 26505 | ) ) ) ) | Case No. _____ |
| JON R. HUNT; Suite 200 1305 Navaho Drive Raleigh, NC 27609-2513 | ) ) ) ) ) |  |
| JOHN K. KRAYBILL; 2301 West 22nd Street, Suite 201 Oak Brook, IL 60523 | ) ) ) ) |  |
| JAMES NORRIS; Market Square Center, Suite 400 Indianapolis, IN 46204-2510 | ) ) ) ) |  |
| CHERYL RINI; U.S. Bank Centre 1350 Euclid Avenue, Suite 700 Cleveland, Ohio 44115 | ) ) ) ) ) | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| and EDWIN SHINITZKY, Equity Office Building, Suite 900 200 West Adams Street Chicago, IL 60606 | ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |

```
v.                                          )
                                            )
UNITED STATES OFFICE OF PERSONNEL           )
MANAGEMENT:                                 )
1900 E Street, NW                           )
Washington, DC  20415-9700                  )
                                            )
and LINDA M. SPRINGER,                      )
Director of the United States Office of Personnel  )
Management,                                 )
Room 6551                                   )
1900 E Street, NW                           )
Washington, DC  20415-9700                  )
                                            )
Defendants.                                 )
_____)
```

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1.      Plaintiffs, the Association of Administrative Law Judges ("AALJ") and individual

federal Administrative Law Judges, bring this action for declaratory and injunctive relief

challenging certain final regulations issued by the Office of Personnel Management ("OPM") on

March 20, 2007, and effective on April 19, 2007.  In an unprecedented and unwarranted action,

the rule, to be codified in 5 C.F.R. § 930.204 ("Final Rule"), effectively establishes a requirement

that incumbent Administrative Law Judges maintain active bar status.  The Final Rule constitutes

an improper and unlawful attempt to amend, indirectly, the Administrative Procedure Act's

("APA") guarantees, checks and balances that for 60 years have well-governed the federal

administrative process.  As there is no statutory basis for the Final Rule, OPM exceeded its

authority by issuing it.  The Final Rule also is arbitrary, capricious and not otherwise in

accordance with the law.  Furthermore, the Final Rule is not rational in light of the record before

OPM when it promulgated the Rule. Finally, because the public was not given notice and an opportunity to comment on studies and surveys relied upon by OPM in promulgating the Final Rule, the rule-making process was legally defective. Accordingly, Plaintiffs request that the Court set aside the Final Rule and declare it null and void.

### Jurisdiction

2.      This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et. seq.* APA Section 704 provides a right to judicial review of all "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. The issuance of the Final Rule satisfies this jurisdictional threshold.

3.      The Court also has jurisdiction over the agency's actions pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the ... laws ... of the United States." The Court may issue a declaratory judgment in this case pursuant to the provisions of the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

### Parties

5.      Plaintiff Association of Administrative Law Judges ("AALJ"), an unincorporated association affiliated with the International Federation of Professional and Technical Engineers ("IFPTE"), AFL-CIO, is the certified bargaining representative of more than 1,000 federal Administrative Law Judges ("ALJs" or "Judges") who adjudicate cases involving the Social Security Administration ("SSA") and the United States Department of Health and Human Services ("HHS"). Any ALJ appointed pursuant to the statutory provisions contained in 5 U.S.C. § 3105 and employed by the federal government as an ALJ in a bargaining unit represented by

the AALJ is eligible for membership in the AALJ.  The AALJ also grants associate membership to ALJs not in bargaining units represented by AALJ.

6.      The ALJs represented by AALJ maintain offices and adjudicate cases throughout the United States and several ALJs maintain offices and adjudicate cases in this judicial district.

7.      The purposes of the AALJ are to (a) preserve, promote, and improve the guarantees and protections provided by the United States Constitution, the Administrative Procedures Act, the Social Security Act and all other Federal laws; (b) to preserve, promote, and improve the working conditions of Administrative Law Judges; (c) to preserve promote, and improve the professionalism and competence of Administrative Law Judges by insuring opportunities for continuing professional education and training; and (d) to preserve, promote, and improve the rights of its members through collective bargaining, political action and all other lawful concerted activities.

8.      Plaintiff David Agatstein is a current ALJ employed by SSA and a member of AALJ.  Judge Agatstein was appointed an ALJ in 1991 and has served as an ALJ continually since his appointment.

9.      Plaintiff Karl Alexander is a current ALJ employed by SSA and a member of AALJ.  Judge Alexander was appointed an ALJ in 1997 and has served as an ALJ continually since his appointment.

10.     Plaintiff Edwin Shinitzky is a current ALJ employed by SSA and a member of AALJ.  Judge Shinitzky was appointed an ALJ in 1995 and has served as an ALJ continually since his appointment.

11.     Plaintiff Jon R. Hunt is a current ALJ employed by SSA and a member of AALJ. Judge Hunt was appointed an ALJ in 1990 and has served as an ALJ continually since his appointment.

12.     Plaintiff John K. Kraybill is a current ALJ employed by SSA and a member of AALJ.  Judge Kraybill was appointed an ALJ in 1994 and has served as an ALJ continually since his appointment.

13.     Plaintiff James Norris is a current ALJ employed by SSA and a member of AALJ. Judge Norris was appointed an ALJ in 1990 and has served as an ALJ continually since his appointment.

14.     Plaintiff Cheryl Rini, is a current ALJ employed by SSA and a member of AALJ. Judge Rini was appointed an ALJ in 1995 and has served as an ALJ continually since her appointment.

15.     Defendant Linda M. Springer is the Director of the United States Office of Personnel Management.

16.     Defendant United States Office of Personnel Management ("OPM") is an Independent Agency of the United States Government that sets eligibility standards for the civil service of the federal government.  OPM's headquarters and the administrative officers responsible for the issuance of the final rule are located in this judicial district.

## History of the ALJ Program

17.     As part of the statutory scheme designed to improve and professionalize the federal administrative processes, federal ALJs are appointed and serve pursuant to the Administrative Procedure Act (APA), 60 Stat. 237 (June 11, 1946).  The original Act was

repealed by Pub. L. No. 89-554, 80 Stat. 381 (September 6, 1966) and its provisions were

codified and incorporated into the following sections of Title 5 of the United States Code: 5

U.S.C. §§ 551-559, 701-706, 1305, 3105, 3344, 5372 and 7521.

18.     Regulations appearing in 5 CFR Part 930 governing the appointment, pay and

removal of ALJs serving the federal departments and agencies were first published by the former

Civil Service Commission ("CSC") in 1947 subsequent to enactment of the APA of 1946 (60

Stat. 237).  12 Fed. Reg. 6321 (September 23, 1947).

19.     The Civil Service Reform Act ("CSRA") of 1978 amended the APA to delegate to

OPM the responsibility for the examination and appointment of applicants to federal ALJ

positions and for prescribing of pay rates of ALJs. 5 U.S.C. §§ 1104(a)(1), 1305.  In order to

ensure and protect the decisional independence of the ALJs, it also exempted ALJs from specific

agency performance appraisal processes and transferred to the Merit Systems Protection Board

("MSPB") responsibility for any removal or reduction in pay of ALJs.  5 U.S.C. §§ 1305, 7521.

20.     5 U.S.C. § 3105 provides:

> Each agency shall appoint as many administrative law judges as are necessary for
> proceedings required to be conducted in accordance with sections 556 and 557 of
> this title.  Administrative law judges shall be assigned to cases in rotation so far as
> practicable, and may not perform duties inconsistent with their duties and
> responsibilities as administrative law judges.

21.     ALJs appointed under Section 3105 enjoy a unique and protected status in the

federal administrative system because they are the only federal administrative adjudicators

appointed after a rigorous merit selection process and the only ones with statutorily-protected

decisional independence and tenure.  Pursuant to 5 U.S.C. § 7521, ALJs appointed pursuant to 5

U.S.C. § 3105 are accorded APA protections so as to ensure judicial independence.  Under this

provision, ALJs may be removed, suspended, reduced in pay or grade or furloughed by an agency only after "good cause" is established and determined by the MSPB after a hearing on the record.

22.    "Good cause" generally requires conduct or actions by an ALJ that undermine the confidence in the administrative adjudicatory process.  *SSA v. Davis*, 19 M.S.P.R. 279, 282 (1984), *aff'd*, 758 F.2d 661 (Fed. Cir. 1984).  Other categories of "good cause" include misconduct or incompetence, insubordination, physical incapacity, violation of statute or regulation, performance during adjudicatory proceeding, and low productivity.  See, M. Asimow, *A Guide to Federal Agency Adjudication* (2003), Chpt. 10.   If a disciplinary action by an agency is arbitrary, politically motivated, or based on a reason that constitutes an improper interference with the performance by an ALJ of his or her judicial functions, there is no good cause.  A charge based on "efficiency of the service" will also not satisfy the requisite burden.  *Id.*

23.    In *Butz v. Economou,* 438 U.S. 478, 513-14 (1978), the U.S. Supreme Court defined the role of federal ALJs as follows:

> There can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is "functionally comparable" to that of a judge. His powers are often, if not generally, comparable to those of a trial judge: He may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions. See § 556 (c). More importantly, the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency. ... [t]he Administrative Procedure Act contains a number of provisions designed to guarantee the independence of hearing examiners. They may not perform duties inconsistent with their duties as hearing examiners.  5 U.S.C. § 3105 (1976 ed.). When conducting a hearing under § 5 of the APA, 5 U.S.C. § 554 (1976 ed.), a hearing examiner is not responsible to, or subject to the supervision or direction of, employees or agents engaged in the performance of investigative or prosecution functions for the agency. 5 U.S.C. § 554 (d)(2) (1976 ed.). Nor may a hearing examiner consult any person or party, including other agency officials, concerning a fact at issue in the hearing, unless on notice and

opportunity for all parties to participate. § 554 (d)(1). Hearing examiners must be assigned to cases in rotation so far as is practicable. § 3105. They may be removed only for good cause established and determined by the Civil Service Commission after a hearing on the record. § 7521. Their pay is also controlled by the Civil Service Commission.

24.     In order to achieve its statutory purpose, the APA creates a "comprehensive bulwark" to protect ALJs from agency interference.  The independence granted to federal ALJs was designed by Congress to maintain public confidence in the essential fairness of the process through which claims by individuals aggrieved by agency action are adjudicated.  *Nash v. Califano*, 613 F.2d 10, 20 (2nd Cir. 1980).  The statutory framework mandates that ALJs are to function as independent and impartial adjudicators in the federal administrative process.  The ALJ is the only independent and impartial adjudicator available to an aggrieved party in the federal administrative process.  As such, the ALJ is potentially the only person who stands between the claimant and agency administrative whim or bias.

25.     In general, standards of conduct for federal employees are established by the Office of Government Ethics ("OGE").  Individual agencies may supplement standards of conduct for their employees and specify training for ALJs.  SSA outlined an ALJ's duties and responsibilities in the *ALJ Administrative Handbook*.  The *ALJ Administrative Handbook* addresses "Standards of Conduct" and "Outside Activities" including an explicit restriction on the practice of law.  SSA's ALJ *Administrative Handbook* specifically states:

> The SSA Guide on Employee Conduct contains restrictions against the practice of law, or other activities where an Administrative Law Judge may be involved as an advocate or participant in controverted legal matters.  Part VII, section I.  By analogy, Canon 4 of the American Bar Association's Code of Judicial Conduct states that a judge should regulate his or her extra-judicial activities to minimize the rise of conflict with Judicial duties.  The ABA Code of Judicial Conduct also

8

restricts fiduciary interpersonal relationships and absolutely prohibits the practice
of law by judges.  Canon 4 sections E. And G., respectively.

*ALJ Administrative Handbook*, SSA, OHA, SSA Pub. No. 70-045 (May 1994), pp. 29-30.

(Attached hereto as Exhibit 1).

26.    Canon 4(G) of the Code of Judicial Conduct, adopted by the American Bar

Association ("ABA") in 1990, also provides that a "judge shall not practice law."  The ABA's

Code of Judicial Conduct is the most acknowledged source of judicial ethics and has been

applied by the Office of Personnel Management to federal administrative law judges.  *See In the*

*Matter of Chocallo*, 1 M.S.P.R. 605 (1978), *aff'd*, 1 M.S.P.R. 612 (1980).  The most recent ABA

Code of Judicial Conduct specifically includes ALJs and prohibits the practice of law by Judges.

### ALJs Were Never Required to Maintain Active Bar Status

27.    The APA and the CSRA contain no requirements, explicit or implicit, that require

incumbent ALJs to maintain active bar membership status.  Prior to the promulgation of the Final

Rule on March 20, 2007, none of the regulations under the APA required active bar membership

status for ALJs.  SSA's *ALJ Administrative Handbook* contains no requirement that ALJ

maintain active bar membership.

28.    On January 9, 1989, James R. Rucker, Jr., then SSA's Chief Administrative Law

Judge, speaking for SSA, issued a Memorandum specifically informing ALJs that OPM did not

require active bar membership after appointment as an ALJ.  The Memorandum noted that while

many states allow Judges, including SSA ALJs, to enter into inactive status, not all states have an

inactive category.   Acting in reliance on this Memorandum, many SSA ALJs allowed their bar

memberships to convert to inactive or other status. (Attached hereto as Exhibit 2).

9

29.     On or about August 11, 1994, OPM approved the current Position Description ("PD") for ALJs appointed by the SSA and it has not been substantively modified since that date. The SSA PD does not contain any requirement, implicitly or explicitly, that an ALJ maintain active bar membership after appointment as an ALJ. (Attached hereto as Exhibit 3).

30.     In 1998, Rhoda Lawrence, then OPM Assistant General Counsel, unlike the accepted understanding of ALJ requirements, suggested that it was OPM policy that all government attorneys must be currently authorized to engage in the practice of law and that such requirement applies not only as a qualification requirement for appointment to an attorney position but is a continuing requirement necessary to perform the ongoing duties of an attorney. As for Administrative Law Judges, Ms. Lawrence opined that ALJs must meet the same professional licensing requirements as attorneys and that the requirement for bar membership and eligibility to practice law "as an attorney" should remain in effect as a continuing requirement after an applicant is appointed to an ALJ position. Ms. Lawrence noted that "judicial" status may satisfy this requirement. (Attached hereto as Exhibit 4).

31.     In 2000, OPM conceded that Ms. Lawrence's opinion that bar membership and eligibility to practice law remained a continuing requirement for ALJs was "in error." On May 12, 2000, in response to a specific request from ALJ Bruce L. Birchman, OPM representative Armando Rodriguez confirmed to ALJ Birchman that ALJs were not required to maintain active bar membership after appointment. (Attached hereto as Exhibit 5).

32.     In a July 12, 2000 letter drafted to the State of Texas Board of Law Examiners, OPM Deputy Director Espinosa-Ross reiterated the accepted understanding of ALJ requirements and stated: "[p]rior to appointment as an Administrative Law Judge, applicants are required to be

duly licensed to practice law and be in 'active' status with their State Bar.  However, the

provisions of 5 CFR 930.201 *et seq* do not specifically state that current Administrative Law

Judges must maintain their 'active' status after their appointment as Federal Administrative Law

Judges."   (Attached hereto as Exhibit 6).

33.     On January 18, 2001, the SSA's Office of the Chief Administrative Law Judge

("OCALJ"), removed a Reminder from the OCALJ website concerning ALJ active bar

membership pending "further clarification on Bar Membership requirements from OPM.  Once

we get the necessary clarification we will include it in our Chief Judge Reminders."   No such

clarification was posted.  Upon information and belief, OPM never informed the OCALJ that

ALJs were required to maintain active bar membership after appointment.

### Rule-Making Process

34.     On December 13, 2005, OPM published its initial Notice of Proposed Rule-

Making ("NPRM"). 70 Fed. Reg. 73646 (Vol. 70, No. 238).   On December 21, 2005, OPM

republished its NPRM "due to information that was inadvertently omitted " from the December

13, 2005 NPRM.  70 Fed. Reg.  75745 (Vol. 70, No. 244)

35.     The December 21, 2005 NPRM proposed to revise the Administrative Law Judge

Program ("ALJ Program") with the stated objective of regulatory streamlining and reorganization,

removing obsolete pay system instructions, and clarifying OPM and agency  responsibilities.

Substantively, the proposed regulations purported to (1) modify the ALJ Examining System and

(2) impose a mandatory bar licensing requirement on incumbent ALJs as a condition of

continuing employment.

36.     In response to the NPRM, the AALJ, and other groups that represent ALJs,

submitted comments in opposition to the proposed regulations.  The commenters demonstrated

that OPM was incorrect in stating that active bar status was a long-standing requirement

applicable to incumbent Administrative Law Judges.  The commenters showed that active bar

status was never a requirement in any OPM published rule or regulation; is not set forth in a

Policy Statement and  is not a requirement of the Administrative Procedure Act. The commenters

also established that OPM lacked statutory authority  to promulgate such a policy under the APA

and that implementation of the Final Rule would conflict with the American Bar Association

Judicial Code of Conduct and may conflict with State licensing requirements.

37.     On March 20, 2007, OPM issued the Final Rule.  72 Fed. Reg. 12947 (Vol. 72, No.

053).  The Final Rule purports to "clarify" that active bar membership status (defined as being

duly licensed and currently authorized to practice law) is a continuing "condition of employment"

for any person serving as a federal ALJ (whether as an incumbent ALJ, a prior ALJ applying for

reinstatement or a retired ALJ serving in the Senior ALJ program).  In other words, ALJs could be

removed from their positions by OPM under the guise of the "condition of employment" standard

rather than through the specific MSPB requirements established by Congress in the 1978 revisions

to the Administrative Procedure Act.

38.     The Final Rule at 5 C.F.R. § 930.204(b) provides:

Licensure.  At the time of application and any new appointment and while serving
as an administrative law judge, the individual must possess a professional license
to practice law and be authorized to practice law under the laws of a State, the
District of Columbia, the Commonwealth of Puerto Rico, or any territorial court
established under the United State Constitution.  Judicial Status is acceptable in
lieu of "active" status in States that prohibit sitting judges from maintaining
"active" status to practice law.  Being in "good standing" is also acceptable in lieu

of "active" status in States where licensing authority considers "good standing" as having a current license to practice law.

39.    The final regulations also provides that:

[t]he failure at any time (applicant or incumbent)to meet a minimum qualification requirement means the individual is not qualified to perform the duties of the position.

72 Fed. Reg. 12947, 12948.

40.    The final regulations state that "as it is not a new requirement, a transition period is not needed." Accordingly, all ALJs must satisfy the requirements of the Final Rule as of the effective date, April 19, 2007, pursuant to this provision. 72 Fed. Reg. 12947, 12949.

41.    The Final Rule at C.F.R. §930.211(c)(1), purports to exempt OPM actions under 5 C.F.R. Part 731 from the provisions of 5 U.S.C. § 7521, which would circumvent the longstanding requirement that an agency establish good cause on the record during a hearing with the MSPB prior to the removal of, or other adverse action against, an ALJ.

**Impact of the Final Rule on Judges**

42.    The requirement that incumbent federal ALJs maintain active bar membership status subsequent to appointment to an ALJ position with a federal agency is a radical departure from previous regulations. Since the enactment of the APA in 1946, neither OPM nor the federal agencies appointing ALJs have required incumbent federal ALJs to maintain active bar membership status subsequent to appointment.

43.    Categories of bar membership vary widely from state to state. Most states allow ALJs to select "active," "inactive" or "judicial" status. Certain states, however, such as the

13

Commonwealth of Virginia, bar judges from maintaining active status. In these jurisdictions, Judges usually must select either "inactive" or "judicial" status.

44.     In all jurisdictions, an active bar status member is in good standing and authorized to practice law. Individuals in "inactive" or "judicial" status are also in good standing with the bar, but generally are not authorized to practice law.

45.     The requirements to maintain active bar membership vary widely from state to state. Most states, however, require active bar members to complete continuing legal education ("CLE") credit, maintain client security trust funds, and pay specified bar dues. Some states impose other requirements on active status members, such as compulsory *pro bono* requirements. For inactive or judicial members, these requirements are normally waived or reduced.

46.     ALJs are often assigned to, and adjudicate cases in, states other than the jurisdiction in which they are licensed. In some instances, CLE courses must be completed in the state of license rather than the state of residence. Application of such rules would create substantial hardship for affected ALJs by requiring them to travel to their state of license to satisfy CLE requirements.

47.     Based on earlier guidance from OPM and SSA, dating back to at least 1989, numerous incumbent ALJs ceased maintaining "active" bar status. Prior to the issuance of the Final Rule, these ALJs were never required to change their status. Many of these ALJs will be unable to come into "active" status prior to the effective date of the Final Rule because of CLE requirements, payment of dues, in some instances back dues for each year the ALJ was not active, or other obstacles to changing status, including bureaucratic processes of state bar associations

14

that may take months to complete.  In the most extreme cases, ALJs may have to retake the bar examination to convert to active status.

48.     Incumbent ALJs unable to become "active" by the effective date of the Final Rule are at risk of not meeting a purported "continuing requirement" of their position.  This risk is heightened by OPM's statement that ALJs failing to satisfy this continuing requirement are not qualified for their positions.  The ALJs are left in a position of not knowing whether they have an obligation to resign based on their failure to meet the Final Rule's requirements or whether OPM or an agency will take action to remove them from their positions.

49.     The Final Rule casts doubt on such Judges ability to schedule hearings, continue to adjudicate pending cases and issue opinions.  In addition, implementation of the Final Rule may put ALJs, who elected "inactive" or "judicial" status based on prior guidance, in jeopardy of being in conflict with state bar association rules.  The removal or forced resignation of an ALJ for the failure to comply with the Final Rule will cause irreparable harm to the ALJ, the impacted agencies and the general public.

## CAUSES OF ACTION

### Count I

### OPM Does Not Have the Authority to Promulgate the Final Rule

50.     Plaintiffs reassert and reallege the allegations contained in paragraphs 1 through 49 of this complaint as though contained herein.

51.     Section 706 of the APA authorizes a court to "set aside agency action, found to be ... (C)  in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights."  5 U.S.C. § 706(2)(C).

52.    OPM was delegated the authority regarding the selection and appointment of ALJs, including conducting competitive examinations for federal administrative law judge positions.

53.    Congress, however, never granted OPM the authority to regulate ALJ post-appointment conditions of employment of Administrative Law Judges in the manner contemplated by the Rule 930.204(b).

54.    In issuing the Final Rule, OPM's actions amount to a subterfuge to exercise unlawful control over ALJs in contravention of APA Section 11's prohibition of amendments to or modification of the Act other than by "express" Congressional Act.   Nothing in the plain language of 5 U.S.C. § 3105, "Appointment of administrative law judges," reasonably can be read to require ALJ active bar status for the duration of federal employment and to vest in OPM the responsibility to ensure that this requirement is realized.

55.    There is no statutory basis for OPM's promulgation of Final Rule 930.211(c).  This Rule is inconsistent with the statutory provisions of 5 U.S.C. § 7521 to the extent that it allows OPM to remove or otherwise take adverse actions against ALJ without establishing good cause during a hearing before the MSPB.

56.    The Final Rule is  inconsistent with the APA and beyond the authority Congress granted to OPM to administer the selection and appointment function.  As Congress did not expressly authorize OPM to regulate incumbent ALJs in the manner asserted, the assertion of the such authority by OPM is *ultra vires*.

## Count II

### The Final Rule is Arbitrary, Capricious and Not Rational in Light of the Record

57.    Plaintiffs reassert and reallege the allegations contained in paragraphs 1 through 56 of this complaint as though contained herein.

58.    Section 706 of the APA authorizes a court to "set aside agency action, found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

59.    In issuing the Final Rule, OPM asserted that the Final Rule promotes efficiency, will ensure that ALJs remain subject to a code of professional responsibility and is rationally related to the ALJ position.

60.    OPM failed to provide any example or basis that supports its assertion that the Final Rule "promotes efficiency."   Indeed, many ALJs do not currently satisfy the provisions of the Final Rule and there is absolutely no evidence that the lack of an "authorization to practice law" hinder the efficiency of such judges.

61.    OPM's assertion that the Final Rule will ensure that ALJs remain subject to a code of professional responsibility is devoid of merit.  ALJs are currently subject to the Code of Judicial Conduct adopted by the American Bar Association pursuant to a ruling by the MSPB. Furthermore, state bar associations generally may not discipline ALJs for actions in their capacity as ALJs.  To the extent that ethics rules of state bar associations apply to ALJs, these rules are as applicable to "inactive" and "judicial" bar status individuals as they are to active bar status individuals.

62.     The requirement that incumbent ALJs remain "duly licensed and authorized to practice law" is not rationally related to the duties of an ALJ.  Nothing in an ALJs' duties requires an ALJ to be authorized to practice law.  Indeed, ALJs are specifically prohibited from engaging in the practice of law.

63.     The Final Rule concedes that some jurisdictions prohibit ALJs from maintaining "active" status to practice.  The Final Rule allows ALJs licensed in such jurisdictions to merely be in "good standing" rather than "active" status.  It is arbitrary and capricious to mandate that some ALJs must maintain active bar status while allowing other ALJs to simply be in "good standing."

64.     The Final Rule is arbitrary, capricious and an abuse of discretion.  Lacking any rational relationship with the duties, functions, decisional independence and special status of incumbent ALJs under the APA, the Final Rule will, if implemented, have a deleterious impact on ALJs and the subject agencies.

## Count III

### The OPM's Rule Making Was Defective

65.     Plaintiffs reassert and reallege the allegations contained in paragraphs 1 through 64 of this complaint as though contained herein.

66.     Section 706 of the APA authorizes a court to "set aside agency action, found to be ... (D) without observance of procedure required by law."   5 U.S.C. § 706(2)(D).

67.     Section 553 of the APA mandates that agencies provide notice of a proposed rule setting forth "either the terms or substance of the proposed rule or a description of the subjects and issues involved" and "give interested persons an opportunity to participate in the rule making

through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(b) & (c).

68.    "Studies and data" upon which the agency relies for its proposed rule must be submitted to the public for evaluation in order to ensure the opportunity for evaluation. *Chamber of Commerce of the United States v. SEC*, 443 F.3d 890 (D.C. Cir. 2006); *Prometheus Radio Project v. FCC*, 373 F.2d 372, 412 (3d Cir. 2004).  In other words, the APA prevents agencies from "relying on materials not in the rule-making record without affording an opportunity for public comment." *Chamber of Commerce,* 443 F.3d at 894.

69.    In the Final Rule, OPM for the first time asserted that the active status requirement was "professionally developed, is supported by a job analysis, and is rationally related to performance in the position to be filled."  72 Fed. Reg. 12948.  Nowhere in its proposed notice of rule-making did the agency defend the proposed rule on the basis of any job analysis or explain how an ALJ in active bar status would perform his or her job more competently or efficiently.

70.    To support its new position, OPM relied upon three job analyses conducted by OPM's Personnel Research Psychologists in 1990, 1999, 2002.  According to the agency, these reports were critical to the agency in showing that "Integrity/Honesty is fundamental for performing the duties of an administrative law judge."   More importantly, the OPM, for the first time, stated that the 2002 study "documents the usefulness and job-relatedness of requiring, as minimum qualifications, bar membership. . ." *Id.*  The 1990, 1999, and 2002 studies are not generally available and cannot be found on OPM's website or at any other readily available source.

19

71.     In relying on studies not mentioned in the proposed regulations and absent from public scrutiny, OPM deprived the commenters of the ability to assess the methodology and salience of the reports.  The commenters could not determine whether the reports actually equated "active status" to "bar membership" or whether agency officials simply made this inference. Commenters were deprived the opportunity to assess any link the reports forged between "Integrity/Honesty" for ALJs and active bar status, and how that link was established. OPM's reliance on such materials undermined the integrity of the rule-making process.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)     Enter a preliminary injunction staying implementation of the Final Rule mandating active Bar membership for ALJs;

(b)     Declare the Final Rule null and void;

(c)     Permanently enjoin OPM from requiring ALJs to maintain active bar membership;

(d)     Award Plaintiff attorneys' fees and costs in this matter under the Equal Access to Justice Act or any other applicable statute; and

(e)     Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,


 _/S/_  Robert H. Stropp, Jr.
Robert H. Stropp, Jr. D.C Bar #429737
Richard C. Welch, D.C Bar #485756
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 783-0010
Facsimile: (202) 783-6088


Attorneys for the Plaintiffs

April 18, 2007

# EXHIBIT 1

# ALJ Administrative
# HANDBOOK



Social Security Administration
Office of Hearings and Appeals
SSA Pub. No. 70-045
May 1994

8. You must not use in any manner in your outside activity, official case records or other material of a confidential nature which is intended for official use only.

9. You must not express or imply official approval or endorsement by SSA or the Department in the outside activity, in material generated by the activity, or in any advertising or promotional material.

10. You shall not use or permit the use of your official title or position in connection with your outside activity, except if your title or position is given to identify yourself as one of several biographical details and the title or position is given no more prominence than other significant biographical details.

11. You must give a disclaimer that you are speaking in your personal capacity and not as an official representative of the agency.  In connection with an article published in a scientific or professional journal, you may use or permit the use of your title or position, provided the title or position is accompanied by a reasonably prominent disclaimer satisfactory to the agency stating that the views expressed in the article do not necessarily represent the views of the agency or the United States.

12. You must not make mention of your official title or affiliation with the Department, in conjunction with your outside activity.

13. You must not express or imply official approval or endorsement by SSA or the Department in the outside activity, in material generated by the activity, or in any advertising or promotional material.

14. You must not knowingly instruct persons on any particular matters pending before SSA/OHA.

15. You must not assist in the preparation of tax returns for self-employed individuals, or act as a representative for a taxpayer on any issue which may arise in connection with a tax return.

16. Under the DHHS Standards of Conduct, "[a]n employee shall not engage in outside employment or other outside activity not compatible with the full and proper discharge of the duties and responsibilities of his or her government employment or in violation of any specific provision of law."  45 C.F.R. 73.735-701(b) The SSA Guide on Employee Conduct contains restrictions

29

against the practice of law, or other activities where
an Administrative Law Judge may become involved as an
advocate or participant in controverted legal matters.
Part VII, section I.

By analogy, the American Bar Association's Code of
Judicial Conduct states at Canon 4 that a judge should
regulate his or her extra-judicial activities to
minimize the rise of conflict with Judicial duties.  The
ABA Code of Judicial Conduct also restricts fiduciary
interpersonal relationships and absolutely prohibits the
practice of law by judges.  Canon 4 sections E. and G.,
respectively.

**Political Activity (Hatch Act).**

On October 6, 1993, the President signed into law amendments
which effect the Hatch Act.  These amendments do not apply to
Administrative Law Judges and other high-level officials of
the Federal Government.  Therefore, the Hatch Act continues
to restrict political activities of some employees and
requires severe penalties for violation.  These restrictions
apply whether you are on active duty or on leave (with or
without pay).

**What You May Do.**  You may vote and discuss politics.  You may
also belong to a political club or make a contribution to a
campaign fund.  But, you may not take an active part in
political management or in political campaigns of a partisan
character.

Other permissible activities with regard to politics include
displaying political stickers on your private automobile,
writing to your Congressional Representative, signing
petitions (but not canvassing for signatures if the petition
is identified with partisan political management or
campaigns), and attending political rallies.

You may participate in a non-partisan election in which party
designation, nomination, and sponsorship are completely
absent.  You may be a candidate for office in such an
election, and you may hold the office after election if the
head of your agency decides in advance, that your holding
this office will not interfere with your Federal employment.

You may express your views publicly or privately about a
candidate or political issue.  However, you are restricted
from engaging in political activity in connection with a
question that is specifically identified with a National or
State political party.  Questions involving the governing of
your community are not within the prohibition.  Thus, you are
free to express your views and take action as an individual

# EXHIBIT 2



DEPARTMENT OF HEALTH & HUMAN SERVICES

Social Security Administration

Refer to:   S3GJ1

JAN 0 9 1989

Office of Hearings and Appeals
PO Box 3200
Arlington VA 22203

·MEMORANDUM TO:   Regional Chief Administrative Law Judges

FROM              :   Chief Administrative Law Judge

SUBJECT           :   ALJ Attendance at Continuing Legal Education
                      Courses - POLICY

## BACKGROUND

Over the past several months, we have had numerous inquiries regarding the Office of Hearings and Appeals (OHA) policy on allowing Administrative Law Judges (ALJs) to attend continuing legal education (CLE) courses during normal duty hours.

The Office of Personnel Management (OPM) does not require continued Bar membership once an individual is appointed to the ALJ position; however, we believe it is to the benefit of the ALJ that membership be maintained. Many states allow Judges, including SSA ALJs, to enter into inactive status while serving as Judges. We recognize that not all states have an inactive status category. Consequently, there will be instances in which an ALJ who desires to maintain Bar membership will be required to complete a certain number of CLE hours. The following guidelines and procedures have been developed to assist in determining under what circumstances ALJs may attend CLE during normal duty hours.

## POLICY GUIDELINES

In determining whether an ALJ will be allowed to attend CLE during normal duty hours, the following guidelines will be applied:

1.   An ALJ will not be allowed to attend CLE on duty time if any State in which he or she is a member of the Bar allows inactive status for ALJs.

2.   An ALJ will not be allowed to attend CLE on duty time if any State in which he or she is a member of the Bar does not require CLE for continued Bar membership.

Page 2

3.    An ALJ who is required to attend CLE for continued Bar
      membership will not be granted an excused absence to
      attend if the State Bar will accredit OHA-sponsored CLE,
      and such CLE is offered during the pertinent time period.

4.    If CLE credits are needed for continued Bar membership
      and #3 does not apply, an ALJ will be allowed to attend
      CLE on duty time providing other courses cannot be taken
      outside of normal duty hours.

## APPROVING AUTHORITY

You will have sole authority for deciding whether an ALJ may
attend CLE during normal duty hours without charge to leave.
The request must be made to you in writing, and be sent
through the Hearing Office Chief ALJ, who will make a
recommendation to you.  Attached at Tab A is a form that may
be used to request duty time attend CLE.  The request must be
submitted in sufficient time for you to make your decision
(i.e., as quickly as possible, but no less than three weeks
prior to the start of the course).  It is the responsibility
of the requesting ALJ to provide sufficient information on
which a decision can be based.  The request must establish
that:  the ALJ is not a member of at least one Bar which does
not require CLE; the State Bar does not accredit
OHA-sponsored CLE, or OHA has not provided an adequate number
of hours within the necessary time frame; and, other CLE
courses cannot be taken outside of normal duty hours.

It is your responsibility to determine whether an ALJ who has
requested permission to attend CLE during duty hours meets
the criteria.  If the criteria are not met, or if the ALJ has
not provided sufficient information on which to make a
decision, the request must be denied.  Requests denied by you
cannot be further appealed.  If the criteria are met, you may
grant a reasonable amount duty time to attend CLE.  In
deciding when to allow the ALJ to attend CLE during normal
duty hours without charge to leave, you must take into
consideration the workload of the hearing office and of the
ALJ making the request.  Approval does not normally involve
training costs, travel costs or travel time.

In the event that you do not approve the request to attend
CLE on excused absence, the ALJ may request annual leave;
such requests will be handled under established time and
attendance policies and procedures.

Page 3

These guidelines should be implemented immediately.  For your information, attached is a chart that may be used to assist you in making your decision (Tab B).  I also have attached information obtained from the American Bar Association showing which States currently require CLE.  Also identified are the State contacts for accrediting CLE (Tab C).

Because these procedures are new, we are asking that the Office of the Chief Judge be apprised as to the number of requests received and their disposition.  We are requesting that a copy of all requests (approved and denied) be forwarded to the Office of the Chief Judge, PO Box 1237, Arlington, Virginia  22203.  Regional Office questions may be referred to Bill Belanger of my staff at FTS 235-3500.  A separate memorandum has been sent to the ALJs, a copy of which is attached at Tab D.

James R. Rucker, Jr.

Attachments

# EXHIBIT 3

| POSITION DESCRIPTION | (Please Read Instructions on the Back) | | 1. Agency Position No. 66622 |
|---|---|---|---|

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |
|---|---|---|---|---|
| [X] Redescription  [ ] New  [ ] Reestablishment  [ ] Other | [ ] Hdqtrs. [X] Field | | | |

Explanation (Show any positions replaced)

| 7. Fair Labor Standards Act | 8. Financial Statements Required |
|---|---|
| [X] Exempt  [ ] Nonexempt | Executive Personnel [ ] Financial Disclosure    Employment and [X] Financial Interests |

| 10. Position Status | 11. Position is: | 12. Sensitivity | 13. Competitive Level |
|---|---|---|---|
| [X] Competitive | [ ] Supervisory | [X] 1-Non-Sensitive  [ ] 4-Special Sensitive | 935-AL-3 |
| [ ] Excepted (Specify in Remarks) | [X] Non-Supvry. | [ ] 2-Noncritical Sensitive  [ ] 5-Moderate Risk | 14. Agency Use |
| [ ] SES (Gen.)  [ ] SES (CR) | | [ ] 3-Critical Sensitive  [ ] 6-High Risk | |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | Administrative Law Judge (Licensing & Benefits) | AL | 935 | 3 | JF | 8/11/94 |
| b. Department, Agency or Establishment | | | | | | |
| c. Recommended by Supervisor or Initiating Office | Administrative Law Judge (Licensing & Benefits) | AL | 935 | 3 | JF | 8/11/94 |

| 16. Organizational Title of Position (if different from official title) | 17. Number of allocations  **V-1122 (per memo 6/16/94) |
|---|---|

| 18. Department, Agency or Establishment Social Security Administration | c. Third Subdivision Office of the Chief Administrative Law Judge, Office of the Regional Chief ALJ |
|---|---|
| a. First Subdivision Office of the Deputy Commissioner for Programs and Policy DCDAR, (per OCOSS 4-3-06) | d. Fourth Subdivision Hearing Offices |
| b. Second Subdivision Office of Hearings and Appeals | e. Fifth Subdivision |

| 20A. Supervisor Certification. I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that the false or misleading statements may constitute violations of such statutes and their implementing regulations. | 20B. Allocation Certification I certify that each incumbent will perform the grade controlling duties and responsibilities of this position for a substantial amount of time (i.e., 25% or more). |
|---|---|
| 20a1. Typed Name and Title of Immediate Supervisor Jose A. Anglada Chief Administrative Law Judge | 20b. Typed Name and Title of Delegated Authorizing Official for Non-Supervisory GS-14 and Below (Required) |
| Signature: /s/        Date: 8/3/94 | |
| 20a2. Typed name of higher level management concurrence (Optional if 20a1 is signed) Daniel L. Skoler Associate Commissioner | Signature        Date |
| Signature        Date: 8/3/94 | |

| 21. Classification/Job Grading Certification. I certify that this position has been classified/graded as required by Title 5, U. S. Code, in conformance with standards published by the Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards. |
|---|
| 21a. Typed Name and Title of Official Taking Action John Flannery Office of Personnel Management | 21b. Typed Name and Title of Delegated Authorizing Official for GS-15/SES |
| Signature /s/        Date: 8/11/94 | Signature        Date |

22. The standards, and information on their application, are available in the personnel office. Position Classification Standards Used in Classifying/Grading Position:

23. Remarks
The revised amendment to this position description which includes detailed administrative and managerial responsibilities of the Hearing Office Chief Administrative Law Judge (HOCALJ) is hereby approved. Position allocations: 1/44; 2/103; 3/122; 4/273; 5/186; 6/149; 7/49; 8/26; 9/141; 10/29 Total:1122 (per memo 6/16/94)

24. Description of Major Duties and Responsibilities (See Attached)

Form SSA-801 (October 2001)  (former OF-8)

**STANDARD POSITION DESCRIPTION**

OFFICE OF HEARINGS AND APPEALS
SOCIAL SECURITY ADMINISTRATION
**ADMINISTRATIVE LAW JUDGE (LICENSING AND BENEFITS)**
**AL-935-3**

I.    INTRODUCTION

Administrative law judges within the Department of Health and
Human Services, Social Security Administration, Office of
Hearings and Appeals, are located throughout ten geographically
dispersed DHHS regions, encompassing the entire United States and
Puerto Rico.  Administrative law judge offices are established in
approximately 135 offices throughout the nation.

Under the direct delegation from the Secretary of Health and
Human Services, and in the manner prescribed by the
Administrative Procedure Act, the administrative law judge holds
hearings and makes and issues decisions on appeals from
determinations made in the course of administration of Titles II,
XVI, and XVIII of the Social Security Act.  The basic types of
cases are:  (a) appeals by disability benefits under Title II;
(b) appeals under Title II involving entitlement of individuals
to old age and survivors' benefits; (c) appeals by individuals
involving eligibility for supplemental security income (Title
XVI) based on being aged, blind or disabled and meeting the needs
test; (d) appeals by hospitals and various health and care
institutions and agencies dissatisfied with the determination
that they do not meet the licensing and regulatory provisions
covering "Providers of Services" under Title XVIII; (e) appeals
by individuals from determinations involving entitlement and/or
amount of hospital services or medical and health services; and
(f) in addition, SSA ALJs also render determinations on HHS cases
falling outside the jurisdiction of SSA, such as those at the
Office of Health Finance Integrity, Office of the Inspector
General.  Since cases are assigned on a rotation basis, each
administrative law judge handles all types of cases regardless of
the degree of difficulty or complexity of the issues.

Administrative law judges' decisions are final decisions of the
Secretary unless subsequently reviewed as provided in the
regulations.  They
either affirm, modify, or reverse any previous determinations and
are issued and forwarded directly to the parties in the
administrative law judge's own name.

II.   DUTIES AND RESPONSIBILITIES

Under the provisions of Titles II, XVI and XVIII of the Social
Security Act and applicable Federal, State, and foreign laws, and
in conformity with the Administrative Procedure Act, and with
full and complete individual independence of action and decision,
and without review, the administrative law judge has full
responsibility and authority to hold hearings and issue decisions
as stated under the above Titles and (1) dismiss or allow
requests for hearings and rule on requests for extensions; (2)
identify problems and issues to be resolved; (3) analyze all
previously developed evidence and appraise previous licensing,
regulatory, and adjudicative processes by the administrative
agency; (4) determine whether there are other parties with
adverse interest to be joined in the case; (5) issue subpoenas
and rule on petitions to revoke subpoenas; (6) correlate and
resolve conflicting evidence; (7) hear testimony and rule on all
motions, petitions, or exceptions involving questions of law,
procedure, and the admissibility of evidence; (8) hold prehearing
conferences with the appellant and/or his counsel and the
government representative; (9) make all evidence of record
available to the parties and inform them of any evidence or
expert testimony required in connection with a material point or
issue; (10) administer oaths and affirmations; (11) govern the
conduct of the parties at the hearing, and in general regulate
the entire course of the proceedings; (12) control the
examination and cross-examination of witnesses; (13) introduce
into the record documentary and other evidence deemed necessary
for the completion or full development of the record; (14) hear
oral argument, and receive and consider briefs that are
submitted; (15) appraise the credibility of witnesses, and
resolve conflicts in lay and expert evidence; (16) consider and
dispose of proposed findings of fact and conclusions of law
submitted by the claimants or government representatives;
(17)make findings of fact on each issue, giving the reasons
therefore and render conclusions of law as sole trier of fact and
law; (18) fully consider all the evidence of record and issue
decisions within the requirements of the Administrative Procedure
Act, which decisions are completely independent and final, signed
only by him, and published to parties in interest without prior
review; and (19) entertain petitions for attorneys fees and issue
orders designating the amount of fee permitted.

The administrative law judge may also take other action not
inconsistent with the Administrative Procedure Act such as
perfecting a record or presiding at hearings and issuing
decisions in matters remanded by the Federal courts.

The incumbent may be assigned to act as Hearing Office Chief
Administrative Law Judge of a hearing office under general
direction of the Associate Commissioner, CALJ and RCALJ.  As
such, the incumbent would be responsible for the management of
the hearing office to which assigned, as well as for holding
hearings and making and issuing decisions on appeals pursuant to

the Social Security Act, as amended.  Such assignment, however, would be accomplished only with the approval of the incumbent, and would be subject to the duties, responsibilities and authorities set forth in the amendment, which is attached.

III.  <u>SUPERVISION AND GUIDANCE</u>

The Social Security and Administrative Procedure Acts prohibit substantive review and supervision of the administrative law judge in the performance of his quasi-judicial functions of holding hearings and issuing decisions.  His decisions may not be reviewed before publication and after publication only by the Appeals Council in certain prescribed circumstances.  He is subject only to such administrative supervision as may be required in the course of general office management.  His decision take into account all applicable Federal, State, and foreign laws, statutes, regulations, rulings, and decisions of the Federal courts.

In cases involving the licensing of "Providers of Services" under Title XVIII, the administrative law judge's decision can only be reviewed at the request of a party (the institution involved or the government).  In other cases, a decision can be reviewed at the request of a claimant, or by the Council on its own motion.  In any event, the Council takes jurisdiction only on a certiorari basis.  Final decisions of the administrative law judge may be appealed to the Federal courts, and the Social Security Act (Sec. 205(g)) requires that courts uphold the administrative law judge's finding of fact when supported by substantial evidence.

IV.  <u>SPECIAL KNOWLEDGE AND ABILITIES REQUIRED</u>

The administrative law judge must have expert knowledge of judicial practice; exceptional professional attainment; a capacity for analysis and articulation; the ability to balance important and conflicting considerations; a proven ability to assure a fair hearing; and be able to discharge effectively the responsibilities placed upon him for bringing all matters coming before him to a prompt and just final decision.  Inherent demands of the job include such characteristics as tact, poise, firmness, impartiality, diplomacy, originality, imagination, initiative, professional bearing, the ability to control the emotionalism of opposing counsel, claimants, witnesses, or other individuals whose conduct may threaten the orderly conduct of the proceedings; and he must posses the ability to meet novel and taxing legal problems.  The administrative law judge is required to appraise the issues promptly and thoroughly before any testimony is adduced.  If the pleadings are insufficient, the administrative law judge must have the necessary legal ability to take any and all action required to clarify the issues.  With the issues defined, he will exercise initiative in obtaining stipulations of fact.  Since, unlike a judge, an administrative

law judge has no contempt powers, poise and diplomacy in meeting
delicate situations are essential.

The administrative law judge must obtain a clear and concise
record, containing all relevent facts, while excluding all
immaterial matters, He must use judgment and initiative in the
calling of expert or other witnesses and in requesting either the
government representative or the appellants' counsel for evidence
on any medical, and economic factors involved is necessary in
order that the administrative law judge may develop a complete
record of the hearing.

The administrative law judge must be aware of current practices
in the fields of medical treatment, hospital administration,
costs on medical services, safety standards, and like matters in
order to render well informed and proper decisions in regulatory
and licensing proceedings under title XVIII.  His decisions have
a substantial impact upon the Administrations' policies and
procedures in this health insurance program in which there is a
great deal of public interest.

In the disability program under Title II, the administrative law
judge must decide cases involving a wide variety of physical and
mental impairments, and the effect such impairments have on the
ability of an individual to work.  To reach informed judgements
in these cases, the administrative law judge must possess a
knowledge of the medical, psychological, and vocational factors
involved in each case.  The administrative law judge called upon
to perform in this program must develop a background in the
medicolegal field not normally inherent in other legal positions
in the Government service.

In old age and survivors' benefit cases, the administrative law
judge is required to have extensive knowledge of State, Federal
and foreign laws dealing with difficult and complex questions in
such fields as conflicts of law, domestic relations, descent and
distribution, employer-employee relations, contracts, trusts,
partnerships, corporations, accounting, and related subjects.
For example, in the Social Security Act there are a number of
express references to the Internal Revenue Code, the Immigration
and Naturalization Act, the Agricultural Marketing Act, and other
laws.  In the Internal Revenue field alone, the administrative
law judge is required to have the necessary expertise to make
finding on such matters as adjusted gross and net income; evasion
and avoidance of taxes; whether there exists a bona fide
corporation or partnership; and the reasonableness of salaries
paid to corporate officers.  The administrative law judge is not
bound in such cases by findings of the Treasure Department or
other Government agencies.

The increasing interest by the courts in the interrelated medical
and vocational factors has made it necessary to utilize oral

testimony of vocational and medical experts, most of whom are
eminent authorities in their respective fields. He is the sole
person charged with evaluating the credibility of witnesses in
making a judgement on the evidence developed at the hearing. The
administrative law judge is required to have the skillful and
comprehensive interrogation of expert witnesses. He must be able
to analyze and summarize in decisional format complex facts and
laws clearly and concisely, and to create a dignified and
objective atmosphere at the hearing.


In SSI cases the ALJ is required to have extensive knowledge of
income, resources, living arrangement, relationships,
citizenship, residency, institutionalization, etc. The ALJ must
be able to determine what is income and what income is
chargeable; what a resource is and whether it is chargeable;
whether an individual is a citizen or an alien admitted for
permanent residency and where an individual has his/her permanent
residency and the applicable chargeable amounts for living
arrangement in that geographic area.

REVISED AMENDMENT

Duties and Responsibilities of the Hearing Office Chief Administrative
Law Judge

I.    PURPOSE

      This Instruction sets forth the authorities and responsibilities
      of the Hearing Office Chief Administrative Law Judge (HOCALJ) for
      the overall management and administration of each established
      hearing office in the Office of Hearings and Appeals.

II.   POLICY

      HOCALJs within the Department of Health and Human Services
      (DHHS), Social Security Administration, Office of Hearings and
      Appeals, are located throughout ten geographically dispersed DHHS
      regions, encompassing the geographically dispersed DHHS regions,
      encompassing the entire United States and Puerto Rico.  One
      HOCALJ position is established in each of the approximately 132
      offices throughout the nation, HOCALJ selections are recommended
      by the Regional Chief Administrative Law Judge, with the
      concurrence of the Chief Administrative Law Judge, the Associate
      Commissioner, and the Deputy Commissioner for Programs, to the
      Commissioner for final approval.  The individual selected as
      HOCALJ will advance one step on the AL-3 scale unless he/she is
      already at the AL-3 (F) level.  Removal of a HOCALJ will be at
      the discretion of the Regional Chief Administrative Law Judge
      with the concurrence of the Chief Administrative Law Judge.

III.  FUNCTION

      The HOCALJ functions under the general direction of the Associate
      Commissioner, Chief Administrative Law Judge, and Regional Chief
      Administrative Law Judge and has responsibility and authority for
      managing; planning and coordinating the administration of the
      hearing process as well as for the implementation of national and
      regional management policies.  The HOCALJ has administrative and
      managerial responsibility for all support staff personnel in the
      hearing office, provides leadership and administrative direction
      to the Administrative Law Judges as may be required in the course
      of general office management, and has responsibility for the
      overall management and effectiveness of the hearing office.

IV.   DUTIES AND RESPONSIBILITIES

      1.    Under the provision of Titles II, XVI and XVIII of the
            Social Security Act and applicable Federal, State, and
            foreign laws, and in conformity with the Administrative
            Procedure Act, and with full and complete individual
            independence of action and decision, and without review,

the HOCALJ has full responsibility and authority to hold hearings and issue decisions as stated under the above Titles.

HOCALJs fully consider all the evidence of record and issue decisions within the requirements of the Administrative Procedure Act, which decisions are completely independent and final, signed only by him or her, and published to parties in interest without prior review; and entertain petitions for attorney fees and issue orders designating the amount of fee permitted.

2. Under the general administrative direction of the Regional Chief Administrative Law Judge, the HOCALJ is directly responsible for all program and administrative matters concerning the Social Security Administration's hearing process in the hearing office. Specific responsibilities of the HOCALJ include but are not limited to:

   A. Develops and directs the implementation of administrative policies and procedures designed to foster efficiency and effectiveness in managing the workload within the hearing office. Provides leadership and guidance to all hearing office employees, including Administrative Law Judges, for the purpose of improving the hearing process and achieving the goals and objectives of the Agency. Assures the implementation and maximum utilization of automated systems.

   B. Assigns and reassigns cases to Administrative Law Judges on a rotational basis insofar as practicable and in accordance with established Agency policies.

   C. Provides advice and guidance to Administrative Law Judges in substantive program policy and procedural matters relating to the adjudication of cases under the Social Security Act, as amended, consistent with the decisional independence accorded Administrative Law Judges pursuant to the provisions of the administrative Procedure Act. For example, is available to provide advice and guidance to Administrative Law Judges on the interpretation of applicable law, regulations, rulings and judicial precedents, and on the conduct of hearings. As necessary, directs or conducts periodic training concerning these laws, regulations, policy statement, rulings, and their impact on the hearing process.

   D. Either directly or through subordinate supervisors, provides overall direction and guidance in the implementation and supervision of applicable

administrative regulations and procedures, including
leave approval; maintenance of time and attendance
requirements; determination of organizational
structure, staffing needs, composition of staff;
review of work products; application of performance
standards and appraisals; assignment of office space,
furniture, equipment; approval of travel vouchers and
itineraries; coordination the use of Vocational
Experts and Medical Experts; conduct of labor
management functions consistent with collective
bargaining agreements, etc.

E.    The HOCALJ is the first line supervisor to
      Administrative Law Judges, the Supervisory Staff
      Attorney and the Hearing Office Manager.

F.    Participates in investigations, in coordination with
      the regional Chief Administrative Law Judge, into
      allegations of improper conduct on the part of any
      employee, including Administrative Law Judges, with
      may be in violation of law, regulations and agency
      operating rules.

G.    Ensures the timely and accurate response to public and
      congressional inquireies.  Performs liaison functions
      between the hearing office, Social Security District
      and Branch Office, Disability Determination Services,
      other offices in the agency, other government
      agencies, local bar associations, medical communities,
      and congressional offices.

H.    Demonstrates full support of the Equal Employment
      Opportunity Program by ensuring compliance with the
      principles of equal employment opportunity and the
      provisions of the OHA Affirmative Employment Plan.

3.    Provides technical and procedural guidance for the
      expeditious processing of pending cases.  Working in
      conjunction with the Regional Chief Administrative Law
      Judge, the HOCALJ provides extraordinary leadership and
      management in guiding the HO to meet regional and national
      goals and objectives.

| POSITION DESCRIPTION | (Please Read Instructions on the Back) | | 1. Agency Position No. 66622 |
|---|---|---|---|

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |
|---|---|---|---|---|
| [X] Redescription  [ ] New | [ ] Hdqtrs.  [X] Field | | | |
| [ ] Reestablishment  [ ] Other | | | | |

Explanation (*Show any positions replaced*)

| 7. Fair Labor Standards Act | 8. Financial Statements Required |
|---|---|
| [X] Exempt   [ ] Nonexempt | [ ] Executive Personnel Financial Disclosure   [ ] Employment and Financial Interests |

| 10. Position Status | 11. Position is: | 12. Sensitivity | 13. Competitive Level |
|---|---|---|---|
| [X] Competitive | [ ] Supervisory | [X] 1-Non-Sensitive   [ ] 4-Special Sensitive | 935-AL-3 |
| [ ] Excepted (Specify in Remarks) | [X] Non-Supvry. | [ ] 2-Noncritical Sensitive   [ ] 5-Moderate Risk | 14. Agency Use |
| [ ] SES (Gen.)   [ ] SES (CR) | | [ ] 3-Critical Sensitive   [ ] 6-High Risk | |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | Administrative Law Judge (Licensing & Benefits) | AL | 935 | 3 | JF | 8/11/94 |
| b. Department, Agency or Establishment | | | | | | |
| c. Recommended by Supervisor or Initiating Office | Administrative Law Judge (Licensing & Benefits) | AL | 935 | 3 | JF | 8/11/94 |

16. Organizational Title of Position (if different from official title)

17. Number of allocations
**V-1122 (per memo 6/16/94)

18. Department, Agency or Establishment
Social Security Administration

a. First Subdivision
~~Office of the Deputy Commissioner for Programs and Policy~~  DCDAR, (per OCOSS 4-3-06)

b. Second Subdivision
~~Office of Hearings and Appeals~~

c. Third Subdivision
Office of the Chief Administrative Law Judge, Office of the Regional Chief ALJ

d. Fourth Subdivision
Hearing Offices

e. Fifth Subdivision

20A. Supervisor Certification. I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that the false or misleading statements may constitute violations of such statutes or their implementing regulations.

20B. Allocation Certification  I certify that each incumbent will perform the grade controlling duties and responsibilities of this position for a substantial amount of time (i.e., 25% or more).

| 20a1. Typed Name and Title of Immediate Supervisor | 20b. Typed Name and Title of Delegated Authorizing Official for Non-Supervisory GS-14 and Below (Required) |
|---|---|
| Jose A. Anglada Chief Administrative Law Judge | |
| Signature: /s/     Date: 8/3/94 | |
| 20a2 Typed name of higher level management concurrence (Optional if 20a1 is signed) Daniel L. Skoler Associate Commissioner | Signature     Date |
| Signature     Date: 8/3/94 | |

21. Classification/Job Grading Certification. I certify that this position has been classified/graded as required by Title 5, U. S. Code, in conformance with standards published by the Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.

| 21a. Typed Name and Title of Official Taking Action | 21b. Typed Name and Title of Delegated Authorizing Official for GS-15/SES |
|---|---|
| John Flannery Office of Personnel Management | |
| Signature: /s/     Date: 8/11/94 | Signature     Date |

22. The standards, and information on their application, are available in the personnel office. Position Classification Standards Used in Classifying/Grading Position:

23. Remarks
The revised amendment to this position description which includes detailed administrative and managerial responsibilities of the Hearing Office Chief Administrative Law Judge (HOCALJ) is hereby approved. Position allocations: 1/44; 2/103; 3/122; 4/273; 5/186; 6/149; 7/49; 8/26; 9/141; 10/29 Total:1122 (per memo 6/16/94)

24. Description of Major Duties and Responsibilities (See Attached)

Form SSA-801 (October 2001)  (former OF-8)

**STANDARD POSITION DESCRIPTION**

OFFICE OF HEARINGS AND APPEALS
SOCIAL SECURITY ADMINISTRATION
**ADMINISTRATIVE LAW JUDGE (LICENSING AND BENEFITS)**
**AL-935-3**

I.    INTRODUCTION

Administrative law judges within the Department of Health and
Human Services, Social Security Administration, Office of
Hearings and Appeals, are located throughout ten geographically
dispersed DHHS regions, encompassing the entire United States and
Puerto Rico.  Administrative law judge offices are established in
approximately 135 offices throughout the nation.

Under the direct delegation from the Secretary of Health and
Human Services, and in the manner prescribed by the
Administrative Procedure Act, the administrative law judge holds
hearings and makes and issues decisions on appeals from
determinations made in the course of administration of Titles II,
XVI, and XVIII of the Social Security Act.  The basic types of
cases are:  (a) appeals by disability benefits under Title II;
(b) appeals under Title II involving entitlement of individuals
to old age and survivors' benefits; (c) appeals by individuals
involving eligibility for supplemental security income (Title
XVI) based on being aged, blind or disabled and meeting the needs
test; (d) appeals by hospitals and various health and care
institutions and agencies dissatisfied with the determination
that they do not meet the licensing and regulatory provisions
covering "Providers of Services" under Title XVIII; (e) appeals
by individuals from determinations involving entitlement and/or
amount of hospital services or medical and health services; and
(f) in addition, SSA ALJs also render determinations on HHS cases
falling outside the jurisdiction of SSA, such as those at the
Office of Health Finance Integrity, Office of the Inspector
General.  Since cases are assigned on a rotation basis, each
administrative law judge handles all types of cases regardless of
the degree of difficulty or complexity of the issues.

Administrative law judges' decisions are final decisions of the
Secretary unless subsequently reviewed as provided in the
regulations.  They
either affirm, modify, or reverse any previous determinations and
are issued and forwarded directly to the parties in the
administrative law judge's own name.

II.   DUTIES AND RESPONSIBILITIES

Under the provisions of Titles II, XVI and XVIII of the Social
Security Act and applicable Federal, State, and foreign laws, and
in conformity with the Administrative Procedure Act, and with
full and complete individual independence of action and decision,
and without review, the administrative law judge has full
responsibility and authority to hold hearings and issue decisions
as stated under the above Titles and (1) dismiss or allow
requests for hearings and rule on requests for extensions; (2)
identify problems and issues to be resolved; (3) analyze all
previously developed evidence and appraise previous licensing,
regulatory, and adjudicative processes by the administrative
agency; (4) determine whether there are other parties with
adverse interest to be joined in the case; (5) issue subpoenas
and rule on petitions to revoke subpoenas; (6) correlate and
resolve conflicting evidence; (7) hear testimony and rule on all
motions, petitions, or exceptions involving questions of law,
procedure, and the admissibility of evidence; (8) hold prehearing
conferences with the appellant and/or his counsel and the
government representative; (9) make all evidence of record
available to the parties and inform them of any evidence or
expert testimony required in connection with a material point or
issue; (10) administer oaths and affirmations; (11) govern the
conduct of the parties at the hearing, and in general regulate
the entire course of the proceedings; (12) control the
examination and cross-examination of witnesses; (13) introduce
into the record documentary and other evidence deemed necessary
for the completion or full development of the record; (14) hear
oral argument, and receive and consider briefs that are
submitted; (15) appraise the credibility of witnesses, and
resolve conflicts in lay and expert evidence; (16) consider and
dispose of proposed findings of fact and conclusions of law
submitted by the claimants or government representatives;
(17)make findings of fact on each issue, giving the reasons
therefore and render conclusions of law as sole trier of fact and
law; (18) fully consider all the evidence of record and issue
decisions within the requirements of the Administrative Procedure
Act, which decisions are completely independent and final, signed
only by him, and published to parties in interest without prior
review; and (19) entertain petitions for attorneys fees and issue
orders designating the amount of fee permitted.

The administrative law judge may also take other action not
inconsistent with the Administrative Procedure Act such as
perfecting a record or presiding at hearings and issuing
decisions in matters remanded by the Federal courts.

The incumbent may be assigned to act as Hearing Office Chief
Administrative Law Judge of a hearing office under general
direction of the Associate Commissioner, CALJ and RCALJ.  As
such, the incumbent would be responsible for the management of
the hearing office to which assigned, as well as for holding
hearings and making and issuing decisions on appeals pursuant to

the Social Security Act, as amended. Such assignment, however, would be accomplished only with the approval of the incumbent, and would be subject to the duties, responsibilities and authorities set forth in the amendment, which is attached.

III. <u>SUPERVISION AND GUIDANCE</u>

The Social Security and Administrative Procedure Acts prohibit substantive review and supervision of the administrative law judge in the performance of his quasi-judicial functions of holding hearings and issuing decisions. His decisions may not be reviewed before publication and after publication only by the Appeals Council in certain prescribed circumstances. He is subject only to such administrative supervision as may be required in the course of general office management. His decision take into account all applicable Federal, State, and foreign laws, statutes, regulations, rulings, and decisions of the Federal courts.

In cases involving the licensing of "Providers of Services" under Title XVIII, the administrative law judge's decision can only be reviewed at the request of a party (the institution involved or the government). In other cases, a decision can be reviewed at the request of a claimant, or by the Council on its own motion. In any event, the Council takes jurisdiction only on a certiorari basis. Final decisions of the administrative law judge may be appealed to the Federal courts, and the Social Security Act (Sec. 205(g)) requires that courts uphold the administrative law judge's finding of fact when supported by substantial evidence.

IV. <u>SPECIAL KNOWLEDGE AND ABILITIES REQUIRED</u>

The administrative law judge must have expert knowledge of judicial practice; exceptional professional attainment; a capacity for analysis and articulation; the ability to balance important and conflicting considerations; a proven ability to assure a fair hearing; and be able to discharge effectively the responsibilities placed upon him for bringing all matters coming before him to a prompt and just final decision. Inherent demands of the job include such characteristics as tact, poise, firmness, impartiality, diplomacy, originality, imagination, initiative, professional bearing, the ability to control the emotionalism of opposing counsel, claimants, witnesses, or other individuals whose conduct may threaten the orderly conduct of the proceedings; and he must posses the ability to meet novel and taxing legal problems. The administrative law judge is required to appraise the issues promptly and thoroughly before any testimony is adduced. If the pleadings are insufficient, the administrative law judge must have the necessary legal ability to take any and all action required to clarify the issues. With the issues defined, he will exercise initiative in obtaining stipulations of fact. Since, unlike a judge, an administrative

law judge has no contempt powers, poise and diplomacy in meeting delicate situations are essential.

The administrative law judge must obtain a clear and concise record, containing all relevent facts, while excluding all immaterial matters, He must use judgment and initiative in the calling of expert or other witnesses and in requesting either the government representative or the appellants' counsel for evidence on any medical, and economic factors involved is necessary in order that the administrative law judge may develop a complete record of the hearing.

The administrative law judge must be aware of current practices in the fields of medical treatment, hospital administration, costs on medical services, safety standards, and like matters in order to render well informed and proper decisions in regulatory and licensing proceedings under title XVIII.  His decisions have a substantial impact upon the Administrations' policies and procedures in this health insurance program in which there is a great deal of public interest.

In the disability program under Title II, the administrative law judge must decide cases involving a wide variety of physical and mental impairments, and the effect such impairments have on the ability of an individual to work.  To reach informed judgements in these cases, the administrative law judge must possess a knowledge of the medical, psychological, and vocational factors involved in each case.  The administrative law judge called upon to perform in this program must develop a background in the medicolegal field not normally inherent in other legal positions in the Government service.

In old age and survivors' benefit cases, the administrative law judge is required to have extensive knowledge of State, Federal and foreign laws dealing with difficult and complex questions in such fields as conflicts of law, domestic relations, descent and distribution, employer-employee relations, contracts, trusts, partnerships, corporations, accounting, and related subjects. For example, in the Social Security Act there are a number of express references to the Internal Revenue Code, the Immigration and Naturalization Act, the Agricultural Marketing Act, and other laws.  In the Internal Revenue field alone, the administrative law judge is required to have the necessary expertise to make finding on such matters as adjusted gross and net income; evasion and avoidance of taxes; whether there exists a bona fide corporation or partnership; and the reasonableness of salaries paid to corporate officers.  The administrative law judge is not bound in such cases by findings of the Treasure Department or other Government agencies.

The increasing interest by the courts in the interrelated medical and vocational factors has made it necessary to utilize oral

testimony of vocational and medical experts, most of whom are eminent authorities in their respective fields. He is the sole person charged with evaluating the credibility of witnesses in making a judgement on the evidence developed at the hearing. The administrative law judge is required to have the skillful and comprehensive interrogation of expert witnesses. He must be able to analyze and summarize in decisional format complex facts and laws clearly and concisely, and to create a dignified and objective atmosphere at the hearing.

In SSI cases the ALJ is required to have extensive knowledge of income, resources, living arrangement, relationships, citizenship, residency, institutionalization, etc. The ALJ must be able to determine what is income and what income is chargeable; what a resource is and whether it is chargeable; whether an individual is a citizen or an alien admitted for permanent residency and where an individual has his/her permanent residency and the applicable chargeable amounts for living arrangement in that geographic area.

REVISED AMENDMENT

Duties and Responsibilities of the Hearing Office Chief Administrative
Law Judge

I.    PURPOSE

This Instruction sets forth the authorities and responsibilities
of the Hearing Office Chief Administrative Law Judge (HOCALJ) for
the overall management and administration of each established
hearing office in the Office of Hearings and Appeals.

II.   POLICY

HOCALJs within the Department of Health and Human Services
(DHHS), Social Security Administration, Office of Hearings and
Appeals, are located throughout ten geographically dispersed DHHS
regions, encompassing the geographically dispersed DHHS regions,
encompassing the entire United States and Puerto Rico.   One
HOCALJ position is established in each of the approximately 132
offices throughout the nation, HOCALJ selections are recommended
by the Regional Chief Administrative Law Judge, with the
concurrence of the Chief Administrative Law Judge, the Associate
Commissioner, and the Deputy Commissioner for Programs, to the
Commissioner for final approval.   The individual selected as
HOCALJ will advance one step on the AL-3 scale unless he/she is
already at the AL-3 (F) level.   Removal of a HOCALJ will be at
the discretion of the Regional Chief Administrative Law Judge
with the concurrence of the Chief Administrative Law Judge.

III.  FUNCTION

The HOCALJ functions under the general direction of the Associate
Commissioner, Chief Administrative Law Judge, and Regional Chief
Administrative Law Judge and has responsibility and authority for
managing; planning and coordinating the administration of the
hearing process as well as for the implementation of national and
regional management policies.   The HOCALJ has administrative and
managerial responsibility for all support staff personnel in the
hearing office, provides leadership and administrative direction
to the Administrative Law Judges as may be required in the course
of general office management, and has responsibility for the
overall management and effectiveness of the hearing office.

IV.   DUTIES AND RESPONSIBILITIES

1.    Under the provision of Titles II, XVI and XVIII of the
Social Security Act and applicable Federal, State, and
foreign laws, and in conformity with the Administrative
Procedure Act, and with full and complete individual
independence of action and decision, and without review,

the HOCALJ has full responsibility and authority to hold hearings and issue decisions as stated under the above Titles.

HOCALJs fully consider all the evidence of record and issue decisions within the requirements of the Administrative Procedure Act, which decisions are completely independent and final, signed only by him or her, and published to parties in interest without prior review; and entertain petitions for attorney fees and issue orders designating the amount of fee permitted.

2.    Under the general administrative direction of the Regional Chief Administrative Law Judge, the HOCALJ is directly responsible for all program and administrative matters concerning the Social Security Administration's hearing process in the hearing office.  Specific responsibilities of the HOCALJ include but are not limited to:

A.    Develops and directs the implementation of administrative policies and procedures designed to foster efficiency and effectiveness in managing the workload within the hearing office.  Provides leadership and guidance to all hearing office employees, including Administrative Law Judges, for the purpose of improving the hearing process and achieving the goals and objectives of the Agency. Assures the implementation and maximum utilization of automated systems.

B.    Assigns and reassigns cases to Administrative Law Judges on a rotational basis insofar as practicable and in accordance with established Agency policies.

C.    Provides advice and guidance to Administrative Law Judges in substantive program policy and procedural matters relating to the adjudication of cases under the Social Security Act, as amended, consistent with the decisional independence accorded Administrative Law Judges pursuant to the provisions of the administrative Procedure Act.  For example, is available to provide advice and guidance to Administrative Law Judges on the interpretation of applicable law, regulations, rulings and judicial precedents, and on the conduct of hearings.  As necessary, directs or conducts periodic training concerning these laws, regulations, policy statement, rulings, and their impact on the hearing process.

D.    Either directly or through subordinate supervisors, provides overall direction and guidance in the implementation and supervision of applicable

administrative regulations and procedures, including leave approval; maintenance of time and attendance requirements; determination of organizational structure, staffing needs, composition of staff; review of work products; application of performance standards and appraisals; assignment of office space, furniture, equipment; approval of travel vouchers and itineraries; coordination of the use of Vocational Experts and Medical Experts; conduct of labor management functions consistent with collective bargaining agreements, etc.

E.   The HOCALJ is the first line supervisor to Administrative Law Judges, the Supervisory Staff Attorney and the Hearing Office Manager.

F.   Participates in investigations, in coordination with the regional Chief Administrative Law Judge, into allegations of improper conduct on the part of any employee, including Administrative Law Judges, with may be in violation of law, regulations and agency operating rules.

G.   Ensures the timely and accurate response to public and congressional inquireies.  Performs liaison functions between the hearing office, Social Security District and Branch Office, Disability Determination Services, other offices in the agency, other government agencies, local bar associations, medical communities, and congressional offices.

H.   Demonstrates full support of the Equal Employment Opportunity Program by ensuring compliance with the principles of equal employment opportunity and the provisions of the OHA Affirmative Employment Plan.

3.   Provides technical and procedural guidance for the expeditious processing of pending cases.  Working in conjunction with the Regional Chief Administrative Law Judge, the HOCALJ provides extraordinary leadership and management in guiding the HO to meet regional and national goals and objectives.

# EXHIBIT 4

United States of America
## Office of
## Personnel Management

Office of the General Counsel
Washington, D.C. 20415

In Reply Refer To:

Your Reference

JUL 2 8 1998

Mr. Stuart Besser
Social Security Administration
Office of the General Counsel
Room 322
The Altmeyer Building
6401 Security Boulevard
Baltimore, Maryland 21235

Dear Mr. Besser:

This letter responds to your December 1, 1997, inquiry regarding state bar
membership requirements for Administrative Law Judges and GS-905 General
Attorneys. You ask whether Administrative Law Judges and Federal Government
attorneys are required to maintain active state bar memberships. My apologies
for the delay in responding to your letter.

Before it was sunset in December 1994, the Federal Personnel Manual (FPM)
stated that Government attorneys should be licensed and authorized to practice
as attorneys in at least one state or a recognized jurisdiction. *See* former FPM
Chapter 213, Appendix A, A-3 (d); *see also* former FPM Chapter 930, subchapter
3-3, a(2)(a), enclosed. Since that time, the Office of Personnel Management
(OPM), in recognition of state rules and regulations, continues to require Federal
attorneys to be authorized to practice law. The <u>Handbook of Occupational
Groups and Families</u> (February 1998), which describes the GS-905 General
Attorney series and the GS-1222 Patent Attorney series, provides that the work in
these series requires admission to the bar.

It remains OPM's policy and interpretation that requiring admission to the bar in
the current standard for General Attorney or Patent Attorney means that one is
currently authorized to engage in the practice of law as an attorney under the
rules of a state, territory, the District of Columbia or the Commonwealth of Puerto
Rico. The requirement that attorneys be authorized to practice law is more than a
qualification requirement for appointment to an attorney position; it is a continuing
licensing requirement necessary to perform the ongoing duties of an attorney.

- 2 -

Accordingly, an attorney's membership in the bar must be such as would permit him or her to continue to engage in the practice of law in a given state or other jurisdiction.

Provided Government attorneys are duly admitted to practice law in any one state or recognized jurisdiction, they need not acquire bar membership in the state bar in which they are domiciled or employed in order to retain positions as Government attorneys. They must, however, meet the requirements of the bar to which they have been admitted.

It is the duty of all Government attorneys to keep informed of, and be in compliance with, the various requirements that may be imposed by the bars and courts to which they are admitted to practice and to pay fees that may be imposed to maintain good standing. This means that an attorney's membership in the bar must be such as to permit the attorney to practice law, whether or not it involves maintaining an "active" status. We are aware of no jurisdiction in which an "active" member is not regarded as authorized to practice law. Therefore, as a practical matter, OPM has advised agencies that their attorneys must maintain "active" status. Attorneys who wish to maintain a status other than "active" may do so, provided they can show that the status they maintain entitles them to hold themselves out as attorneys authorized to practice law. This would apply to such categories as "judicial" or "active non-resident", to give two examples that have been brought to our attention.

Administrative Law Judges (ALJs) must meet the same professional licensing requirements as GS-905 attorneys. In general, the function of an ALJ is to prepare for and preside at formal hearings in accordance with the Administrative Procedure Act (APA) of 1946. The regulation at 5 C.F.R. § 930.203 (b) requires that all ALJ applicants demonstrate that they meet the qualifying experience requirements set forth in OPM Examination Announcement No. 318 (Announcement). The Announcement, as amended in June 1996, provides that at the time of filing, and for a period of at least 7 years prior thereto, an ALJ applicant must have been duly licensed and authorized to practice law as an attorney under the laws of a state or recognized jurisdiction. See Announcement at page 6. The ALJ applicant is also required to have at least a full 7 years of experience as an attorney preparing for, participating in, and/or reviewing formal hearings or trials involving (1) administrative laws, and/or (2) litigation at the Federal, state or local level. *Id.* These qualifying experience requirements for

- 3 -

bar membership are not waived, and remain in effect, once the applicant is appointed to an ALJ position.

The Announcement further requires ALJ applicants to maintain eligibility by continuing to be duly licensed and authorized to practice law as an attorney under the laws of a state or recognized jurisdiction. See Announcement at page 16. ALJ applicants are also required to document whether they have been disciplined or cited for breach of ethics rules or for unprofessional conduct, or have been the subject of a complaint, to any court, administrative agency, bar association, disciplinary committee, or other professional group. *Id.* These continuing requirements ensure that ALJs, like attorneys, remain subject to the code of professional responsibility of a state or other recognized jurisdiction. These ethical requirements cannot be waived once an applicant becomes an ALJ. Consequently, OPM requires ALJs to maintain a status with a bar that authorizes them to practice law as an ongoing requirement for the ALJ position.

We appreciate the opportunity to respond to your inquiry.

Sincerely,

Rhoda G. Lawrence
Assistant General Counsel
Staffing and Civil Rights Division

K b

# EXHIBIT 5



# AALJ

## **A**ssociation of **A**dministrative **L**aw **J**udges

# email from OPM on active bar non-requirement

[ Replies ] [ Post Reply ] [ AALJ Board ] [ FAQ ]

Posted by Toby Buel on May 13, 2000 at 12:19:33:

Posted by Judge Birchman on May 12, 19100 at 14:31:48:

(1) dc bar's email address: executive.office@dcbar.org


(2) OPM Director Reodriguez's clarification

Subject: RE: DC Bar letter requesting comments re opm requirment for alj active bar membership
To: "'Bruce Birchman'"
From: "Rodriguez, Armando"
Cc: Christina Espinosa-Ross

Judge Birchman...Thanks for the heads-up. You are correct in that we do not require active bar membership for ALJs. The requirement applies to applicants and Senior ALJs. I believe I know where this came from and it was in error. Please let me know who at the DC Bar I need to speak with in order to correct this situation. Also, I welcome the opportunity to chat. Please let me know when might be a good time...AER

-----Original Message-----
From: Bruce Birchman [mailto:bruce.birchman@ferc.fed.us]
Sent: Wednesday, May 10, 2000 3:14 PM
To: AERODRIG@opm.gov
Subject: DC BAr letter requesting comments re opm requirment for alj active bar membership

Armando,

Apparently, earlier this month someone at OPM advised the D.C. Bar "that federal administrative law judges are required by OPM policy to be in a bar membership category in which one is authorized to practice law.", i.e. active bar status. As a result, the D.C. Bar Regulations/Rules/Board Procedures Committee is asking for comments by May 22, 2000 with regard to

K 19

email from OPM on acti    ʳ non-requirement                    Page 2 of 3

whether "the recommendation of a change to a [judicial] membership category
. . . may place a group of members in an apparent conflict with federal
policy established by their employer pursuant to federal regulations."

As you should know, there is no current OPM regulation that requires ALJs
to maintain active bar membership.

On July 12, 1999, FORUM wrote OPM Director LaChance and requested OPM to
clarify that there is no mandatory requirement that all ALJs maintain an
active bar status with the jurisdiction in which they are admitted. FALJC
wrote a similar letter to OPM on February 3, 2000.

I would like to speak with you about this.

Replies: ——————————————————————————————————————————

- Re: email from OPM on active bar non-requirement **Ron Osborn** *5/15/2000* (3)
  - Re: email from OPM on active bar non-requirement **Joseph Dail** *5/17/2000*
    (2)
    - My Maryland Experience **Dick Goodwin** *5/17/2000* (1)
      - Re: My Maryland Experience **Ray Gollmitzer** *5/18/2000* (0)

Post a Reply ——————————————————————————————————————

Name:      [                              ]

E-Mail:    [                           ]

Subject:   [Re: email from OPM on active ba]    Ex 5

Comments:

[                                        ]

K 19

# EXHIBIT 6



United States
# Office of
# Personnel Management

Washington, D.C. 20415-9400

In Reply Refer To:          Your Reference:

July 12, 20000

*Draft*
*Please call*
*w/ comments*
*Christine Espinosa Ross*

**Sent by Facsimile**

Julie Lukenbill
Licensure Analyst
State of Texas
Board of Law Examiners
Tom C. Clark Building
205 West 14ᵗʰ Street, Suite 500
Austin, Texas 78711-3486
Fax: 512-463-5300

RE: ███████████████████

Dear Ms. Lukenbill:

This is to confirm that ██████████████████████ was appointed a Federal Administrative Law Judge by the United States Office of Personnel Management and employed by the United States Social Security Administration effective ██████████ and is currently employed in said capacity with the Federal Government.

Administrative Law Judge ████████ appointment and employment as an Administrative Law Judge for the Social Security Administration is lawful under the provisions of the Administrative Procedures Act, 5 CFR 930.201 et seq. As a result of his appointment, Administrative Law Judge ████ has been and is currently empowered to hear and rule on administrative appeals in disability benefit cases pending before the U.S. Social Security Administration. Prior to appointment as an Administrative Law Judge, applicants are required to be duly licensed to practice law and be in an "active" status with their State Bar. However, the provisions of 5 CFR 930.201 et seq. do not specifically state that current Administrative Law Judges must maintain their "active" status after their appointment as Federal Administrative Law Judges.

Should you have any questions concerning the above, please do not hesitate to contact me. I may be reached at (202) 606-1386.

Sincerely,

R. Christina Espinosa-Ross
Deputy Director
Office of Administrative Law Judges

CC: Administrative Law Judge
███████████████████

K 20

C 07-711 RMC

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS

Association of Administrative Law Judges, David Agatstein, Karl Alexander, Jon R. Hunt, John K. Kraybill, James Norris, Cheryl Rini, and Edwin Shinitzky

### DEFENDANTS

United States Department of Personnel Management and Linda M. Springer

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Milwaukee, WI
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert H. Stropp
1920 L Street, N.W., Suite 400
Washington, D.C. 20038
(202) 783-0010

Case: 1:07-cv-00711
Assigned To : Collyer, Rosemary M.
Assign. Date : 4/18/2007
Description: ASSOC. OF ADMIN. LAW JUDGES, ET. AL VS. US OPM, ET. AL

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
⊙ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ A. Antitrust

☐ 410 Antitrust

○ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

⊙ C. Administrative Agency Review

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
⊙ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

②

NOT A4SA
" USAG

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◎ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 USC 20/

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** ⌐ ⌐ | Check YES only if demanded in complaint<br>**JURY DEMAND:**   YES ☐   NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

**DATE** 4/18/07   **SIGNATURE OF ATTORNEY OF RECORD** _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

