**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW<br>JUDGES, an unincorporated association;<br>Henry Reuss Federal Plaza<br>Suite 300<br>310 Wisconsin Ave<br>Milwaukee, WI 53203 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| DAVID AGATSTEIN;<br>Suite 500<br>800 E. Colorado Avenue<br>Pasadena, CA 91101 | ) <br> ) <br> ) <br> ) <br> ) | |
| KARL ALEXANDER;<br>6 Suburban Court<br>Morgantown, WV 26505 | ) <br> ) <br> ) <br> ) | Case No. 07-0711 (RMC) |
| JON R. HUNT;<br>Suite 200<br>1305 Navaho Drive<br>Raleigh, NC 27609-25 13 | ) <br> ) <br> ) <br> ) <br> ) | |
| JOHN K. KRAYBILL;<br>2301 West 22nd Street, Suite 201<br>Oak Brook, IL 60523 | ) <br> ) <br> ) <br> ) | |
| JAMES NORRIS;<br>Market Square Center, Suite 400<br>Indianapolis, IN 46204-25 10 | ) <br> ) <br> ) <br> ) | |
| CHERYL RINI;<br>U.S. Bank Centre<br>1350 Euclid Avenue, Suite 700<br>Cleveland, Ohio 44115 | ) <br> ) <br> ) <br> ) <br> ) | COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF |
| EDWIN SHINITZKY,<br>Equity Office Building, Suite 900<br>200 West Adams Street<br>Chicago, IL 60606 | ) <br> ) <br> ) <br> ) <br> ) | |
| MARY RITA LUECKE<br>3330 Lake Street<br>Evanston, Illinois 60203 | ) <br> ) <br> ) <br> ) | |
| RUSSELL DOTY<br>3878 N Tanager Ln<br>Billings, MT 59102-5916 | ) <br> ) <br> ) | |

```
and NED RICHARDSON                              )
P.O. Box 128                                    )
51 Columbian Street                             )
South Weymouth, Massachusetts 02190             )
                                                )
Plaintiffs,                                     )
                                                )
v.                                              )
                                                )
UNITED STATES OFFICE OF PERSONNEL               )
MANAGEMENT,                                     )
1900 E Street, NW                               )
Washington, D.C. 20415-9700                     )
                                                )
and LINDA M. SPRINGER,                          )
Director of the United States Office of Personnel )
Management,                                     )
Room 6551                                       )
1900 E Street, NW                               )
Washington, D.C. 20415-9700                     )
                                                )
Defendants.                                     )
_____)
```

## FIRST AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1.      Plaintiffs, the Association of Administrative Law Judges ("AALJ") and individual

federal Administrative Law Judges, bring this action for declaratory and injunctive relief

challenging certain final regulations issued by the Office of Personnel Management ("OPM") on

March 20, 2007, and effective on April 19, 2007.  In an unprecedented and unwarranted action,

the rule, to be codified in 5 C.F.R. § 930.204 ("Final Rule"), effectively establishes a requirement

that incumbent Administrative Law Judges maintain active bar status.  The Final Rule constitutes

an improper and unlawful attempt to amend, indirectly, the Administrative Procedure Act's

("APA") guarantees, checks and balances that for 60 years have well-governed the federal

administrative process.  As there is no statutory basis for the Final Rule, OPM exceeded its

authority by issuing it.  The Final Rule also is arbitrary, capricious and not otherwise in

accordance with the law.  Furthermore, the Final Rule is not rational in light of the record before

OPM when it promulgated the Rule.  Moreover, because the public was not given notice and

an opportunity to comment on studies and surveys relied upon by OPM in promulgating the

Final Rule, the rule-making process was legally defective. In addition, the Final Rule in

Section 930.201(f)(2) is inconsistent with the plain language of the governing statute.

Accordingly, Plaintiffs request that the Court set aside the Final Rule and declare it null and

void.

2.      In addition, pursuant to the Final Rule, OPM issued a Vacancy Announcement

and Notice of Examination regarding the Administrative Law Judge positions.  The Vacancy

Announcement and Notice of Examination are facially invalid and arbitrary and capricious as

applied.  Accordingly, the Vacancy Announcement and Notice of Examination should be set

aside.

## Jurisdiction

3.      This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §

701 *et. seq.* APA Section 704 provides a right to judicial review of all "final agency action for

which there is no other adequate remedy in court." 5 U.S.C. § 704.  The issuance of the Final

Rule satisfies this jurisdictional threshold.

4.      The Court also has jurisdiction over the agency's actions pursuant to 28 U.S.C. §

1331, which grants the district courts "original jurisdiction of all civil actions arising under the ...

laws ... of the United States."  The Court may issue a declaratory judgment in this case pursuant

to the provisions of the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

**Parties**

6.      Plaintiff Association of Administrative Law Judges ("AALJ"), an unincorporated

association affiliated with the International Federation of Professional and Technical Engineers

("IFPTE"), AFL-CIO, is the certified bargaining representative of more than 1,000 federal

Administrative Law Judges ("ALJs" or "Judges") who adjudicate cases involving the Social

Security Administration ("SSA") and the United States Department of Health and Human

Services ("HHS"). Any ALJ appointed pursuant to the statutory provisions contained in 5 U.S.C.

§ 3105 and employed by the federal government as an ALJ in a bargaining unit represented by

the AALJ is eligible for membership in the AALJ. The AALJ also grants associate membership

to ALJs not in bargaining units represented by AALJ.

7.      The ALJs represented by AALJ maintain offices and adjudicate cases throughout

the United States and several ALJs maintain offices and adjudicate cases in this judicial district.

8.      The purposes of the AALJ are to (a) preserve, promote, and improve the

guarantees and protections provided by the United States Constitution, the Administrative

Procedures Act, the Social Security Act and all other Federal laws; (b) to preserve, promote, and

improve the working conditions of Administrative Law Judges; (c) to preserve promote, and

improve the professionalism and competence of Administrative Law Judges by insuring

opportunities for continuing professional education and training; and (d) to preserve, promote,

and improve the rights of its members through collective bargaining, political action and all other

lawful concerted activities.

9.      Plaintiff David Agatstein is a current ALJ employed by SSA and a member of

AALJ.  Judge Agatstein was appointed an ALJ in 1991 and has served as an ALJ continually since his appointment.

10.     Plaintiff Karl Alexander is a current ALJ employed by SSA and a member of AALJ.  Judge Alexander was appointed an ALJ in 1997 and has served as an ALJ continually since his appointment.

11.     Plaintiff Edwin Shinitzky is a current ALJ employed by SSA and a member of AALJ.  Judge Shinitzky was appointed an ALJ in 1995 and has served as an ALJ continually since his appointment.

12.     Plaintiff Jon R. Hunt is a current ALJ employed by SSA and a member of AALJ. Judge Hunt was appointed an ALJ in 1990 and has served as an ALJ continually since his appointment.

13.     Plaintiff John K. Kraybill is a current ALJ employed by SSA and a member of AALJ.  Judge Kraybill was appointed an ALJ in 1994 and has served as an ALJ continually since his appointment.

14.     Plaintiff James Norris is a current ALJ employed by SSA and a member of AALJ. Judge Norris was appointed an ALJ in 1990 and has served as an ALJ continually since his appointment.

15.     Plaintiff Cheryl Rini, is a current ALJ employed by SSA and a member of AALJ. Judge Rini was appointed an ALJ in 1995 and has served as an ALJ continually since her appointment.

16.     Plaintiff Mary Rita Luecke is an attorney in the private practice of law in Evanston, Illinois.  Ms. Luecke is qualified to be an applicant for the federal administrative law

judge position.  Ms. Luecke did not receive advance notice of the Vacancy Announcement issued on May 4, 2007.  Due to the early closing of the application submission period, Ms. Luecke was not able to submit an application prior to the closing of the Vacancy Announcement on or about May 8, 2007.

17.     Plaintiff Russell Doty is an attorney in the private practice of law  in Billings, Montana.  Mr. Doty is qualified to be an applicant for the federal administrative law judge position.  Mr. Doty did not receive notice of the Vacancy Announcement issued on May 4, 2007 until May 7, 2007.  Mr. Doty was traveling for work when he received the notice.  Due to the early closing of the application submission period, Mr. Doty was not able to submit an application prior to the closing of the Vacancy Announcement on or about May 8, 2007.

18.     Plaintiff Ned Richardson is an attorney in the private practice of law in South Weymouth, Massachusetts.  Mr. Richardson is qualified to be an applicant for the federal administrative law judge position.  Mr. Richardson did not receive advance notice of the Vacancy Announcement issued on May 4, 2007.  Due to the early closing of the application submission period, Mr. Richardson was not able to submit an application prior to the closing of the Vacancy Announcement on or about May 8, 2007.

19.     Defendant Linda M. Springer is the Director of the United States Office of Personnel Management.

20.     Defendant United States Office of Personnel Management ("OPM") is an Independent Agency of the United States Government that sets eligibility standards for the civil service of the federal government.  OPM' s headquarters and the administrative officers responsible for the issuance of the final rule are located in this judicial district.

6

**History of the ALJ Program**

21.     As part of the statutory scheme designed to improve and professionalize the federal administrative processes, federal ALJs are appointed and serve pursuant to the Administrative Procedure Act (APA), 60 Stat. 237 (June 11, 1946).  The original Act was repealed by Pub. L. No. 89-554, 80 Stat. 381 (September 6, 1966) and its provisions were codified and incorporated into the following sections of Title 5 of the United States Code: 5 U.S.C. §§ 551-559, 701-706, 1305, 3105, 3344, 5372 and 7521.

22.     Regulations appearing in 5 CFR Part 930 governing the appointment, pay and removal of ALJs serving the federal departments and agencies were first published by the former Civil Service Commission ("CSC") in 1947 subsequent to enactment of the APA of 1946 (60 Stat. 237). 12 Fed. Reg. 6321 (September 23, 1947).

23.     The Civil Service Reform Act ("CSRA") of 1978 amended the APA to delegate to OPM the responsibility for the examination and appointment of applicants to federal ALJ positions and for prescribing of pay rates of ALJs. 5 U.S.C. §§ 1104(a)(1), 1305.  In order to ensure and protect the decisional independence of the ALJs, it also exempted ALJs from specific agency performance appraisal processes and transferred to the Merit Systems Protection Board ("MSPB") responsibility for any removal or reduction in pay of ALJs. 5 U.S.C. §§ 1305, 7521.

24.     5 U.S.C. § 3105 provides:

> Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with sections 556 and 557 of this title. Administrative law judges shall be assigned to cases in rotation so far as practicable, and may not perform duties inconsistent with their duties and responsibilities as administrative law judges.

25.     ALJs appointed under Section 3105 enjoy a unique and protected status in the federal administrative system because they are the only federal administrative adjudicators

appointed after a rigorous merit selection process and the only ones with statutorily-protected decisional independence and tenure. Pursuant to 5 U.S.C. § 7521, ALJs appointed pursuant to 5 U.S.C. § 3105 are accorded APA protections so as to ensure judicial independence.  Under this provision, ALJs may be removed, suspended, reduced in pay or grade or furloughed by an agency only after "good cause" is established and determined by the MSPB after a hearing on the record.

26.    "Good cause" generally requires conduct or actions by an ALJ that undermine the confidence in the administrative adjudicatory process. *SSA v. Davis,* 19 M.S.P.R. 279, 282 (1984), *aff'd,* 758 F.2d 661 (Fed. Cir. 1984).  Other categories of "good cause" include misconduct or incompetence, insubordination, physical incapacity, violation of statute or regulation, performance during adjudicatory proceeding, and low productivity. See, M. Asimow, *A Guide to Federal Agency Adjudication* (2003), Chpt. 10.  If a disciplinary action by an agency is arbitrary, politically motivated, or based on a reason that constitutes an improper interference with the performance by an ALJ of his or her judicial functions, there is no good cause.  A charge based on "efficiency of the service" will also not satisfy the requisite burden. *Id.*

27.    In *Butz v. Economou,* 438 U.S. 478, 513-14 (1978), the U.S. Supreme Court defined the role of federal ALJs as follows:

> There can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is "functionally comparable" to that of a judge. His powers are often, if not generally, comparable to those of a trial judge: He may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions. See § 556 (c). More importantly, the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency. ... [t]he Administrative Procedure Act contains a number of provisions designed to guarantee the independence of hearing examiners. They may not perform duties inconsistent with their duties as hearing examiners. 5 U.S.C. § 3105 (1976 ed.). When conducting a hearing under § 5 of the APA, 5 U.S.C. § 554 (1976 ed.), a hearing examiner is not responsible to, or subject to the supervision or direction of,

employees or agents engaged in the performance of investigative or prosecution
functions for the agency. 5 U.S.C. § 554 (d)(2) (1976 ed.). Nor may a hearing
examiner consult any person or party, including other agency officials, concerning
a fact at issue in the hearing, unless on notice and opportunity for all parties to
participate. § 554 (d)(1). Hearing examiners must be assigned to cases in rotation
so far as is practicable. § 3105. They may be removed only for good cause
established and determined by the Civil Service Commission after a hearing on the
record. § 7521. Their pay is also controlled by the Civil Service Commission.

28.    In order to achieve its statutory purpose, the APA creates a "comprehensive

bulwark" to protect ALJs from agency interference.  The independence granted to federal ALJs

was designed by Congress to maintain public confidence in the essential fairness of the process

through which claims by individuals aggrieved by agency action are adjudicated. *Nash v.*

*Califano,* 613 F.2d 10, 20 (2 Cir. 1980).  The statutory framework mandates that ALJs are to

function as independent and impartial adjudicators in the federal administrative process.  The ALJ

is the only independent and impartial adjudicator available to an aggrieved party in the federal

administrative process. As such, the ALJ is potentially the only person who stands between the

claimant and agency administrative whim or bias.

29.    In general, standards of conduct for federal employees are established by the Office

of Government Ethics ("OGE").  Individual agencies may supplement standards of conduct for

their employees and specify training for ALJs. SSA outlined an ALJ's duties and responsibilities

in the *ALJ Administrative Handbook.*  The *ALJ Administrative Handbook* addresses "Standards of

Conduct" and "Outside Activities" including an explicit restriction on the practice of law. SSA's

ALJ *Administrative Handbook* specifically states:

> The SSA Guide on Employee Conduct contains restrictions against the practice of
> law, or other activities where an Administrative Law Judge may be involved as an
> advocate or participant in controverted legal matters. Part VII, section I. By
> analogy, Canon 4 of the American Bar Association's Code of Judicial Conduct
> states that a judge should regulate his or her extra-judicial activities to minimize

the rise of conflict with Judicial duties. The ABA Code of Judicial Conduct also
restricts fiduciary interpersonal relationships and absolutely prohibits the practice
of law by judges. Canon 4 sections E. And G., respectively.

*ALJ Administrative Handbook,* SSA, OHA, SSA Pub. No. 70-045 (May 1994), pp. 29-30.

(Attached to the original Complaint as Exhibit 1).

30.      Canon 4(G) of the Code of Judicial Conduct, adopted by the American Bar

Association ("ABA") in 1990, also provides that a "judge shall not practice law." The ABA's

Code of Judicial Conduct is the most acknowledged source of judicial ethics and has been applied

by the Office of Personnel Management to federal administrative law judges. *See In the Matter of*

*Chocallo,* 1 M.S.P.R. 605 (1978), *aff'd,* 1 M.S.P.R. 612 (1980). The most recent ABA Code of

Judicial Conduct specifically includes ALJs and prohibits the practice of law by Judges.

### ALJs Were Never Required to Maintain Active Bar Status

31.      The APA and the CSRA contain no requirements, explicit or implicit, that require

incumbent ALJs to maintain active bar membership status. Prior to the promulgation of the Final

Rule on March 20, 2007, none of the regulations under the APA required active bar membership

status for ALJs. SSA's *ALJ Administrative Handbook* contains no requirement that ALJ maintain

active bar membership.

32.      On January 9, 1989, James R. Rucker, Jr., then SSA's Chief Administrative Law

Judge, speaking for SSA, issued a Memorandum specifically informing ALJs that OPM did not

require active bar membership after appointment as an ALJ. The Memorandum noted that while

many states allow Judges, including SSA ALJs, to enter into inactive status, not all states have an

inactive category. Acting in reliance on this Memorandum, many SSA ALJs allowed their bar

memberships to convert to inactive or other status. (Attached to the original Complaint as Exhibit

2).

33.     On or about August 11, 1994, OPM approved the current Position Description

("PD") for ALJs appointed by the SSA and it has not been substantively modified since that date.

The SSA PD does not contain any requirement, implicitly or explicitly, that an ALJ maintain

active bar membership after appointment as an ALJ. (Attached to the original Complaint Exhibit

3).

34.     In 1998, Rhoda Lawrence, then OPM Assistant General Counsel, contrary to the

accepted understanding of ALJ requirements, suggested that it was OPM policy that all

government attorneys must be currently authorized to engage in the practice of law and that such

requirement applies not only as a qualification requirement for appointment to an attorney

position but is a continuing requirement necessary to perform the ongoing duties of an attorney.

As for Administrative Law Judges, Ms. Lawrence opined that ALJs must meet the same

professional licensing requirements as attorneys and that the requirement for bar membership and

eligibility to practice law "as an attorney" should remain in effect as a continuing requirement

after an applicant is appointed to an ALJ position. Ms. Lawrence noted that "judicial" status may

satisfy this requirement. (Attached to the original Complaint as Exhibit 4).

35.     In 2000, OPM conceded that Ms. Lawrence's opinion that bar membership and

eligibility to practice law remained a continuing requirement for ALJs was "in error." On May 12,

2000, in response to a specific request from ALJ Bruce L. Birchman, OPM representative

Armando Rodriguez confirmed to ALJ Birchman that ALJs were not required to maintain active

bar membership after appointment. (Attached to the original Complaint as Exhibit 5).

36.     In a July 12, 2000 letter drafted to the State of Texas Board of Law Examiners,

11

OPM Deputy Director Espinosa-Ross reiterated the accepted understanding of ALJ requirements and stated: "[p]rior to appointment as an Administrative Law Judge, applicants are required to be duly licensed to practice law and be in 'active' status with their State Bar. However, the provisions of 5 CFR 930.20 1 *et seq* do not specifically state that current Administrative Law Judges must maintain their 'active' status after their appointment as Federal Administrative Law Judges." (Attached to the original Complaint as Exhibit 6).

37.     On January 18, 2001, the SSA's Office of the Chief Administrative Law Judge ("OCALJ"), removed a Reminder from the OCALJ website concerning ALJ active bar membership pending "further clarification on Bar Membership requirements from OPM. Once we get the necessary clarification we will include it in our Chief Judge Reminders." No such clarification was posted. Upon information and belief, OPM never informed the OCALJ that ALJs were required to maintain active bar membership after appointment.

**Rule-Making Process**

38.     On December 13, 2005, OPM published its initial Notice of Proposed Rule-Making ("NPRM"). 70 Fed. Reg. 73646 (Vol. 70, No. 238). On December 21, 2005, OPM republished its NPRM "due to information that was inadvertently omitted " from the December 13, 2005 NPRM. 70 Fed. Reg. 75745 (Vol. 70, No. 244)

39.     The December 21, 2005 NPRM proposed to revise the Administrative Law Judge Program ("ALJ Program") with the stated objective of regulatory streamlining and reorganization, removing obsolete pay system instructions, and clarifying OPM and agency responsibilities. Substantively, the proposed regulations purported to (1) modify the ALJ Examining System and (2) impose a mandatory bar licensing requirement on incumbent ALJs as a condition of

continuing employment.

40.    In response to the NPRM, the AALJ, and other groups that represent ALJs, submitted comments in opposition to the proposed regulations. The commenters demonstrated that OPM was incorrect in stating that active bar status was a long-standing requirement applicable to incumbent Administrative Law Judges.  The commenters showed that active bar status was never a requirement in any OPM published rule or regulation; is not set forth in a Policy Statement and is not a requirement of the Administrative Procedure Act.  The commenters also established that OPM lacked statutory authority to promulgate such a policy under the APA and that implementation of the Final Rule would conflict with the American Bar Association Judicial Code of Conduct and may conflict with State licensing requirements.

41.    On March 20, 2007, OPM issued the Final Rule. 72 Fed. Reg. 12947 (Vol. 72, No. 053).  The Final Rule purports to "clarify" that active bar membership status (defined as being duly licensed and currently authorized to practice law) is a continuing "condition of employment" for any person serving as a federal ALJ (whether as an incumbent ALJ, a prior ALJ applying for reinstatement or a retired ALJ serving in the Senior ALJ program).  In other words, ALJs could be removed from their positions by OPM under the guise of the "condition of employment" standard rather than through the specific MSPB requirements established by Congress in the 1978 revisions to the Administrative Procedure Act.

42.    The Final Rule at 5 C.F.R. § 930.204(b) provides:

Licensure. At the time of application and any new appointment and while serving as an administrative law judge, the individual must possess a professional license to practice law and be authorized to practice law under the laws of a State, the District of Columbia, the Commonwealth of Puerto Rico, or any territorial court established under the United State Constitution. Judicial Status is acceptable in

lieu of "active" status in States that prohibit sitting judges from maintaining
"active" status to practice law. Being in "good standing" is also acceptable in lieu
of "active" status in States where licensing authority considers "good standing" as
having a current license to practice law.

43.    The final regulations also provides that:

[t]he failure at any time (applicant or incumbent)to meet a minimum qualification
requirement means the individual is not qualified to perform the duties of the
position.

72 Fed. Reg. 12947, 12948.

44.    The final regulations state that "as it is not a new requirement, a transition period is

not needed."  Accordingly, all ALJs must satisfy the requirements of the Final Rule as of the

effective date, April 19, 2007, pursuant to this provision. 72 Fed. Reg. 12947, 12949.

45.    The Final Rule at C.F.R. §930.211(c)(1), purports to exempt OPM actions under 5

C.F.R. Part 731 from the provisions of 5 U.S.C. § 7521, which would circumvent the

longstanding requirement that an agency establish good cause on the record during a hearing with

the MSPB prior to the removal of, or other adverse action against, an ALJ.

### Impact of the Final Rule on Judges

46.    The requirement that incumbent federal ALJs maintain active bar membership

status subsequent to appointment to an ALJ position with a federal agency is a radical departure

from previous regulations.  Since the enactment of the APA in 1946, neither OPM nor the federal

agencies appointing ALJs have required incumbent federal ALJs to maintain active bar

membership status subsequent to appointment.

47.    Categories of bar membership vary widely from state to state. Most states allow

ALJs to select "active," "inactive" or "judicial" status.  Certain states, however, such as the

14

Commonwealth of Virginia, bar judges from maintaining active status.  In these jurisdictions, Judges usually must select either "inactive" or "judicial" status.

48.    In all jurisdictions, an active bar status member is in good standing and authorized to practice law. Individuals in "inactive" or "judicial" status are also in good standing with the bar, but generally are not authorized to practice law.

49.    The requirements to maintain active bar membership vary widely from state to state. Most states, however, require active bar members to complete continuing legal education ("CLE") credit, maintain client security trust funds, and pay specified bar dues.  Some states impose other requirements on active status members, such as compulsory *pro bono* requirements. For inactive or judicial members, these requirements are normally waived or reduced.

50.    ALJs are often assigned to, and adjudicate cases in, states other than the jurisdiction in which they are licensed. In some instances, CLE courses must be completed in the state of license rather than the state of residence.  Application of such rules would create substantial hardship for affected ALJs by requiring them to travel to their state of license to satisfy CLE requirements.

51.    Based on earlier guidance from OPM and SSA, dating back to at least 1989, numerous incumbent ALJs ceased maintaining "active" bar status. Prior to the issuance of the Final Rule, these ALJs were never required to change their status.  Many of these ALJs will be unable to come into "active" status prior to the effective date of the Final Rule because of CLE requirements, payment of dues, in some instances back dues for each year the ALJ was not active, or other obstacles to changing status, including bureaucratic processes of state bar associations that may take months to complete.  In the most extreme cases, ALJs may have to retake the bar

examination to convert to active status.

52.    Incumbent ALJs unable to become "active" by the effective date of the Final Rule are at risk of not meeting a purported "continuing requirement" of their position.  This risk is heightened by OPM's statement that ALJs failing to satisfy this continuing requirement are not qualified for their positions.  The ALJs are left in a position of not knowing whether they have an obligation to resign based on their failure to meet the Final Rule's requirements or whether OPM or an agency will take action to remove them from their positions.

53.    The Final Rule casts doubt on such Judges ability to schedule hearings, continue to adjudicate pending cases and issue opinions.  In addition, implementation of the Final Rule may put ALJs, who elected "inactive" or "judicial" status based on prior guidance, in jeopardy of being in conflict with state bar association rules.  The removal or forced resignation of an ALJ for the failure to comply with the Final Rule will cause irreparable harm to the ALJ, the impacted agencies and the general public.

## CAUSES OF ACTION

### Count I

### OPM Does Not Have the Authority to Promulgate the Final Rule

54.    Plaintiffs reassert and reallege the allegations contained in paragraphs 1 through 53 of this complaint as though contained herein.

55    Section 706 of the APA authorizes a court to "set aside agency action, found to be ... (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights." 5 U.S.C. § 706(2)(C).

56.    OPM was delegated the authority regarding the selection and appointment of ALJs,

including conducting competitive examinations for federal administrative law judge positions.

57.    Congress, however, never granted OPM the authority to regulate ALJ post-appointment conditions of employment of Administrative Law Judges in the manner contemplated by the Rule 930.204(b).

58.    In issuing the Final Rule, OPM's actions amount to a subterfuge to exercise unlawful control over ALJs in contravention of APA Section 11's prohibition of amendments to or modification of the Act other than by "express" Congressional Act. Nothing in the plain language of 5 U.S.C. § 3105, "Appointment of administrative law judges," reasonably can be read to require ALJ active bar status for the duration of federal employment and to vest in OPM the responsibility to ensure that this requirement is realized.

59.    There is no statutory basis for OPM's promulgation of Final Rule 930.211(c). This Rule is inconsistent with the statutory provisions of 5 U.S.C. § 7521 to the extent that it allows OPM to remove or otherwise take adverse actions against ALJ without establishing good cause during a hearing before the MSPB.

60.    The Final Rule is inconsistent with the APA and beyond the authority Congress granted to OPM to administer the selection and appointment function. As Congress did not expressly authorize OPM to regulate incumbent ALJs in the manner asserted, the assertion of the such authority by OPM is ultra vires.

## Count II

## The Final Rule is Arbitrary, Capricious and Not Rational in Light of the Record

61.    Plaintiffs reassert and reallege the allegations contained in paragraphs 1 through 60 of this complaint as though contained herein.

62.     Section 706 of the APA authorizes a court to "set aside agency action, found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

63.     In issuing the Final Rule, OPM asserted that the Final Rule promotes efficiency, will ensure that ALJs remain subject to a code of professional responsibility and is rationally related to the ALJ position.

64.     OPM failed to provide any example or basis that supports its assertion that the Final Rule "promotes efficiency." Indeed, many ALJs do not currently satisfy the provisions of the Final Rule and there is absolutely no evidence that the lack of an "authorization to practice law" hinder the efficiency of such judges.

65.     OPM's assertion that the Final Rule will ensure that ALJs remain subject to a code of professional responsibility is devoid of merit. ALJs are currently subject to the Code of Judicial Conduct adopted by the American Bar Association pursuant to a ruling by the MSPB. Furthermore, state bar associations generally may not discipline ALJs for actions in their capacity as ALJs. To the extent that ethics rules of state bar associations apply to ALJs, these rules are as applicable to "inactive" and "judicial" bar status individuals as they are to active bar status individuals.

66.     The requirement that incumbent ALJs remain "duly licensed and authorized to practice law" is not rationally related to the duties of an ALJ. Nothing in an ALJs' duties requires an ALJ to be authorized to practice law. Indeed, ALJs are specifically prohibited from engaging in the practice of law.

67.     The Final Rule concedes that some jurisdictions prohibit ALJs from maintaining

"active" status to practice. The Final Rule allows ALJs licensed in such jurisdictions to merely be in "good standing" rather than "active" status. It is arbitrary and capricious to mandate that some ALJs must maintain active bar status while allowing other ALJs to simply be in "good standing."

68.     The Final Rule is arbitrary, capricious and an abuse of discretion. Lacking any rational relationship with the duties, functions, decisional independence and special status of incumbent ALJs under the APA, the Final Rule will, if implemented, have a deleterious impact on ALJs and the subject agencies.

## Count III

### The OPM's Rule Making Was Defective

69.     Plaintiffs reassert and reallege the allegations contained in paragraphs 1 through 68 of this complaint as though contained herein.

70.     Section 706 of the APA authorizes a court to "set aside agency action, found to be ... (D) without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

71.     Section 553 of the APA mandates that agencies provide notice of a proposed rule setting forth "either the terms or substance of the proposed rule or a description of the subjects and issues involved" and "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(b) & (c).

72.     "Studies and data" upon which the agency relies for its proposed rule must be submitted to the public for evaluation in order to ensure the opportunity for evaluation. *Chamber of Commerce of the United States v. SEC,* 443 F.3d 890 (D.C. Cir. 2006); *Prometheus Radio Project v. FCC,* 373 F.2d 372, 412 (3d Cir. 2004). In other words, the APA prevents agencies

from "relying on materials not in the rule-making record without affording an opportunity for public comment." *Chamber of Commerce,* 443 F.3d at 894.

73.     In the Final Rule, OPM for the first time asserted that the active status requirement was "professionally developed, is supported by a job analysis, and is rationally related to performance in the position to be filled." 72 Fed. Reg. 12948.  Nowhere in its proposed notice of rule-making did the agency defend the proposed rule on the basis of any job analysis or explain how an ALJ in active bar status would perform his or her job more competently or efficiently.

74.     To support its new position, OPM relied upon three job analyses conducted by OPM's Personnel Research Psychologists in 1990, 1999, 2002.  According to the agency, these reports were critical to the agency in showing that "Integrity/Honesty is fundamental for performing the duties of an administrative law judge."  More importantly, the OPM, for the first time, stated that the 2002 study "documents the usefulness and job-relatedness of requiring, as minimum qualifications, bar membership. . ." *Id.*  The 1990, 1999, and 2002 studies are not generally available and cannot be found on OPM's website or at any other readily available source.

75.     In relying on studies not mentioned in the proposed regulations and absent from public scrutiny, OPM deprived the commenters of the ability to assess the methodology and salience of the reports.  The commenters could not determine whether the reports actually equated "active status" to "bar membership" or whether agency officials simply made this inference. Commenters were deprived of the opportunity to assess any link the reports forged between "Integrity/Honesty" for ALJs and active bar status, and how that link was established. OPM's reliance on such materials undermined the integrity of the rule-making process.

## Count IV

### The Final Rule is Inconsistent with the Plain Statutory Language.

76.     Plaintiffs reassert and reallege the allegations contained in paragraphs 1 through 75 of this complaint as though contained herein.

77.     Section 706 of the APA authorizes a court to "set aside agency action, found to be .. (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights." 5 U.S.C. § 706(2)(c).

78.     A regulation is invalid if it is inconsistent with unambiguous statutory language.

79.     Section 3105 of the APA provides:

>  Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with sections 556 and 557 of this title.  Administrative law judges shall be assigned to cases in rotation so far as practicable, and may not perform duties inconsistent with their duties and responsibilities as administrative law judges.

5. U.S.C. § 3105

80.     Subpart B of the Final Rule provides in pertinent part:

>  An agency employing administrative law judges under 5 U.S.C § 3105 has: ... (2) The authority to assign an administrative law judge to cases in rotation so far as is practicable; ....

5.C.F. R. § 930.201(f)(2)

81.     The Final Rule radically alters the statutory mandate that Administrative Law Judges shall be assigned to cases in rotation so far as practicable under 5 U.S.C. §706(2)( c ). The Final Rule purports to grant agencies the authority to assign ALJs in rotation.  By transforming a mandatory statutory requirement of OPM into discretionary agency authority, the Final Rule is inconsistent with the plain language of the statute and, thus, is invalid.

21

## Count V

### The Vacancy Announcement and the Notice of Examination for ALJ Applicants are Arbitrary and Capricious.

82.    Plaintiffs reassert and reallege the allegations contained in paragraphs 1 through 81 of this complaint as though contained herein.

83.    Section 706 of the APA authorizes a court to "set aside agency action, found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)

84.    Prior to the issuance of the Final Rule, the ALJ Examination Announcement was established through the notice and comment rule-making procedures.  The Final Rule removes ALJ Announcement No. 318 and the ALJ examination and selection process from the rule-making process.  Pursuant to the Final Rule, the ALJ qualification standards and examination process will be established on an *ad hoc* basis by issuance of a Notice of Examination.

85.    This change deprives the public of transparency, reasons and facts related to any change in standards and the opportunity to comment prior to any change.  A Notice-based examination and selection process which is subject to *ad hoc*, ungrounded, unannounced changes in qualification standards and selection methodologies eliminates vital checks designed to ensure that the system is fair and results in the appointment, as ALJs, of individuals who possess superior qualifications.

86.    OPM did not find or make public any factual basis or professionally validated studies demonstrating that a Notice-based process was superior to a rule-based process in ensuring that applicants for the ALJ position would possess superior qualifications, diverse

22

experience and independence of judgment.

87.    OPM did not find or make public any factual basis or professionally validated studies demonstrating that a Notice-based process would avoid the pitfalls of "selective certification" of federal agency attorneys over other qualified attorneys in private practice.

88.    Pursuant to the Final Rule, OPM issued a Qualification Standard for the ALJ Position on April 20, 2007.  There is no evidence that the new Qualification Standard announced in April was professionally developed was required under 5. C.F.R. § 300.103.  On or about May 4, 2004, OPM issued an ALJ Vacancy Announcement and solicited qualified individuals to apply to take the new ALJ exam.  The Vacancy Announcement stated that applications would be accepted until the earlier of May 18, 2007, or OPM's receipt of 1250 applications.

89.    Pursuant to OPM's stated application methodology, applicants would be screened for meeting minimum qualifications.  Those applicants meeting minimum qualifications would be invited to take a written examination and undergo an in-person evaluation.  Based on rates of the several factors to be considered, applicants who score at or above a minimum composite score will then be placed on the register ["new register"] for qualified applicants.  From the new register, agencies needing ALJs will then interview and offer positions to those they deem best suited for ALJ position openings within that agency.

90.    At the same time as it issued its new ALJ vacancy announcement, OPM informed agencies in need of ALJs that such agencies were free to continue hiring ALJs off the old register. When a new register would be established in approximately November 2007, OPM would then close the old register.  OPM notified those individuals on the old register that they should consider filing an application to take the new exam and become qualified on the new register.

91.    On information and belief, OPM gave advance notice to one or more agencies during the period January through April 2007 that the OPM would be issuing an ALJ position Vacancy Announcement shortly after it issued new ALJ rules.  On information and belief, these Agencies received notice of the new examination and qualification standards in advance of OPM placing the Notice on its web-site.

92.    On information and belief, Agencies who received pre-website notice of the Vacancy Announcement and new ALJ examination process shared this information with attorneys employed by those agencies in advance of notice to the general public.  As a result of this advance notice, these agency attorneys received preferential treatment.

93.    On information and belief, on the same day that OPM posted the new ALJ exam on its web site, hundreds of federal agency attorneys with advanced notice of the Vacancy Announcement, took the day off work in order to commence the time-consuming application process.

94.    Within three (3) business days following the day the ALJ Vacancy Announcement was posted on OPM web site, OPM closed the Vacancy Announcement as the total number of applications had reached the 1250 mark.

95.    On information and belief, seventy-percent (70%) or more of the applicants who timely filed an application before the closing of the announcement are individuals who are employed by federal government agencies and whose legal experience qualification to become an ALJ rests solely on seven (7) or more years of administrative law experience as a federal agency employee and not based on the private practice of law as a general litigation attorney or as a practioner representing parties before a federal or state administrative agency.

24

96.    On information and belief, only thirty-percent (30%) or less of the applicants who timely filed an application within the seventy-two (72) hour window of opportunity prior to closure have legal experience qualification to become an ALJ resting on seven (7) or more years of litigation experience or experience as a practioner representing parties before a federal or state administrative agency.

97.    The new ALJ examination application process was administered in an unfair, discriminatory, arbitrary and capricious manner that disproportionately favored individuals currently working for federal government agencies who received advanced or early notice of the Vacancy Announcement and that disproportionately disfavored all other potentially qualified applicants not currently employed as attorneys with a federal agency.

98.    As a result, the new register or applicants will enable hiring agencies to practice selective certification of individuals whose qualifying legal experience has been as an employee of that agency and whose judicial independence from that agency in their new position as adjudicators is likely to be compromised by virtue of their prior employment with that agency.

99.    As a result, the new register of qualified attorney applicants will permit agencies to withhold offers of employment as ALJs to individuals whose qualifying legal experience as litigators or administrative law practitioners would bring to their new position an independence of judgment and an understanding of the need for judicial independence in the ALJ position unencumbered by any ties to the agency by virtue of prior employment with that agency.

100.    As applied, OPM's new examination process undermines and is inconsistent with Congress' intent to establish an independent federal administrative judiciary whose members possess superior qualifications, diversity of experience and independence of judgement.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)    Enter a preliminary injunction staying implementation of the Final Rule mandating active Bar membership for ALJs;

(b)    Declare the Final Rule null and void;

(c)    Permanently enjoin OPM from requiring ALJs to maintain active bar membership;


(d)    Declare the ALJ Vacancy Announcement and Notice of Examination null and void;

(e)    Award Plaintiff attorneys' fees and costs in this matter under the Equal Access to Justice Act or any other applicable statute; and

(f)    Grant such other and further relief as the Court deems just and equitable.


Respectfully submitted,


 _/S/_ Robert H. Stropp, Jr.

Robert H. Stropp, Jr. D.C Bar #429737
Richard C. Welch, D.C Bar #485756
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 783-0010
Facsimile: (202) 783-6088

Attorneys for the Plaintiffs


June 14, 2007

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 14, 2007, a true and correct copy of the foregoing First

Amended Complaint was served via the Court's ECF system/electronic mail and by U.S.

Mail, first class postage prepaid, on the following:

Christopher Hall
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
christoper.hall@usdoj.gov

Kerry McTigue
General Counsel
United States Office of Personnel Management
1900 E Street, NW
Washington, D.C. 20415-9700

/s/ Richard C. Welch
Richard C. Welch
Attorney for the Plaintiffs

27