## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil No. 07cv00711 (RMC) |
| v. | ) ) | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants respectfully move the Court to dismiss this action. The accompanying memorandum sets forth the grounds for this motion.

Dated: September 21, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SUSAN RUDY
Assistant Branch Director

OF COUNSEL:

KERRY B. McTIGUE
General Counsel
KATHIE ANN WHIPPLE
Deputy General Counsel
JULIE FERGUSON QUEEN
Deputy Assistant General Counsel
ANTONIO A. SAN MARTIN, JR.
Senior Policy Counsel
ROBIN M. RICHARDSON
ROBERT J. GIROUARD
Attorneys
Office of the General Counsel
U.S. Office of Personnel Management
1900 E St. NW, Room 7536
Washington, D.C. 20415

(202) 606-1700

 _/s/ Christopher R. Hall_____
CHRISTOPHER R. HALL
JUSTIN M. SANDBERG
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C.  20530

(202) 514-4778

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, <u>et al.</u>,         ) | |
| ) | |
| Plaintiffs,    ) | |
| ) | Civil No. 07cv00711 (RMC) |
| v.    ) | |
| ) | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, <u>et al.</u>,    ) | |
| ) | |
| Defendants.    ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
<u>PURSUANT TO FED. R. CIV. P. 12(b)(1)</u>**

Plaintiffs – the Association of Administrative Law Judges ("AALJ"), seven individual administrative law judges ("ALJs"), and three attorneys in private practice – assert five counts (some including more than one discrete claim) against the United States Office of Personnel Management ("OPM") and Linda M. Springer, the Director of OPM. As to each claim, Plaintiffs have failed to show that they possess standing under Article III of the Constitution. Thus, Plaintiffs' Second Amended Complaint must be dismissed for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

As to Counts I through III, AALJ and the incumbent ALJs challenge a Final Rule codified at 5 C.F.R. § 930.204(b) that memorializes a longstanding OPM requirement that sitting ALJs maintain a certain level of bar membership in at least one jurisdiction (the level required may be "active," "judicial," or "good standing" status, depending upon the rules of the licensing jurisdiction). But Plaintiffs lack standing to bring these three claims for one fundamental reason: while they vaguely assert that many ALJs may have allowed their bar memberships to lapse and

will be burdened if they must regain their former membership status, they have identified no individual Plaintiff or member of AALJ who has actually allowed his or her bar membership to lapse, and is thus out of compliance with this longstanding requirement. Thus, Plaintiffs have failed to even plead the existence of the injury-in-fact necessary to support standing. For that reason, Counts I through III are outside the Court's subject-matter jurisdiction.

As to Count IV, AALJ and the incumbent ALJs challenge a separate subsection of the Final Rule that simply delegates to agencies that employ ALJs the authority to assign their ALJs "to cases in rotation so far as is practicable." See 5 C.F.R. § 930.201(f)(2). Plaintiffs allege that the provision misconstrues the statutory authority upon which it is based, and thus falls outside OPM's authority. However, Plaintiffs lack standing because they identify no manner in which § 930.201(f)(2) might cause any injury whatsoever, much less any injury to their specific interests. If there is no injury at all, there can be no "case" or "controversy" sufficient to invoke Article III jurisdiction over any claim challenging this provision. And without any such alleged injury to their specific interests, Plaintiffs cannot possess standing. For these reasons, Count IV is outside the Court's subject-matter jurisdiction.

Finally, as to Count V, the three private-practice attorney Plaintiffs challenge some aspects of the procedure OPM employed to advertise and compile applications for new ALJ appointments. These Plaintiffs, like their counterparts in Counts I through IV, lack standing to bring Count V for several reasons. For one thing, Plaintiffs have failed to demonstrate how OPM's alleged failures injured them. For another, even assuming a sufficient allegation of injury, Plaintiffs have failed to allege any intent to apply anew under any reconstituted vacancy announcement despite their assertion that the current vacancy announcement should be set aside

as null and void. Accordingly, the relief they seek would provide them no redress. Thus, Count

V, like Counts I through IV, is outside the Court's subject-matter jurisdiction.

For each of these reasons, and as detailed herein, the Court should dismiss Plaintiffs'

Second Amended Complaint.

## BACKGROUND AND PROCEDURAL HISTORY

Pursuant to 5 U.S.C. § 3301 et seq., OPM possesses the authority to regulate the

appointment and post-appointment employment conditions of ALJs. See, e.g., 5 U.S.C. 3301,

3304. This includes the authority to set appointment qualification standards, prescribe rules and

procedures for hiring through competitive examination, including the creation of a register of

ALJ candidates from which employing agencies can make appointments, and establish standards

of employment for incumbent ALJs. See, e.g., 5 U.S.C. § 3301.

On December 21, 2005, OPM published a proposed rule that, inter alia, explained that

ALJ applicants and incumbent ALJs must satisfy bar licensure requirements as follows:

> At the time of application and any new appointment and while serving as an
> administrative law judge, the individual must possess a professional license to
> practice law under the laws of a State, the District of Columbia, the Commonwealth
> of Puerto Rico, or any territorial court established under the United
> States Constitution. Judicial status is acceptable in lieu of "active" status in States that
> prohibit sitting judges from maintaining "active" status to practice law. Being in
> "good standing" is also acceptable in lieu of "active" status in States where the
> licensing authority considers "good standing" as having a current license to practice
> law.

70 Fed. Reg. 75745, 75749 (Dec. 21, 2005). The proposed rule also included changes to the

examining process for evaluating and appointing ALJ applicants. Prior to the proposed rule,

OPM regulations prescribed the steps of the competitive examination process for ALJs, and

incorporated by reference Examination Announcement No. 318, which set forth the qualification

standards for ALJ candidates and the examination process.  The proposed rule removed references to the testing process and Vacancy Announcement 318 from OPM's regulations to give OPM greater flexibility to make periodic changes to the method by which examinations are conducted and administered, where such changes are appropriate, without having to amend its regulations each time.  Id. at 75746.

After a notice-and-comment period, the proposed rule was adopted in a Final Rule published March 20, 2007, with an effective date of April 19, 2007.  See 72 Fed. Reg. 12,947 (March 20, 2007).   The portion of the proposed rule concerning the bar licensure requirement was codified at 5 C.F.R. § 930.204(b).  On May 4, 2007, OPM issued a Vacancy Announcement seeking applications for ALJ positions.  See, e.g., 2d Am. Comp. ¶ 18.

Plaintiffs filed the instant action on April 19, 2007 [Docket No. 1].  After filing their original complaint, Plaintiffs amended their complaint twice [Docket Nos. 6, 7, 9].  The Second Amended Complaint alleges five counts on behalf of AALJ; seven individual incumbent ALJs employed by the Social Security Administration ("SSA"); and three private-practice attorneys who each allege they were "not able to submit an application [to be ALJs] prior to the closing of the Vacancy Announcement on or about May 8, 2007."  2d Am. Comp. ¶¶ 6-18.

Counts I through IV relate to Plaintiffs AALJ and the seven individual sitting ALJs. Counts I through III assert that the bar licensure requirement was outside of OPM's authority to promulgate, that it is arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and that it was the product of a procedurally defective rule-making under § 706(2)(D) of the APA, respectively.  See 2d Am. Comp. ¶¶ 54-59, 61-75.  Count IV challenges a subsection of the Final Rule, 5 C.F.R. § 930.201(f)(2), which states that agencies have the

4

"authority to assign an administrative law judge to cases in rotation so far as is practicable." 5 C.F.R. § 930.201(f)(2). Plaintiffs contend that this provision contradicts § 3105 of the APA, which provides that ALJs "shall be assigned to cases in rotation so far as practicable," 5 U.S.C. § 3105, by "transforming a mandatory statutory requirement of [the APA] into discretionary agency authority." 2d Am. Compl. ¶ 81.

Count V, unlike Counts I through IV, is brought on behalf of three private-practice attorneys who allege they were "not able to submit an application[s] [to be ALJs] prior to the closing of the Vacancy Announcement on or about May 8, 2007." 2d Am. Comp. ¶¶ 16-18. It contain two distinct claims. The first is that OPM violated § 706 of the APA by eliminating, from its rules, references to the testing processes and vacancy announcements for ALJs without conducting studies – called "job analyses" – as provided for in 5 C.F.R. § 300.103. The second is that OPM acted arbitrarily and capriciously in violation of the APA by allegedly providing certain federal agencies with advance notice (i.e., before it provided notice to the general public) that it would be issuing a new vacancy announcement and administering a new test for ALJs. See 2d Am. Comp. ¶¶ 82-100.

## ARGUMENT

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a claim or action on the ground that the court lacks jurisdiction over the subject matter of that claim or action. Fed. R. Civ. P. 12(b)(1). It is axiomatic that the federal courts are courts of limited jurisdiction and possess only that power which is authorized to them by the Constitution and by federal statute. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). For that reason, plaintiffs bear the burden of demonstrating that the federal court has jurisdiction

over their claims. See, e.g., Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 104

(1998) (plaintiff bears burden of establishing standing); McNutt v. Gen. Motors Acceptance

Corp., 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the

jurisdictional facts, according to the nature of the case."). Where plaintiffs have failed to fulfill

their obligation to allege facts sufficient to support the court's subject-matter jurisdiction, the

Court should dismiss the case. See Ruhrgas AG v. Marathon Oil, 526 U.S. 574, 583 (1999)

("[S]ubject-matter [jurisdiction] must be policed by the courts on their own initiative . . . .")

(citing Fed. R. Civ. P. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of the

subject matter, the court shall dismiss the action.")).

        Subject-matter jurisdiction is limited to the resolution of "cases" and "controversies."

Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S.

464, 471 (1982). One essential requirement for satisfying the "case-or-controversy" threshold is

a plaintiff's standing to assert a claim. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

To establish standing, plaintiffs must satisfy a three-part test. First, plaintiffs must establish that

they have suffered an injury-in-fact – one that is concrete, particularized, and actual or imminent,

rather than merely conjectural or hypothetical. Id. Second, plaintiffs must establish a causal

connection between the injury and the alleged conduct. Id. Third, plaintiffs must show that it is

"'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable

decision.'" Id. (citing Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42

(1976)); see also Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102-04 (1998). At

the pleading stage, plaintiffs must allege specific, concrete facts demonstrating both that the

challenged action or policy harms them and that the relief sought would benefit them in a tangible way. Warth v. Seldin, 422 U.S. 490, 508 (1975).

An association or union has standing to sue on its members' behalf only when: (a) its members would have standing to sue in their own right; (b) the interests it seeks to protect are germane to its own purpose; and (c) neither the claim asserted nor the relief sought requires the participation of the individual members. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977). The first prong of this associational standing inquiry requires that the organization establish that one or more of its members meets the three-part test for individual standing. Lujan, 504 U.S. at 560.

As set forth below, Plaintiffs have not satisfied these standards, and thus have not demonstrated that they possess standing to bring this action. Thus, the Court should dismiss Plaintiffs' Second Amended Complaint for lack of subject-matter jurisdiction.

**1.    THE COMPLAINT FAILS TO IDENTIFY ANY INDIVIDUAL PLAINTIFF OR MEMBER OF PLAINTIFF AALJ WHO HAS SUFFERED AN INJURY-IN-FACT SUFFICIENT TO PROVIDE STANDING TO ASSERT COUNTS I THROUGH III.**

Counts I through III present substantive or procedural challenges to the requirement, clarified by OPM in its Final Rule, that incumbent ALJs maintain active bar membership status in at least one jurisdiction (or, in any jurisdiction where active bar membership for sitting judges is proscribed, membership in "good standing"). But Plaintiffs' complaint fails to identify a single individual Plaintiff or member of AALJ who is out of compliance with this rule, or even is in a position to lapse out of compliance within the immediate future. This failure means that Plaintiffs have not satisfied the injury-in-fact element of their standing burden as to each of these three claims.

To satisfy the injury-in-fact prong of the three-part standing inquiry, Plaintiffs must establish an invasion of a legally protected interest that is (1) concrete and particularized and (2) actual or imminent, rather than conjectural or hypothetical.  Lujan, 504 U.S. at 560.  And as to AALJ, as pointed out above, an association has standing to sue on its members' behalf only when its members satisfy the same injury-in-fact requirement in their own right (among other factors).  Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977).  To satisfy this standard at the pleading stage, Plaintiffs must clearly allege specific, concrete facts showing that the challenged rule harms them, and that they themselves "would benefit in a tangible way from the court's intervention."  Warth v. Sedlin, 422 U.S. 490, 508, 518 (1975).  And to establish injury-in-fact sufficient to support standing in its representative capacity, AALJ "must show that at least one specifically-identified member has suffered an injury-in-fact."  American Chemistry Council v. Dep't of Transportation, 468 F.3d 810, 820-21 (D.C. Cir. 2007); Int'l Brotherhood of Teamsters v. Transportation Safety Administration, 429 F.3d 1130, 1135 (D.C. Cir. 2005) (organization alleging representative standing must show that "at least one of [its] members is suffering immediate or threatened injury as a result of the challenged action").  Likewise, the individual Plaintiffs must show immediate or threatened injury to their own interests.  Warth v. Sedlin, 422 U.S. at 508.

In broad strokes, Plaintiffs allege that the Final Rule's licensure requirement might potentially inflict three general types of injury upon an unspecified number of sitting ALJs.  First, Plaintiffs assert that the requirement imposes a direct burden upon ALJs who do not have active or judicial status (or are otherwise in "good standing") by forcing them to pay bar dues, complete continuing legal education requirements, and possibly provide mandatory pro bono legal

8

services, all in order to regain the required membership status in their licensing jurisdictions. 2d Am. Comp. ¶¶ 49-50. Second, Plaintiffs assert that the requirement makes out-of-compliance ALJs uncertain whether they are under any obligation to resign as ALJs, or whether they will be subject to removal from their positions. 2d Am. Comp. ¶ 51. And third, Plaintiffs assert that the requirement casts doubt upon out-of-compliance ALJs' ability to schedule hearings, adjudicate pending cases, and issue opinions. 2d Am. Comp. ¶ 52.

Irrespective of whether these general allegations suggest valid injury, Plaintiffs fail to satisfy the injury-in-fact component of Plaintiffs' standing burden for at least one simple reason: they have failed to specifically identify a single person as to whom these alleged consequences of the licensure requirement represent an existing or imminent threat. See American Chemistry Council, 468. F.3d at 820-21; Int'l Brotherhood of Teamsters, 429 F.3d at 1135. The failure to identify a single individual Plaintiff or member of AALJ who is allegedly out of compliance with the licensure requirement – or even has a concrete intention to lapse out of compliance in the near future – is conspicuous. Plaintiffs employ identical boilerplate language to identify each of the seven individual Plaintiffs in Paragraphs 9 through 15 of the Second Amended Complaint, under the heading "Parties." For example, Paragraph 9 states:

> Plaintiff David Agatstein is a current ALJ employed by SSA and a member of AALJ. Judge Agatstein was appointed an ALJ in 1991 and has served as an ALJ continually since his appointment.

2d Am. Comp. ¶ 9. Neither this paragraph nor any of its identical counterparts includes any allegation as to the individual Plaintiffs' licensure status, 2d Am. Comp. ¶¶ 9-15, and such allegations are nowhere else to be found in the complaint. Likewise, in three paragraphs under the heading "Parties" devoted to identifying and describing AALJ, there is no mention that the

organization includes or represents any incumbent ALJs who are out of compliance with the bar

licensure rule.  2d Am. Comp. ¶¶ 6-8.  No other paragraph in the complaint identifies or even

represents that any member of AALJ is out of compliance.  Without any allegation whatsoever

that any Plaintiff – individual or representative – is out of compliance with the requirement (or

even in imminent likelihood of becoming so), there is no allegation of injury-in-fact sufficient to

establish standing.

Only in one paragraph does the Second Amended Complaint make a factual allegation

that conceivably could be construed as suggesting that any AALJ members are out of compliance

with the bar licensure requirement, and thus have suffered an injury-in-fact.  In Paragraph 51,

which appears under the heading "Impact of the Final Rule on Judges," the complaint alleges:

> Based on earlier guidance from OPM and SSA, dating back to at least 1989,
> numerous incumbent ALJs ceased maintaining "active" bar status.

2d Am. Comp. ¶ 51.  Plaintiffs may argue that this allegation, read together with the allegation in

Paragraph 6 that AALJ is the certified bargaining representative of "more than 1,000 [ALJs] who

adjudicate cases involving the Social Security Administration ("SSA") and the United States

Department of Health and Human Services ("HHS")," should be construed to imply that there are

AALJ members who are out of compliance, and thus have suffered an injury-in-fact.  To draw

such an inference, however, the Court would have to assume that these unidentified incumbent

ALJs not only have continued to serve as ALJs without ever renewing their active bar licenses,

but actually are members of AALJ.  These are assumptions the Court cannot make.  As the D.C.

Circuit has explained:

> It is not enough to show, as the dissent argues from its observation that petitioners
> are part of the industry being regulated by the Final Rule, that there is a substantial

10

likelihood that at least one member may have suffered an injury-in-fact.  Our standard has never been that it is <u>likely</u> that at least one member has standing.  At the very least, the identity of the party suffering an injury in fact must be <u>firmly established</u>.

<u>American Chemistry Council</u>, 468 F.3d at 820-21 (first emphasis in original, second added).[1]

Plaintiffs have not "firmly established" the identity of any part supposedly injured by the Final Rule.

Plaintiffs may attempt to evade this conclusion as to Count III by asserting that the procedural-rights injury alleged in that claim is one for which standing is essentially presumed.  But such a position has been squarely foreclosed by this circuit.  In <u>Florida Audubon Society v. Bentsen</u>, 94 F.3d 658 (D.C. Cir. 1996), organizational plaintiffs brought suit under the National Environmental Policy Act ("NEPA"), challenging the Treasury Department's failure to prepare an Environmental Impact Statement ("EIS") as to the effects of a tax credit for the use of an ethanol-based fuel additive.  The Court of Appeals held that standing required a showing that the procedural requirement was "designed to protect some threatened concrete interest" of the plaintiff, and that the government act performed without the procedure in question would cause a

---

[1]  Moreover, even if such an inference could be relied upon to establish standing, Plaintiffs' own allegations elsewhere in the complaint would tend to rebut it.  First, the complaint itself appears to suggest that AALJ does not automatically include all ALJs employed by SSA and HHS among its membership.  2d Am. Comp. ¶ 6 (ALJs employed by bargaining units represented by AALJ are "eligible" for membership in AALJ).  Second, it is unclear how many ALJs who are otherwise eligible for membership in AALJ have actually opted to become members; indeed, the complaint appears to distinguish between AALJ "members" and persons who are represented by the association.  <u>See id.</u>  As the D.C. Circuit has emphasized, a union cannot establish representational standing on the basis of an alleged injury to someone who is not an actual member.  <u>See</u> <u>Int'l Brotherhood of Teamsters</u>, 429 F.3d at 1134-35 (union plaintiff failed to establish standing in part because it identified no evidence that the allegedly injured person upon whom it sought to base its standing was a member).

11

distinct risk to a particularized interest of the plaintiff. 94 F.3d at 664. Thus, injury-in-fact

resulting from a violation of a procedural statute would not be presumed:

> According to Defenders of Wildlife, a plaintiff may have standing to challenge the
> failure of an agency to abide by a procedural requirement only if that requirement
> was "designed to protect some threatened concrete interest" of the plaintiff. In this
> type of case [], in order to show that the interest asserted is more than a mere "general
> interest [in the alleged procedural violation] common to all members of the public,
> the plaintiff must show that the government act performed without the procedure in
> question will cause a distinct risk to a particularized interest of the plaintiff. The
> mere violation of a procedural requirement thus does not permit any and all persons
> to sue to enforce the requirement.

Id. at 664-65 (citing Lujan v. Defenders of Wildlife, 504 U.S. at 572-73 & n.8) (other internal

cites omitted); see also Renal Physicians Ass'n v. U.S. Dep't of Health and Human Services, —

F.3d —, 2007 WL 1671676 (D.C. Cir. June 12, 2007), at **8-9 ("[T]hough the plaintiff in a

procedural-injury case is relieved of having to show that proper procedures would have caused

the agency to take a different substantive action, the plaintiff must still show that the agency

action was the cause of some redressable injury to the plaintiff."); Int'l Brotherhood of

Teamsters, 429 F.3d at 1135.

## 2.  PLAINTIFFS IDENTIFY NO INJURY-IN-FACT IN COUNT IV THAT IS FAIRLY TRACEABLE TO THE CHALLENGED RULE.

Plaintiffs lack standing to raise Count IV of their complaint, which presents a challenge to

the subsection of the Final Rule that delegates to federal agencies that employ ALJs the authority

"to assign [their ALJs] to cases in rotation so far as is practicable." See 5 C.F.R. § 930.201(f)(2);

see also 5 U.S.C. § 3105. This is so for two reasons. First, Plaintiffs have failed to allege that 5

C.F.R. § 930.201(f)(2) has injured them in anyway. Black letter law dictates that the absence of

such an allegation is fatal to Plaintiffs' action. Lujan, 504 U.S. at 561; see also Ex Parte

12

McCardle, 7 Wall. 506, 514, 19 L. Ed. 264 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").  Second, even if one can somehow locate such an allegation, the complaint fails to specifically identify an individual Plaintiff or member of the AALJ who may have suffered such injury.  This omission too is a deathblow.  American Chemistry Council, 468 F.3d at 820-21.

Plaintiffs have not alleged that they have been injured by the complained-of provision, 5 C.F.R. § 930.201(f)(2), and thus have not established that they have standing to challenge it. To secure standing to challenge § 930.201(f)(2), Plaintiffs must allege the existence of an injury-in-fact which is fairly traceable to the provision.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230 (1990); Covenant Media of SC, LLC, v. City of North Charleston, 493 F.3d 421, 429-430 (4th Cir. 2007).  Plaintiffs make no such allegation.  They contend that § 930.201(f)(2) took the APA's requirement that ALJs be assigned to "assigned to cases in rotation so far as practicable," 5 U.S.C. § 3105, and made it optional, § 930.201(f)(2) (providing that ALJs "shall be assigned to cases in rotation so far as is practicable").  But they do not describe any concrete harm that has been or will be visited upon them (or anyone else) by this supposed change.  They simply complain that § 930.201(f)(2) violates the APA.  2d Am. Comp. ¶ 81.  Interpreted generously, then, Count IV could be read to suggest that Plaintiffs are harmed by the knowledge that the applicable law, 5 U.S.C. § 3105, is allegedly not being followed.  The D.C. Circuit has unequivocally held, however, that being forced to live with the knowledge of (allegedly) illegal conduct does not constitute an injury sufficient to support standing: "A sincere, vigorous interest in * * * the provisions of law allegedly violated[ ] will not do to establish standing if the party's

13

interest is purely ideological [and] uncoupled from any injury in fact." Capital Legal Found. v.
Commodity Credit Corp., 711 F.2d 253, 258 (D.C. Cir. 1983). Thus, Plaintiffs lack standing to
raise Count IV, and this Court necessarily lacks jurisdiction to entertain that claim.

　　　　Plaintiffs lack standing for a second, independent reason, namely, they have failed to
specifically identify any individual Plaintiff or AALJ member who has been harmed by this
provision. As has been demonstrated above, see Part 1, supra, this omission deprives them of
standing: "At the very least, the identity of the party suffering an injury in fact must be firmly
established." American Chemistry Council, 468 F.3d at 819.

　　　　For these reasons, dismissal of Count IV is appropriate.

**3.    PLAINTIFFS' COUNT V SATISFIES NEITHER THE INJURY-IN-FACT NOR
REDRESSABILITY COMPONENTS OF THE STANDING REQUIREMENT.**

　　　　Count V comprises two distinct allegations, each brought on behalf of three attorneys in
private practice who allege they were "not able to submit an application[s] [to be ALJs] prior to
the closing of the Vacancy Announcement on or about May 8, 2007." 2d Am. Comp. ¶¶ 16-18.
Plaintiffs lack standing to assert either of these allegations.

**A.    REMOVAL OF REFERENCES TO THE ALJ EXAMINATION PROCESS FROM OPM'S
REGULATIONS CAUSES NO INJURY-IN-FACT TRACEABLE TO OPM'S DECISION
OR REDRESSABLE BY THE COURT.**

　　　　The first claim comprised by Count V is that OPM violated § 706 of the APA by
eliminating, from its rules, references to the testing processes and vacancy announcements for
ALJs without conducting preliminary studies, called job analyses, as provided for in 5 C.F.R. §
300.103. 2d Am. Comp. ¶¶ 82-87. Plaintiffs lack standing to raise this claim. For one thing,
they have not identified an injury-in-fact traceable to OPM's decision not to conduct the job

analyses purportedly required – and of course, this omission sinks their claim.  <u>Lujan</u>, 504 U.S. at

561.  For another, they have not demonstrated that any injury traceable to OPM's action (or

inaction) is redressable.  The only possible injury suffered by Plaintiffs relates to their prospects

of securing appointments as administrative law judges.  As they have not alleged that they will

seek these positions in the future, and as they request only prospective relief, they have failed to

establish that the relief sought would remedy the identified harm.  <u>See</u> <u>Worth v. Jackson</u>, 451

F.3d 854, 858-59 (D.C. Cir. 2006); <u>U.S. Airwaves, Inc. v. FCC</u>, 232 F.3d 227, 232 (D.C. Cir.

2000).

Prior to the promulgation of the Final Rule, OPM's rules laid out the different steps of the

testing process for ALJs and incorporated by reference Vacancy Announcement 318, which set

out the qualification standards for ALJs and described various other aspects of the ALJ program

(including the testing process).  <u>See</u> 72 Fed. Reg. at 12,950-52.  In the Final Rule, OPM removed

references to the testing process and Vacancy Announcement 318 from its rules.  <u>Id.</u>  OPM plans

to convey information about the changes in the examination process through vacancy

announcements, and will use a stand alone qualification standard to set out the desired

qualifications for ALJs.  <u>Id.</u>

Plaintiffs allege that OPM has not conducted the job analyses required to show that the

move from a "rule-based process" to a "[n]otice-based process" will better provide for a cadre of

qualified, diverse, and independent ALJs.  2d Am. Comp. ¶ 86.  They also allege that there is no

study showing that the new tack will prevent agencies from favoring agency attorneys over

attorneys in private practice in the ALJ hiring process.  <u>Id.</u> ¶ 87.  The first allegation appears to

subsume the second, for (as Plaintiffs presumably would contend) the ALJ cohort would not be

sufficiently diverse if it disproportionately consisted of former agency attorneys.  Plaintiffs seek

only prospective relief, specifically, a declaration that the Final Rule is null and void.  2d Am.

Comp. at 26 ("Prayer for Relief").

Plaintiffs have not alleged the existence of an injury-in-fact related to the decision not to

conduct job analyses.  They contend that OPM failed to demonstrate that the "[n]otice-based

process" would not result in preferential treatment for agency attorneys.  2d Am. Comp. ¶ 86.

But they never allege that such favoritism will, in fact, flow from OPM's actions, or that they

will be harmed in another way by preferential treatment toward agency attorneys.  The allegation

that OPM did not prove that some misfortune will <u>not</u> befall Plaintiffs does not amount to an

allegation that that misfortune will befall Plaintiffs; one does not logically follow from the other.

Of course, the absence of a cognizable injury deprives Plaintiffs of standing.  <u>Lujan</u>, 504 U.S. at

560.

But even if the Court somehow concludes that Plaintiffs have alleged the existence of an

injury-in-fact, they have failed to allege that a favorable decision could remedy their injury.  <u>See</u>

<u>Lujan</u>, 504 U.S. at 560.  The only future injury that could be alleged by individuals in Plaintiffs'

position, and thus that could be read into Plaintiffs' complaint, would be that OPM's failure to

conduct job analyses has somehow damaged their prospects of securing administrative law

judgeships in the future.[2]  This supposed injury stems from the deprivation of an alleged

procedural right, namely, the right to have OPM conduct job analyses before removing references

to certain things from its rules.  While courts do not apply the redressability requirements of

_____

    [2]  Only <u>future</u> injuries matter given that Plaintiffs seek solely prospective relief.  <u>See</u> <u>City</u>
<u>of Los Angeles v. Lyons</u>, 461 U.S. 95, 105-108 (1983).

standing as strictly to cases involving injuries stemming from the alleged violations of procedural

rights as they do in other cases, the need to show the possibility of redress is not eliminated.

Center for Law and Education v. Dep't of Education, 396 F.3d 1152, 1157 (D.C. Cir. 2005).

Plaintiffs have not alleged that they intend to seek such positions in the future, and this dooms

their claim: without this allegation, Plaintiffs have utterly failed to show that redress is possible.

     The Supreme Court has recognized that "intent [is] relevant to standing" in certain cases.

Gratz v. Bollinger, 539 U.S. 244, 261 (2003).  Among these are cases in which an individual

complains about a supposedly unlawful impediment to obtaining a job (or other benefit) and

seeks prospective relief to clear away the obstacle.  See Worth, 451 F.3d at 858-59; U.S.

Airwaves, Inc., 232 F.3d at 232.  Intent matters in these actions because it makes up a constituent

element of the required redressability showing.  U.S. Airwaves, Inc., 232 F.3d at 232.  If a

plaintiff does not state an intention to apply for the benefit once sought (be it a job or a

government license) after the impediment is gone, then the court cannot conclude that the

prospective relief sought will redress the plaintiff's injury.  Id.  For, if the plaintiff does not plan

to apply for the benefit, then a declaration or injunction clearing away the complained-of

impediment will not provide meaningful redress because their will be another impediment –

plaintiff's decision not to apply.  The court will have decided the case as a purely academic

exercise, and courts are not to render opinions as thought experiments.  See, e.g., Aetna Life Ins.

Co. v. Haworth, 300 U.S. 227, 240-41 (1937).

     Here, Plaintiffs have not alleged that they intend to apply for administrative law

judgeships in the future.  In Paragraphs 15 through 18 of their complaint, Plaintiffs contend that

"[d]ue to the early closing of the application submission period," they were "not able to submit

[applications to be considered for ALJ positions] prior to the closing of the Vacancy

Announcement." 2d Am. Comp. ¶¶ 15-18. But they do not, in these paragraphs or elsewhere,

profess an intention to apply for ALJ positions in the future. Thus, even if the failure to conduct

job analyses somehow might affect future applicants' ability to land ALJ positions, as Plaintiffs

have not alleged that they plan to  apply for administrative law judgeships, a Court order

requiring OPM to conduct job analyses would not redress the only injury to which individuals in

Plaintiffs' position could lay claim. See U.S. Airwaves, Inc., 232 F.3d at 232. The Court need

not – indeed, it cannot – engage in the purely academic exercise of deciding this claim.

Accordingly, the claim should be dismissed for lack of jurisdiction.

### B.    THE ALLEGED ADVANCE NOTICE GIVEN BY OPM TO OTHER FEDERAL AGENCIES IS NOT REDRESSABLE BY ANY RELIEF SOUGHT BY PLAINTIFFS.

The second discrete claim comprised by Count V is that OPM acted arbitrarily and

capriciously by alerting agencies that it would be issuing a new vacancy announcement and

administering a new test for ALJs before it provided notice to the general public.[3] 2d Am. Comp.

¶¶ 82-100. Plaintiffs lack standing to raise this allegation for at least two reasons. First, because

Plaintiffs seek prospective relief only, and do not allege that they intend to apply for ALJ

positions in the future, they have not met their burden of showing that the order sought would

redress their injury. Second, even if Plaintiffs had alleged an intent to seek such positions in the

future, they would lack standing because the relief they seek – a declaration that the ALJ vacancy

---

[3]  To be clear, while the following discussion demonstrates that Plaintiffs lack standing to raise the second claim encompassed within Count V regardless of whether or not OPM provided certain agencies with private, advance notice of its intention to issue a vacancy announcement, Defendants do not concede that any such notice was provided. Rather, Defendants simply indulge Plaintiffs' allegation for the purposes of this argument.

announcement and the notice of examination are null and void, 2d Am. Comp. at 26 ("Prayer for Relief") – would not be likely to redress their claim.  Such a declaration would not prevent OPM, the next time around, from alerting agencies of an impending vacancy announcement, and so would not be likely to cure the injury alleged by Plaintiffs.

The problem with this alleged advance notice provided by OPM to other agencies, Plaintiffs argue, is that the agencies, in turn, supposedly alerted their own lawyers of the impending vacancy announcement.  2d Am. Comp. ¶ 92.  Thus, Plaintiffs continue, these lawyers knew to be on the lookout for the vacancy notice and were able to submit their applications before the window for doing so closed.[4]  Plaintiffs suggest that this advance notice placed private-practice attorneys such as themselves at a comparative disadvantage vis-á-vis attorneys employed by such agencies, as they did not know to be on the lookout for an imminent vacancy announcement.[5]  2d Am. Comp. ¶ 97.

---

[4]  OPM stated in its vacancy announcement that it would accept applications until the earlier of: (1) the passage of two weeks; or (2) the end of the day by which OPM received 1,250 applications.  OPM received the 1,250th application before two weeks had passed.  2d Am. Comp. ¶¶ 93-94.

[5]  This claim lacks a cognizable injury (and a foundation in common sense).  It should have been evident to Plaintiffs in early May 2007 that OPM likely would issue a vacancy announcement soon.  Not only had OPM recently completed amending the rules regarding ALJ hiring, but on May 1, 2007 in public testimony before the House Ways and Means Committee, the Director of OPM stated that a vacancy announcement would be issued in a few days – as it was.  See Hearing on the Hiring of Administrative Law Judges at the Social Security Administration Before the H. Comm. on Ways and Means (statement of Linda M. Springer, Director of OPM, provided May 1, 2007) (attached hereto as Exhibit 1) (available on-line at http://waysandmeans.house.gov/hearings.asp?formmode=view&id=5844); 2d Am. Comp. ¶ 16 (asserting that the vacancy announcement was issued on May 4, 2007).  Thus, even if there had been an "inside" tip, it should not have placed Plaintiffs at any disadvantage vis-á-vis those who received the alleged tip.

19

The Court lacks subject-matter jurisdiction over this claim for the same reason that it lacks jurisdiction over the first claim encompassed by Count V: Plaintiffs have not pleaded an intention to apply for ALJ positions in the future. In essence, Plaintiffs allege that they were not given a fair chance to apply to be ALJs and so are unfairly being deprived of the opportunity to be considered for placement on the register (i.e., the list of candidates from which agencies may appoint new ALJs). 2d Am. Comp. ¶¶ 89, 97. But Plaintiffs do not state that they would apply were the Court to somehow require OPM to throw out the applications that it collected and reissue the vacancy announcement.[6] Because Plaintiffs have not stated that they would apply if the vacancy announcement were re-posted, 2d Am. Comp. ¶¶ 15-18, and seek only prospective relief, id. at 26, they have not established that the Court could remedy their proposed injury. See Part 3.A, supra. Accordingly, this claim should be dismissed.

Further, this claim should be dismissed for a second, independent reason. Even if Plaintiffs had professed an intention to apply for ALJ positions if the Court were to declare the vacancy announcement and the notice of examination null and void, see 2d Am. Comp. at 26 ("Prayer for Relief"), they would lack standing because the relief they seek is not "likely" to redress their injury. Lujan, 504 U.S. at 560. At best, Plaintiffs can hope that a ruling declaring the vacancy announcement null and void would lead OPM to prepare and issue another vacancy announcement.[7] But by its own terms, such an order would not prevent OPM from providing

---

[6] In fact, though, the order sought by Plaintiffs would fail to remedy their supposed injury for another reason: nullification of the vacancy announcement would serve no purpose at this point. As OPM has already collected more than 1,250 names pursuant to the announcement, the announcement is by now moot. Vacating it would do nothing that the passage of time has not already done, and would not put Plaintiffs any closer to securing spots on the register.

[7] In reality, this would not be the effect of the order sought by Plaintiffs. See n.6, supra.

interested agencies with advance notice of its plans.  And that OPM would have such freedom

would be sensible, as valid policy considerations might persuade OPM that advance notice is

necessary.  For example, OPM might determine that such notice would enable these agencies to

organize their affairs so they could move more quickly to appoint candidates from the register to

be compiled from the applications.  (To the extent Plaintiffs have any real grievance, it is with

the agencies who passed information along to their own attorneys, but these agencies are not

parties to this action.)  While Plaintiffs can hope that the remedy they seek would cure their

imagined injury, it is not likely to do so, and "conjecture [is] not enough to support standing."

Nat'l Wrestling Coaches Ass'n v. Dep't of Education, 366 F.3d 930, 943-944 (D.C. Cir. 2004).

What is more, that Plaintiffs ask for "other further relief [that] the Court deems just and

equitable" does not rescue their claim, because the Court's ability to provide appropriate

supplemental relief cannot provide standing where the relief specifically requested by plaintiffs is

inadequate to do so.  Hedgepeth v. WMATA, 386 F.3d 1148, 1152 n.2 (D.C. Cir. 2004).[8]  As

such, Plaintiffs' allegation fails.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Second Amended

Complaint and each and every claim asserted therein for lack of subject-matter jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(1).

---

[8]  Plaintiffs also lack standing because they have not established that the alleged injury, namely, their lost opportunity to fairly compete against agencies' attorneys for the chance to have their applications considered, is fairly traceable to OPM's conduct.  See Lujan, 504 U.S. at 560. OPM's conduct did not, in and of itself, produce the alleged injury; the agencies that allegedly had advance notice of the vacancy announcement played a necessary role.  In short, the supposed injury would not have occurred without the conduct of both OPM and the other unnamed agencies.  OPM's actions, thus, were a but-for (i.e., necessary) cause, but not a sufficient one. But-for causation, however, without something more, does not suffice to establish standing.  See Brotherhood of Locomotive Engineers and Trainmen v. Surface Transportation Bd., 457 F.3d 24, 28-29 (D.C. Cir. 2006); Huddy v. FCC, 236 F.3d 720, 723-24 (D.C. Cir. 2001); but see Cmty. Nutrition Inst. v. Block, 698 F.2d 1239, 1247 (D.C. Cir. 1983).  And for good reason: allowing such a broad definition of causation would potentially provide plaintiffs with the ability to sue beyond all reason.  See, e.g., Movitz v. First Nat'l Bank of Chicago, 148 F.3d 760, 762-64 (7th Cir. 1998).  The "something more" required to support standing is that the action challenged must tend to result in injury complained of, even if others are needed to bring the injury to fruition. Huddy v. FCC, 236 F.3d at 724.  Here, the "something more" is missing.  Providing an agency with information does not tend to result in that agency providing the information to someone else.  Surely, agencies can provide the information to others, but there is no reason to believe that they will tend to do so.  For a contrast, see Tozzi v. HHS, 271 F.3d 301 (D.C. Cir. 2001).  Thus, Plaintiffs have failed to demonstrate that their injury is fairly traceable to OPM – and by extension, that they have standing.

Dated: September 21, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SUSAN RUDY
Assistant Branch Director

OF COUNSEL:

    */s/ Christopher R. Hall*
CHRISTOPHER R. HALL

KERRY B. McTIGUE
General Counsel
KATHIE ANN WHIPPLE
Deputy General Counsel
JULIE FERGUSON QUEEN
Deputy Assistant General Counsel
ANTONIO A. SAN MARTIN, JR.
Senior Policy Counsel
ROBIN M. RICHARDSON
ROBERT J. GIROUARD
Attorneys
Office of the General Counsel
U.S. Office of Personnel Management
1900 E St. NW, Room 7536
Washington, D.C. 20415

(202) 606-1700

JUSTIN M. SANDBERG
Trial Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C.  20530

(202) 514-4778

# EXHIBIT 1

# House Committee on Ways and Means

Statement of The Honorable Linda M. Springer, Director, U.S. Office of Personnel Management

Testimony Before the Subcommittee on Social Security
of the House Committee on Ways and Means

May 01, 2007

Mr. Chairman and Members of the Subcommittee:

I am pleased to have the opportunity to appear before you this morning to discuss the role of the Office of Personnel Management (OPM) with respect to the hiring of Administrative Law Judges (ALJs), and our most recent activity with respect to this issue. Let me begin with an assurance to everyone here that I am committed to working very closely with the Commissioner of the Social Security Administration (SSA) and our other Federal partners to ensure the Government has an effective Federal civilian workforce, which includes ALJs. I certainly recognize and appreciate the importance of the work ALJs need to do with respect to Social Security disability cases.

## Background

By way of background, the ALJ position, originally referred to as "hearing examiner" was first authorized by Congress in the Administrative Procedure Act (APA) more than 60 years ago. The APA was designed to ensure fairness and due process in Federal agency rulemaking, and the hearing examiner positions were established to provide aggrieved parties an opportunity to have their concerns heard on the record through a hearing. The APA also provides statutory protections to ensure that ALJs have decisional independence from undue agency influence. Some of these protections included making the positions independent of the employing agencies with respect to appointment, tenure, and compensation.

The most recent data available to OPM show there are over 1,400 ALJs serving in the Federal Government, 1,100 of whom work at SSA with the remainder primarily at the Department of Health and Human Services, the Department of Labor, and the National Labor Relations Board. The data show that most ALJs tend to remain in their positions longer than most Federal employees – ALJs retire on average with 32 years of service at age 70 – this is in contrast to other employees who, on average, retire with 28 years at age 59.

## Role of OPM

Consistent with civil service law, the Veterans Preference Act, and APA requirements, OPM is responsible for establishing ALJ qualifications, for administering the ALJ examination, and for maintaining a listing of qualified candidates for ALJ employment by Federal agencies. By law, OPM cannot delegate the ALJ examination to any other agency.

In 1999, the current register was suspended following an adverse ruling in litigation before the Merit Systems Protection Board, then referred to as the *Azdell* litigation (now referred to as

Meeker v. OPM). OPM petitioned for review by the United States Court of Appeals for the Federal Circuit, and ultimately prevailed. After the Federal Circuit mandate was issued, in July 2003, OPM refreshed the ALJ register by verifying that candidates on the existing register were still actively interested in ALJ positions (removing those who were not interested or were not reachable). Between 2003 and 2007, OPM also added over 100 new applicants (these applicants included veterans who were 10-point preference eligibles, and other persons who had completed applications pending during the litigation).

After the conclusion of the *Azdell* litigation in 2003, we closed the ALJ examination to new applicants, (with the exception that we continued to accept applications from 10-point preference eligibles as allowed by law), reconstituted the ALJ register, and made that register available for agency use. At that time, there were 1,730   ALJs on the register. Subsequently, we resumed work on the examination, which as you may know, is a complex multi-step examination process.

**A look at ALJ Hiring**

It is important for you to understand that agencies have in fact been hiring ALJs both during and after the Azdell litigation. In the case of the Social Security Administration, 562 ALJs have been hired since 1997. Because OPM was sensitive to the Social Security Administration's need for ALJs, we litigated a motion to lift the stay expressly for the purpose of allowing SSA to hire off of the register. As a result, SSA hired 126 ALJs in 2001. After the Azdell litigation concluded, from 2003-2005, OPM issued 7 certificates of eligibles to SSA in the 2003 -2005 period, and as a result, SSA hired another 200 ALJs. More recently, in 2006, SSA hired an additional 37 ALJs.

**<u>The New ALJ Examination/Assessment Process</u>**

At the end of 2005, OPM published a proposed rule to streamline existing ALJ regulations by removing redundant procedures and outdated information, clarifying bar membership requirements, and ensuring that the ALJ examination process operates in a manner similar to other OPM competitive examinations. As a result, we received a large number of comments from a variety of sources with extensive recommendations. We undertook a careful review of all comments received. Subsequently, we published the final rule in the Federal Register on March 20, 2007. The rule took effect on April 19, 2007.   During this same time period, we revamped the qualifications standard. Concurrent with the publication of the proposed ALJ rule, we posted a draft qualifications statement on OPM's website. We received comments on the draft qualifications and took them into account in drafting the final version, which was posted on OPM's website on April 20, 2007. Throughout this process, the register never had fewer than 1,000 candidates.

OPM has also now published its new qualification standards for ALJs, and we expect to open the ALJ vacancy announcement on our USAJOBS.gov website within the next few days with the goal of completing our initial reviews early this month. New ALJ candidates will need to submit their accomplishment records which OPM will review and score, followed by written demonstrations, which are also part of the scoring process. Structured interviews with ALJ candidates will then be scheduled and my expectation is that we can complete that interview process and proceed to final scoring and establishment of a new ALJ register by late Fall. This

sequence of events is presented in the attachment to my statement.

## **Conclusion**

Mr. Chairman, I will continue to work closely with your subcommittee and with Commissioner Astrue to ensure we meet the needs of SSA and our other Federal partners – through the existing ALJ register and the new register being established this year.  I would be happy to further address any questions the subcommittee may have.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil No. 07cv00711 (RMC) |
| v. | ) | |
| | ) | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

Upon consideration of Defendants' motion to dismiss, memorandum in support thereof, and

Plaintiffs' opposition thereto, it is hereby

ORDERED that Defendants' motion to dismiss is granted, and it is

FURTHER ORDERED that this action be, and hereby is, dismissed.

Dated: _____        _____

ROSEMARY M. COLLYER
United States District Judge