## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | ) ) ) |
| Plaintiffs, | ) ) Case No. 07-0711 (RMC) |
| v. | ) ) ) |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | ) ) ) |
| Defendants. | ) ) ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## <u>MOTION TO DISMISS</u>

COME NOW the Plaintiffs, the Association of Administrative Law Judges and David Agatstein, Karl Alexander, Jon R. Hunt, John K. Kraybill, James Norris, Cheryl Rini, Edwin Shinitzky, Mary Rita Luecke, Russell Doty and Edward J. "Ned" Richardson ("Individual Plaintiffs"), by their undersigned counsel, and hereby submit their opposition to the motion to dismiss filed by Defendants the United States Office of Personnel Management ("OPM") and Linda M. Springer, in her capacity as the Director of OPM.

The Defendants contend that the Plaintiffs' Complaint fails to show that the Plaintiffs' possess standing under Article III of the Constitution. As explained more fully herein, the Plaintiffs have sufficiently established standing on all Counts in their Complaint. The Complaint sufficiently pled that the Plaintiff ALJs suffered an injury in fact when the terms and conditions of their employment were altered by the Final Rule. In addition, the individual Plaintiffs have submitted affidavits that irrefutably establish their standing. Consequently, Defendants' motion should be denied and this case should proceed.

## I.     INTRODUCTION

The Plaintiffs in this case are the Association of Administrative Law Judges ("AALJ"), which is the certified bargaining representative of more than 1,000 federal ALJs, seven incumbent Administrative Law Judges, and three individual attorneys who seek to become ALJs. The Plaintiffs bring this action against the Defendants pursuant to Administrative Procedures Act ("APA"), which provides federal jurisdiction for suits to review all "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704.   Plaintiffs seek declaratory and injunctive relief challenging certain final regulations issued by Defendant Office of Personnel Management on March 20, 2007, and effective on April 19, 2007. In an unprecedented and unwarranted action, the rule to be codified in 5 C.F.R. § 930.204(b) ("Final Rule"), effectively establishes a requirement that incumbent Administrative Law Judges maintain active bar status. The Final Rule constitutes an improper and unlawful attempt to amend, indirectly, the APA's guarantees, checks and balances that for more than 60 years have well-governed the federal administrative process.

The Plaintiffs' Complaint in Count I alleges OPM exceeded its authority by issuing the Final Rule because OPM lacked a statutory basis for the Final Rule.  The Complaint in Count II alleges that the Final Rule is arbitrary, capricious and not otherwise in accordance with the law. The Complaint in Count III alleges that the Final Rule is not rational in light of the record before OPM when it promulgated the Final Rule.  Moreover, the public was not given notice and opportunity to comment on studies and surveys relied upon by OPM in promulgating the Final Rule.  As a result, the rule-making process was deficient and legally defective.  In Count IV, the Complaint alleges that the Final Rule in Section 930.201(f)(2) is inconsistent with the plain

language of the governing statute. Finally, the Complaint in Count V alleges that the Vacancy Announcement and Notice of Examination regarding the ALJ position issued by OPM are facially invalid and capricious as applied.

In response, OPM has not contested that plaintiffs have pled cognizable causes of action under the APA, but instead has moved to dismiss for lack of standing. OPM's arguments misconstrue both the legal requirements to demonstrate standing under the APA as well as the very facts pled in the complaint, and amplified in the attached affidavits. There can be doubt that the Plaintiffs are vitally interested in and significantly affected by the Final Rule. With regard to the challenged regulations, the Plaintiffs are the most appropriate parties to litigate these issues.

## II.    STATEMENT OF THE CASE

Defendants' motion to dismiss asserts that Plaintiffs lack standing to prosecute this action. With regard to the Counts I through III, Defendants assert that the Plaintiffs have failed to establish an injury-in-fact. In support of this argument, Defendants contend that the Plaintiffs failed to identify a particular ALJ that is in noncompliance with the new regulations. With regard to Count IV, Defendants contend that Plaintiffs also cannot show an injury-in-fact. With regard to Count V, the Defendants argue that the Plaintiffs have failed to show that their claims are redressable. Specifically, Defendants' main argument is that the Plaintiffs failed to allege that the Plaintiff applicants intended to apply to a new vacancy announcement should the Court grant the Plaintiffs' request that the Vacancy Announcement be set aside.

The Defendants' arguments do not withstand scrutiny. They are based upon an erroneous characterization of the Plaintiffs' complaint, they misconstrue federal law, and they are rebutted by affidavits of the individual plaintiffs. As we discuss below, the Complaint clearly alleges that

3

the OPM's Final Rule represents a radical change to qualification requirements for incumbent ALJs. This Court has held that unions representing federal employees have standing to challenge OPM regulations that alter the terms and conditions of their members' employment. American Federation of Government Employees, AFL-CIO v. Office of Personnel Mgt., 618 F.Supp. 1254, 1258-59 (D.D.C. 1985); National Treasury employees Union v. Devine, 577 F.Supp. 738, 744-45 (D.D.C. 1983). In this case, the OPM regulations challenged in Counts I through IV impact all federal administrative law judges. The Complaint sufficiently alleges the impact of these regulations on these ALJs. In addition, Plaintiffs have submitted affidavits that irrefutably establish their standing. The Plaintiffs, moreover, have standing to proceed on Count IV because the challenged regulations infringe on the ALJs' decisional independence. See Association of ALJs v. Heckler, 594 F. Supp. 1132, 1141 (D.D.C. 1984); Nash v. Califano, 613 F.2d 10, 16 (2d Cir. 1980). On Count V, the Defendants' legal arguments are without merit. Plaintiffs, moreover, have submitted affidavits that cure the alleged deficiency in the Complaint regarding the applicants' standing.

## III.    STATEMENT OF FACTS

Federal ALJs are subject to numerous regulations governing their appointment and removal. ALJs may be removed, suspended, reduced in pay or grade or furloughed by an agency only after "good cause" is established and determined by the MSPB, not OPM, after a hearing on the record. (Complaint ¶ 25).[1] "Good cause" generally requires conduct or actions by an ALJ that undermine the confidence in the administrative adjudicatory process. (Complaint ¶ 26).

---

[1] All references to the "Complaint" refer to Plaintiffs' Second Amended Complaint, Docket No. 9.

4

The Office of Government Ethics ("OGE"), individual agencies, and the American Bar Association are among the parties that formulate rules governing judicial officers. Regulations by these organizations specifically provide that a Judge shall not practice law. The most recent ABA Code of Judicial Conduct specifically includes ALJs and prohibits the practice of law by Judges. (Complaint ¶ 30).

### A.    Prior to the Final Rule, ALJs Were Not Required to Maintain Active Bar Status.

There are no statutory requirements or any relevant regulations requiring incumbent ALJs to maintain active bar membership status. (Complaint ¶ 31). On January 9, 1989, SSA's Chief ALJ issued a Memorandum affirming that OPM did not require ALJs to maintain active bar membership after appointment. (Complaint ¶ 32). Acting in reliance on this Memorandum, many SSA ALJs, who had not already done so, allowed their bar memberships to lapse. (Complaint ¶ 32). In 1998, OPM, nevertheless, announced that all government attorneys, including ALJs, should be authorized to practice law as a continuing requirement of employment. (Complaint ¶ 34). Shortly thereafter, OPM conceded that its previous statement that active bar membership was a continuing requirement for ALJ employment was "in error." (Complaint ¶ 35). On May 12, 2000, OPM confirmed that ALJs were not required to maintain active bar membership after appointment. (Complaint ¶ 35). In a July 12, 2000 letter, OPM's Deputy Director stated that applicants, prior to appointment as ALJs, were required to be licensed to practice law and in active status with their State Bar. (Complaint ¶ 36). OPM never officially informed ALJs of any active bar membership requirement. (Complaint ¶ 37).

B.    **Rule-Making Process**

On March 20, 2007, OPM issued the Final Rule stating that active bar membership was a continuing "condition of employment" for any person serving as a federal ALJ. (Complaint ¶ 41-42). In other words, ALJs may be removed from their positions by OPM under the guise of the "condition of employment" standard. This new power of removal would circumvent the longstanding statutory requirement that an agency establish good cause on the record during a hearing with the MSPB prior to the removal of, or other adverse action against, an ALJ. (Complaint ¶ 45). The final regulations further announce, incredibly, that "as it is not a new requirement, a transition period is not needed." (Complaint ¶ 44). Accordingly, all ALJs must have satisfied the requirements of the Final Rule as of its effective date, April 19, 2007. 72 Fed. Reg. 12947, 12949. (Complaint ¶ 44).

C.    **Impact of the Final Rule on ALJs.**

The Final Rule requiring ALJs maintaining active bar membership status subsequent to appointment is a radical departure and reverses from previous guidance on this issue. (Complaint ¶ 46). Most states allow ALJs to select "active," "inactive" or "judicial" bar status. (Complaint ¶ 47). Certain states, such as Virginia, prohibit judges from maintaining active status. In these jurisdictions, Judges usually must select either "inactive" or "judicial" status. (Complaint ¶ 47). In all jurisdictions, an active bar status member is in good standing and authorized to practice law. Individuals in "inactive" or "judicial" status are also in good standing, but generally are not authorized to practice law. (Complaint ¶ 48).

Most states require active bar members to complete continuing legal education ("CLE") credit, maintain client security trust funds, pay specified bar dues, and in some cases, compulsory

6

*pro bono* requirements. (Complaint ¶ 49).  For inactive or judicial members, these requirements are normally waived or reduced. (Complaint ¶ 49).  ALJs are often assigned to, and adjudicate cases in, states other than the jurisdiction in which they are licensed. (Complaint ¶ 50).  In some instances, CLE courses must be completed in the state of license rather than the state of residence.  Application of such rules would create substantial hardship for affected ALJs by requiring them to travel to their state of license to satisfy CLE requirements. (Complaint ¶50).

Dating back to at least 1989, numerous incumbent ALJs ceased maintaining "active" bar status. (Complaint ¶ 51).  Prior to the issuance of the Final Rule, these ALJs were never required to change their status. (Complaint ¶ 51).  Many of these ALJs were unable to come into "active" status prior to the effective date of the Final Rule because of CLE requirements, payment of dues, in some instances back dues for each year the ALJ was not active, or other obstacles to changing status. (Complaint ¶ 51). In the most extreme cases, ALJs may have to retake the bar examination to convert to active status.  (Complaint ¶ 51).  Incumbent ALJs unable to become "active" by the effective date of the Final Rule are at risk of not meeting a purported "continuing requirement" of their position.  (Complaint ¶ 52).  The ALJs are left in a position of not knowing whether they have an obligation to resign based on their failure to meet the Final Rule's requirements or whether OPM or an agency will take action to remove them from their positions. (Complaint ¶ 52).  The Final Rule casts doubt on such Judges ability to schedule hearings, continue to adjudicate pending cases and issue opinions. (Complaint ¶ 53).  In addition, implementation of the Final Rule may put many ALJs in jeopardy of being in conflict with state bar association rules.  (Complaint ¶ 53).  The removal or forced resignation of an ALJ for the failure to comply with the Final Rule will cause irreparable harm to the ALJ, the impacted agencies and the general public. (Complaint ¶ 53).

D.    **The Final Rule is Inconsistent with APA's Requirement that ALJs be Assigned in Rotation.**

The Final Rule alters the statutory mandate that Administrative Law Judges shall be assigned to cases in rotation so far as practicable under 5 U.S.C. §706(2)(c). (Complaint ¶ 81). The Final Rule purports to grant agencies the authority to assign ALJs in rotation. (Complaint ¶ 81). By transforming a mandatory statutory requirement of OPM into discretionary agency authority, the Final Rule is inconsistent with the plain meaning and language of the statute and, thus, is invalid. (Complaint ¶ 81).

E.    **The Vacancy Announcement and Notice of Examination Regarding the ALJ Position Issued by OPM are Facially Invalid and Capricious as Applied.**

On or about May 4, 2007, OPM issued an ALJ Vacancy Announcement and solicited qualified individuals to apply to take the new ALJ exam. (Complaint ¶ 88). The Vacancy Announcement stated that applications would be accepted until the earlier of May 18, 2007 or OPM's receipt of 1250 applications. (Complaint ¶ 88). Those applicants meeting minimum qualifications would be invited to take a written examination and undergo an in-person evaluation. (Complaint ¶ 89). Based on the consideration of the several factors, applicants who score at or above a minimum composite score will then be placed on the register for qualified applicants. (Complaint ¶ 89). From the new register, agencies needing ALJs will then interview and offer positions to those they deem best suited for ALJ position openings within that agency. (Complaint ¶ 89).

At the same time as it issued its new ALJ vacancy announcement, OPM informed agencies in need of ALJs that such agencies were free to continue hiring ALJs off the old register. (Complaint ¶ 90). A new register would be established in approximately November 2007, after

8

which OPM would then close the old register. (Complaint ¶ 90). OPM notified those individuals on the old register that they should consider filing an application to take the new exam and become qualified on the new register. (Complaint ¶ 90). Between January through April 2007, OPM gave advance notice to one or more agencies that it would be issuing an ALJ position Vacancy Announcement shortly after it issued new ALJ rules. (Complaint ¶ 91). On information and belief, these agencies received notice of the new examination and qualification standards in advance of OPM placing the Notice on its web-site. (Complaint ¶ 91). Agencies who received pre-website notice of the Vacancy Announcement and the new ALJ examination process shared this information with attorneys employed by those agencies in advance of notice to the general public. As a result of this advance notice, these agency attorneys received preferential treatment. (Complaint ¶ 92). On the same day that OPM posted the new ALJ exam on its web site, hundreds of federal agency attorneys with advanced notice of the Vacancy Announcement took the day off work in order to commence the time-consuming application process. (Complaint ¶ 93). Within three (3) business days following the day the ALJ Vacancy Announcement was posted on OPM's web site, OPM closed the Vacancy Announcement as the total number of applications had reached the 1250 cut off mark. (Complaint ¶ 94).

The new ALJ examination application process was administered in an unfair, discriminatory, arbitrary, and capricious manner that disproportionately favored individuals currently working for federal government agencies who received advanced or early notice of the Vacancy Announcement. The new ALJ examination and application process disproportionately disfavored all other potentially qualified applicants not currently employed as attorneys with a federal agency. (Complaint ¶ 97). As a result, the new register of applicants will enable hiring

9

agencies to practice selective certification of individuals whose qualifying legal experience is comprised of prior employment with that agency. (Complaint ¶ 98). Agencies can now withhold offers of employment as ALJs to individuals whose qualifying legal experience would bring an independence of judgment unencumbered by any ties to the agency by virtue of prior employment. (Complaint ¶ 99).

## IV.   ARGUMENT

The Defendant filed a Motion to Dismiss Plaintiffs' Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure. In general, a motion to dismiss under Fed. R. Civ. P.12(b) will be denied "unless plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." Kowal v. MCI Communs. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Memorandum in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P.12(b)(1) (Defendants' Memorandum", Docket # 11), claims the Plaintiffs lack standing to bring their claims challenging the Final Rule codified in 5 C.F.R. § 930.204 ("Final Rule"). (Defendants' Memorandum, pp. 1-2.) Standing refers to the question of whether a person or entity has the right to secure judicial review. Despite the fact that the Final Rule significantly alters the terms and conditions of employment for incumbent ALJs by requiring them to maintain active bar membership and alters the rotation requirement, Defendants argue that these ALJs do not have standing to challenge this new rule. This assertion is plainly false. In addition, there is little doubt that the Plaintiff applicants' injury would be redressed by setting aside the Vacancy Announcement. Finally, the Plaintiffs have submitted affidavits that respond to and cure any alleged deficiencies.

10

"The emphasis in standing problems is on whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the controversy.'" Flast v. Cohen, 392 U.S. 83, 101 (1968)(quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).  At this stage of litigation, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, [the court] will presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted).  The Court may consider extrinsic evidence to resolve any factual disputes regarding jurisdiction.  Association of Am. Med. Colleges v. United States, 217 F.3d 770, 778 (9th Cir. 2000).  Indeed, it is an accepted practice to allow parties to submit additional affidavits to supplement the plaintiff's complaint at appropriate points in the proceedings (i.e. in response to a motion to dismiss for want of standing).  See Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003)(A court may appropriately  dispose of a case under 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."); Artis v. Greenspan, 223 F. Supp. 2d 149, 152 n.1(D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."); Spann v. Colonial Village, Inc., 899 F.2d 24, 28 (D.C. Cir. 1990).

A plaintiff has standing to sue if three elements are present: (1) injury-in-fact; (2) causation; and (3) redressability. Lujan, 504 U.S. at 560.  Under the three-pronged standing inquiry, injury must be shown as (1) concrete and particularized, and (2) actual or imminent, rather than conjectural or hypothetical. Id.  Injury can be proved by showing a "sufficient

11

likelihood of economic injury." Clinton v. City of N.Y., 524 U.S. 417, 432 (1998); Shays v.

F.E.C., 414 F.3d 76, 85-86 (D.C. Cir. 2005). In addition, plaintiffs must meet the "prudential"

requirement that their action falls within "the zone of interest to be protected or regulated or

regulated by the statute or constitutional guarantee in question." Valley Forge Christian College

v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474-75

(1982)(citations omitted). "The zone of interests adequate to sustain judicial review is

particularly broad in suits to compel federal agency compliance with the law…" FAIC Securities,

Inc. v. United States, 768 F.2d 352, 357 (D.C. Cir. 1985). Accordingly, the APA, 5 U.S.C. § 702,

provides "[a] person suffering legal wrong because of agency action, or adversely affected or

aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review

thereof."

## A.    In Counts I-III, AALJ Has Pled a Sufficient Injury for Standing Based on the Cost of Compliance for Incumbent ALJs.

It is beyond peradventure that the ALJs have a personal stake in the outcome of this case.[1]

The Final Rule requires for the first time that all incumbent ALJs maintain active bar status while

they serve as ALJs. This is a departure previous policy and it contradicts prior guidance on this

issue. The Final Rule is a significant change to the terms and conditions of the employment of all

federal ALJs. As shown below, the Plaintiff ALJs are adversely affected by the Final Rule's

---

[1] An organization has standing to sue on behalf of its members when three elements are present: (1) at least one of its members would have standing to sue in his or her own right; (2) the interests the association seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit. Hunt v. Wash. St. Apple. Advertising Comm'n, 432 U.S. 333, 342-33 (1977). Here, as it is clear that the Plaintiff ALJs, all of whom are members of AALJ, have standing, the AALJ also has standing as the representative of these ALJs and other similarly situated ALJs.

imposition of the requirement that they maintain active bar status.

The Complaint clearly states that the Association of Administrative Law Judges ("AALJ") is the certified bargaining representative of ALJs in the Social Security Administration and Department of Health and Human Services. One of the purposes of the AALJ is to preserve, promote and improve the working conditions of ALJs. The Complaint lists ten incumbent ALJ Plaintiffs who were affected by the Rule changes of the OPM. Further, the Complaint's section titled "Impact of the Final Rule on Judges" clearly lays out an adequate factual description of the kinds of harm on ALJs as a result of the Final Rule. For example, the Complaint alleges that active bar membership requires the completion of continuing legal education ("CLE") credit, maintenance of client security trust funds, and payment of specified bar dues. Some states impose other requirements on active status members, such as compulsory *pro bono* requirements. For inactive or judicial members, these requirements are normally waived or reduced. (Second Amended Complaint, ¶ 49). The Complaint further alleges:

> ALJs are often assigned to, and adjudicate cases in, states other than the jurisdiction in which they are licensed. In some instances, CLE courses must be completed in the state of license rather than the state of residence. Application of such rules would create substantial hardship for affected ALJs by requiring them to travel to their state of license to satisfy CLE requirements.

(Second Amended Complaint, ¶ 50). The presented facts and arguments in the Complaint are more than "reasonably sufficient."

This Court has held that unions representing federal employees have standing to challenge OPM regulations that alter their members' terms and conditions of employment.[2] American

---

[2] Interestingly, even though OPM was a party to these very on-point standing cases, it chose to ignore them in its brief in support of its motion to dismiss.

Federation of Government Employees, AFL-CIO v. Office of Personnel Mgt., 618 F.Supp. 1254, 1258-59 (D.D.C. 1985); National Treasury employees Union v. Devine, 577 F.Supp. 738, 743-45 (D.D.C. 1983)("If NTEU has no standing to contest regulations which are claimed to have a far reaching impact on day-to-day working situations and an employees' career, dealing with job retention rights, performance appraisals, promotions and pay increases, it is difficult to conceive of a more appropriate representative."). Similar to the instant case, in NTEU, the Defendant challenged the plaintiff's standing arguing that "NTEU had not met the threshold requirement of showing either injury to itself as an organization or in a representative capacity, based upon injuries threatened or actually sustained by its members, because of actions taken by OPM." Id. At 743. In NTEU, the plaintiff's complaint included the following allegations:

> 41. Plaintiff, and the members it represents, are persons suffering legal wrong or adversely affected or aggrieved by OPM's unlawful actions to effectuate the October 25, 1983 regulations, within the meaning of 5 U.S.C. § 702.

> 42. OPM's actions to effectuate the October 25, 1983, regulations in violation of H.J. Res 413 Interfere with plaintiff's ability to negotiate collective bargaining agreements dealing with the subjects addressed in the regulations.

> 43. OPM's actions to effectuate the October 25, 1983 regulations in violation of H.J. Res. 413 harm the interest of NTEU's membership because the regulations would effect significant changes in the three important areas of personnel administration, i.e. the performance management of "incentive" system, rules for reductions in force, and overtime pay. Effectuation of the regulations would change the performance appraisal system applicable to all employees, so that plaintiff's members would be subject to new rules for determining their status and rights.

Id. at 744. The Court held that these allegations were sufficient to provide NTEU with standing. Id. ("The regulations are such that they will undoubtedly impact in some manner on a large segment of the government's civilian workforce, including members of the plaintiff union."). Here, the Complaint alleges that the Final Rule results in a concrete and particularized injury that

14

is actual and imminent by fundamentally altering the requirements to remain qualified to serve as a federal ALJ. (Complaint, ¶¶ 51-53).

Based on the allegations in the Complaint, the Plaintiffs have pled sufficient facts to show a sufficient likelihood of economic injury, through payment of bar fees, CLE requirements and other costs associated with maintaining active bar membership. Additionally, to gain "active" status, many ALJs will be forced to pay back dues for each year the ALJ was not active, and in some cases be forced to retake the bar examination. Remaining in "inactive" or "judicial" status in the respective ALJ's state bar has been accepted as a judicial privilege with both economic and personal benefits such as not having to pay bar fees, complete CLE requirements, maintain client security trust funds, and/or take part in compulsory *pro bono* requirements.[3] ALJs can also be removed or forced to resign due to their failure to comply with rules issued by the OPM. These consequences result in economic harm, whether in the form of forced action to comply with the Final Rule, or the termination of one's livelihood due to noncompliance with the Final Rule. In AFGE, supra, the Court stated:

> [T]he regulations at issue here are presently in effect, and they are binding upon hundreds of thousands of federal employees. They are, for the moment, the "final administrative word" with respect to the aspects of federal employment they cover, and the issues before the Court are therefore sufficiently concrete for judicial resolution ... OPM has acted, and its action is having repercussions for plaintiffs and their members daily.

618 F.Supp. at 1259. Here, over one thousand Administrative Law Judges are affected by the Final Rule. The Final Rule, moreover, is the final administrative word with respect to this aspect

---

[3] These obligations should apply to practicing attorneys, rather than judges who must maintain their judicial independence.

of the ALJs' employments.  As in <u>AFGE</u> and <u>NTEU</u>, these ALJs have standing to challenge OPM regulations that alter the terms and conditions of their employment.

The Defendants' Memorandum claims that the Plaintiffs do not have standing because they failed to identify any individual plaintiff or member of the AALJ who has actually allowed his or her bar membership to lapse.  (Defendants' Memorandum, p.9).  Defendants assert that, as a result of the failure to identify an out of compliance judge, plaintiffs have not established that they suffered an injury by the implementation of the Final Rule.  This Court, however, has previously rejected this argument in a similar case.  In <u>AFGE</u>, <u>supra</u>, the Court stated:

> That individual employees now hold their jobs upon new – and arguably less attractive – terms is a certainty, and *plaintiffs need not be able to identify particular employees who will be harmed*, nor to prophesy the exact nature and extent of the damages to be inflicted, to maintain such actions.  The Court finds that these plaintiffs have standing in their own right.

618 F.Supp. at 1259 (emphasis added).  The Final Rule requiring mandatory "active" bar status altered a position that many ALJs believed was a settled issue.  Despite repeated statements from OPM and the agencies in the past that ALJs were not required to maintain active bar membership. OPM stated that the Final Rule was simply a clarification that required no transition period and that *all ALJs* must satisfy the requirements of the Final Rule as of the effective date.  It is fair to assume that the OPM passed this rule fully intending to enforce its requirements; and any ALJs not in compliance will be forced to comply with the Final Rule, or be subject to penalty.

The Defendants state in their Motion, "[a]t the pleading stage, plaintiffs must allege specific, concrete facts demonstrating both that the challenged action or policy harms them and that the relief sought would benefit them in a tangible way." <u>Warth v. Seldin</u>, 422 U.S. 490, 508 (1975). In <u>Warth</u>, the Supreme Court, however, noted that a plaintiff could cure any alleged defects to standing either through an affidavit or an amendment of the complaint.  <u>Id.</u> at 422 U.S.

at 501-502 ("[It] is within the trial court's power to allow or require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."). In Tooley v. Bush, 2006 U.S. Dist. LEXIS 92274 (D.D.C. 2006), this Court explained that a plaintiff was not limited to the allegations in the complaint to establish standing:

> Such would be the case on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); however, on a motion to dismiss under Rule 12(b)(1), the Court may consider matters beyond the pleadings themselves including, specifically, affidavits submitted by the Plaintiff. See Equal Employment Opportunity Comm'n. v. St. Francis Xavier Parochial School, 117 F.3d 621, 625 n.3 (D.C. Cir. 1997); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). As such, in reviewing Defendants' motion to dismiss, the Court may consider both Plaintiff's Complaint and his Affidavit submitted in support of his Opposition.

Id. at *70.[5] Here, Plaintiffs had a good faith belief that standing was pled sufficiently in Paragraphs 46 through 53 of the Complaint. Additionally, the attached affidavits irrefutably establish the standing of the individual ALJs. Paragraphs 17 and 18 of the affidavit of David Agatstein provide:

> 17.   OPM's final ALJ Rules which are effective April 19, 2007, will impact me in the following manner:  I am not in compliance with the rules, in that I am not an active member of any state bar, and I am, therefore, in jeopardy of removal proceedings.

> 18.   As a consequence of my non-compliance with OPM's final ALJ rules, I am now subject to possible removal or other discipline by either OPM or by Social Security.

---

[5]  Furthermore, this Circuit has firmly stated that precedent regarding the pleading of standing will not be construed to such a strict and inflexible extent that would cause parties to include long jurisdictional statements in initial pleadings. Am. Library Ass'n v. FCC, 401 F.3d 489, 492 (D.C. Cir. 2005) ("[Defendant's] 'gotcha' construction of [the standing requirement] is inconsistent with our precedent… This would waste judicial resources and place an unnecessary burden on litigation.").

See also Affidavit of Karl Alexander, ¶¶ 15-19; Affidavit of James R. Norris, ¶¶ 12-16; Affidavit

of Edwin J. Shinitzky, ¶ 19. Through the attached affidavits, Plaintiffs have identified individual

Plaintiffs, who are members of AALJ, that are not currently in compliance with the Final Rule.

Other individual Plaintiffs have suffered specific and particularized injury due to the Final Rule.

For example, Paragraphs 17 and 18 of the affidavit of Cheryl Rini provide:

> 17.    OPM's final ALJ Rules which went into effect on April 19, 2007
> affected me in the following manner: I elected "active" status in the State of
> Colorado. I had to pay an additional fee and penalty to change my status. I am
> now also subject to continuing education requirements.

> 18.    Since learning about the final rules on or about March 20, 2007 and
> after making appropriate inquiries with my state bar, I determined that I would not
> be able to timely comply with OPM's rules for the State of Ohio for the following
> reason: I would not be able to complete the continuing education requirements by
> April 19, 2007 to go from "suspended" status to "active" status and paying all the
> fees and penalties would be an additional financial hardship. I remain in
> "suspended" status in the State of Ohio.

See also Affidavit of Jon R. Hunt, ¶ 18 (I have had to pay an additional $464.00 for 2007

fees and late payments penalties to be placed on the active roles."); Affidavit of John

Kraybill, ¶ 19 ("I have incurred personal expenses in excess of $1,900 in order to

complete the CLE requirements and pursue Active status."). These affidavits reflect that

the Plaintiffs have incurred personal expenses to comply with the Final Rule. Interstate

Natural Gas Ass'n of America v. F.E.R.C., 285 F.3d 18, 46 (D.C. Cir. 2002)(holding

compliance costs often constitute an injury-in-fact for standing purposes).

The Defendant's use of Am. Chem. Council v. D.O.T., 468 F.3d 810, 820-21 (D.C. Cir.

2006) is misguided. There, the plaintiff organization failed to identify a single member injured

due to the challenged agency action; and even after two opportunities to submit affidavits to show

standing for one of its members, no injury was presented to the Court. Here, the Plaintiffs have

presented reasonably sufficient facts to plead standing both in the Complaint and in supplemental affidavits.

**B.     In Counts IV, the Plaintiffs Have Standing Based on the Change in the Terms and Conditions of their Employment and the Harm to their Independence.**

Regarding Count IV, Defendants argue that Plaintiffs lack standing to assert Count IV because they "identify no manner in which §930.201(f)(2) might cause any injury." The Plaintiffs' Complaint alleges that the plain language of the APA requires that ALJs "be assigned to cases in rotation so far as practicable." The Complaint further alleges that the Final Rule purports to grant agencies the discretionary authority to assign ALJs in rotation and alleges that by transforming a mandatory statutory requirement of OPM into discretionary agency authority, the Final Rule is inconsistent with the plain language of the statute. (Complaint, ¶ 81). It is clear that Section 930.201(f)(2) alters the APA's requirement regarding the assignment of cases in rotation. As a result, ALJs "now hold their jobs upon new – and arguably less attractive – terms." As in <u>AFGE</u>, the ALJs have standing to challenge this change to the terms and conditions of their employment.

In addition, Plaintiff ALJs have suffered an injury because Section 930.201(f)(2) has a detrimental effect on their independence. ALJs' independence is threatened by the knowledge that agencies now may refuse to rotate them so that presumably they now may be assigned cases based upon the merits of prior decisions. The risk is that ALJs might conform their decision-making to cater to agencies in order to get cases or particular types of cases. Recognizing in agencies the power to marginalize judges whom agencies find problematic may prompt – and be designed to prompt – judges to hew to the agency line. (Affidavit of Ronald G. Bernoski).

19

The courts in <u>Association of ALJs v. Heckler</u>, 594 F. Supp. 1132, 1141 (D.D.C. 1984)("In sum, the ALJ's right to decisional independence is qualified.") and <u>Nash v. Califano</u>, 613 F.2d 10, 16 (2d Cir. 1980)("The APA creates a comprehensive bulwark to protect ALJs from agency interference.") recognized that the APA has vested in ALJs a qualified right to judicial independence. In <u>Nash</u>, the court also recognized that "Congress may enact statues creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." <u>Nash</u>, 613 F.2d at 14 (citations omitted). The APA is such a statute. OPM's invasion of the legal right to judicial independence created by the APA creates standing.

In <u>Nash</u>, an ALJ filed suit contesting a number of administrative actions taken by the agency to streamline the adjudication process. He alleged that the agency had overstepped its bounds and interfered with the judicial independence of the ALJs by reviewing work of ALJs outside the normal process, directing the proper amount of evidence to be admitted, dictating the length of hearings, and setting a monthly production quota. The Second Circuit held that "the alleged invasion of [the ALJ's] statutory right to decisional independence . . . presents a justiciable controversy." <u>Id.</u> at 10. The court stated:

> Since independence is expressed in terms of such personal rights as compensation, tenure and freedom from performance evaluations and extraordinary review, we cannot say that ALJs are so disinterested as to lack even standing to safeguard their own independence.

<u>Id.</u> at 16. Accordingly, the court held that the ALJ had "the personal stake and interest that impart the concrete adverseness required by Article III." <u>Id.</u> (citations omitted). Similarly, this Court in <u>Heckler</u> reached the merits of ALJ claims challenging the impact of agency policies on decisional independence.

In the instant case, Section 930.201(f)(2) of the Final Rule allows federal agencies to

circumvent the statutory requirement that ALJs be assigned to cases in rotation as far as practicable. Similar to the Nash and Heckler, Section 930.201(f)(2) infringes on the decisional independence of the ALJs. This is precisely the type of harm that the APA was designed to prohibit. Accordingly, Plaintiffs have standing to protest the invasion of this statutory right. Setting aside Section 930.201(f)(2), moreover, would redress this issue and protect the ALJs decisional independence under the APA.

C.   **The Plaintiff Applicants Have Standing to Bring Count V.**

In Count V, three private practice attorneys allege that the Vacancy Announcement should be set aside. The Complaint alleges that these Plaintiffs were unable to apply to the ALJ position prior to the closing of the Announcement. The Complaint further alleges that, unlike some agency attorneys, the Plaintiffs were not afforded advanced notice of the Vacancy Announcement. Here, Defendants do not challenge that the three Plaintiff applicants suffered an injury-in-fact. Rather, the Defendants moved to dismiss challenging the Plaintiffs' standing on the issue of redressability. Specifically, the Defendants contend that the Plaintiffs' failure to affirmatively allege intent to apply for the ALJ positions is fatal to the Plaintiffs' standing because without such an affirmative allegation by the Plaintiffs, any remedy by the court would not redress the Plaintiffs' alleged injury. (Doc. 11 at 17-20). On the contrary, setting aside the Vacancy Announcement would necessitate a new vacancy announcement and would allow the Plaintiff applicants to apply under the new announcement.

The defendant cites Gratz v. Bollinger, 539 U.S. 244, 261 (2003), Worth v. Jackson, 451 F.3d 854, 858-59 (D.C. Cir. 2006), and U.S. AirWaves, Inc. v. F.C.C., 232 F.3d 227, 232 (D.C. Cir. 2000) for the proposition that "if a plaintiff does not state an intention to apply for the benefit

once sought (be it a job or a government license) after the impediment is gone, then the court cannot conclude that the prospective relief sought will redress the plaintiff's injury." (Doc. 11 at 19). Gratz, Worth and U.S. AirWaves, however, are all distinguishable from the instant case. In Gratz, the Court addressed a plaintiff's standing to bring an equal protection challenge. Gratz, 539 U.S. at 261. Worth addressed a plaintiff's standing to bring a Title VII claim. Worth, 451 F.3d at 858. U.S. AirWaves addressed a plaintiff's standing to petition the court to review FCC rules regarding bidding on licenses. U.S. AirWaves, Inc., 232 F.3d at 232. DKT Memorial Fund, Ltd. v. Agency for Intern. Development, 810 F.2d 1236 (D.C. Cir. 1987), which addresses a plaintiff's standing to challenge agency policy regarding distribution of funds, is more analogous to the instant case. In DKT Memorial Fund, the Court of Appeals for the District of Columbia Circuit stated:

> The Supreme Court has recognized that otherwise qualified non-applicants may have standing to challenge a disqualifying statute or regulation. … [However,] in order to have standing to challenge the Policy, [plaintiff] must first show that, without the Policy, they would be qualified to receive [the benefit that the policy disqualified him from receiving].

Id. at 1238 (citing Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977)). DKT Memorial Fund, does not require a plaintiff to plead an affirmative intent to apply for funding in order to challenge the defendant's policy. The Court of Appeals stated that standing to challenge the policy of the defendant required only a showing that the plaintiff was qualified to receive funds from the defendant. DKT Memorial Fund, Ltd., 810 F.2d at 1238.

Even if the Plaintiffs are required to affirmatively state that they would reapply if the Notice Announcement was set aside, Plaintiffs cure this alleged defect through affidavits of the three Plaintiff applicants. Indeed, paragraph 6 of the affidavits submitted by Mary Rita Luecke,

Russell Doty and Edward J. "Ned" Richardson provides:

> I affirm that if the application period was reopened, I would again attempt to apply
> for a position as a federal administrative law judge.

Accordingly, these affidavits irrefutably rebut the Defendants' argument. As discussed more

fully above, affidavits may be used to supplement standing allegations in a complaint.[5]

OPM also argues that claims would not be redressable because agencies might still give

their own attorneys advance notice. Standing has been found where there is a causal relationship

between the government policy and the third-party conduct. In Abigail Alliance for Better Access

to Development Drugs v. Von Eschenbach, 469 F.3d 129 (D.C. Cir. 2006), the Food and Drug

Administration ("FDA") challenged "redressability on the grounds that, even if its regulations

were changed, it is merely speculation that drug manufactures would sell their investigational

medications" to plaintiffs. Id. at 135. The court rejected this argument holding that the rescission

of the challenged regulations would diminish the barriers faced by the plaintiffs. Id.; see also

Tozzi v. HHS, 271 F.3d 301 (D.C. Cir. 2001)(holding manufacturer had standing to challenge the

government's classification of dioxin as a carcinogen, because there as "little doubt" the

---

[5] Alternatively, the Plaintiffs should be permitted to amend their Complaint to include the above-quoted portion of the affidavits. "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. In this Circuit, courts have granted leave to amend a complaint to cure jurisdictional defects. Christenson v. Hogdal, 199 F.2d 402, 406 (D.C. Cir. 1952); National Treasury Employees Union v. Horner, 659 F. Supp. 8, (D.D.C. 1986)( granted the plaintiff leave to amend a complaint that was defective as to standing.); DKT Memorial Fund, 810 F.2d at 1238 (holding that leave to amend a complaint to include an affirmative allegation required to establish standing should be granted where the failure to include such an allegation was inadvertent rather than deliberate and granting leave is in the interest of justice). Leave to amend is proper because it would not result in undue delay or prejudice. Also, Plaintiffs are not seeking to amend their complaint in bad faith or for a dilatory motive. Additionally, the plaintiffs have not repeatedly failed to cure deficiencies by previous amendments. Finally, amending the complaint would not be futile because it would establish standing.

classification would affect the demand for the manufacturer's products); <u>Block v. Meese</u>, 793

F.2d 1303 (D.C. Cir. 1986)(holding a film distributor had standing to challenge the government's

classification of certain films as political propaganda affected customer actions).  OPM's actions

have a causal relationship to the injury to the Plaintiff applicants.  OPM's actions played a

significant role in structuring the process so as to disadvantage nonagency attorneys, irrespective

of any action by the employing agencies.  Here, setting aside the challenge regulations would

remove the most significant barrier to redress the Plaintiffs' injury.  Absent judicial intervention,

even if OPM issues a new vacancy announcement, the defects in the OPM process will remain

regardless of the actions taken by the employing agencies.

## V.    CONCLUSION

For the reasons stated herein, the Defendants' Motion to Dismiss should be DENIED.

Respectfully submitted,


_/S/_ Robert H. Stropp, Jr.
Robert H. Stropp, Jr. D.C Bar #429737
Richard C. Welch, D.C Bar #485756
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 783-0010
Facsimile: (202) 783-6088

Attorneys for the Plaintiffs

October 22, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2007, a true and correct copy of the foregoing Second

Amended Complaint was served via the Court's ECF system/electronic mail and by U.S. Mail,

first class postage prepaid, on the following:

Christopher Hall
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
christoper.hall@usdoj.gov


/s/ Richard C. Welch
Richard C. Welch
Attorney for the Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | ) ) ) ) |
| Plaintiffs, | ) Case No. 07-0711 (RMC) |
| v. | ) ) ) |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | ) ) ) |
| Defendants. | ) ) ) |

### AFFIDAVIT IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF

I, David J. Agatstein, make the following declaration of facts based upon my personal knowledge:

1.    I am a United States Administrative Law Judge (ALJ) employed by Social Security Administration.  I was appointed to my position as an ALJ in August, 1991, and I have been an ALJ with Social Security for the past fifteen years.   In my capacity as an SSA ALJ, I preside at formal hearings required by statute to be heard on the record in conformity to the provisions of the Administrative Procedure Act,  5 United States Code § 551 *et seq.*   Although an employee of Social Security, I am an independent, impartial trier of fact in formal agency hearings and my function is similar to that of a trial judge who conducts civil trials without a jury.

2.    I am presently assigned to the Pasadena, California, Hearing Office, which is in Region IX of the Office of Disability Adjudication and Review, SSA.  My direct supervisor is Philip Simon, Hearing Office Chief Administrative Law Judge.  My Regional Chief Administrative Law Judge is G. Stephen Wright.  My present case load consists of 220 Requests for Hearings.  In a typical month, I may hear approximately forty cases involving claims for disability, retirement or survivors benefits, and certain other issues arising under Titles II and XVI of the Social Security Act.

3.    I am a member of the bargaining unit represented by the Association of Administrative Law Judges, International Federation of Professional and Technical Engineers, AFL-CIO, IFPTE Judicial Council 1.

4.    Prior to my appointment as an ALJ, I had to go through an extensive application process which involved applying to the United States Office of Personnel Management (OPM) to see if I qualified to take the Administrative Law Judge

Examination. In that process, I relied upon and followed the directions for application set forth in OPM's Administrative Law Examination Announcement No. 318 dated May 1984. Those requirements included, but were not limited to, demonstrating to OPM that I had a license to practice law and a total of 7 years' experience as an attorney preparing for, participating in, and/or reviewing formal hearings or trials involving administrative law and/or litigation at the Federal, state or local level.

5.    I initially became licensed to practice law in the State of Virginia in 1968 and in the State of New York in 1969. I am not now, nor have I ever been, licensed to practice law in the State of California, where I have served as an ALJ since my appointment in 1991. I have never been subject to discipline or cited for breach of ethics or unprofessional conduct by the bar of any state.

6.    I never practiced law in the State of Virginia, where I was admitted to the bar as a non-resident law graduate under the rules of that State. From 1969, when I was admitted to the bar in New York, until 1975, I practiced law in New York State. In 1975 I was appointed as an Administrative Law Judge for the New York State Department of Labor. Following my appointment, my Virginia bar status was changed to "Judicial" and my New York State bar status was changed to "inactive" in accordance with the rules of those States. I maintained my "Judicial" and "inactive" bar statuses thereafter, through and including the federal ALJ examination process and my appointment as a federal ALJ, and continuously thereafter to the present time.

7.    After successful completion of the ALJ application process, my name was placed on the register of qualified applicants to become an Administrative Law Judge. In 1991, Social Security offered to employ me as a United States Administrative Law Judge and I accepted the offer.

8.    Upon or subsequent to my appointment as an ALJ with the Social Security Administration, I was provided by my employer and/or OPM with a copy of the following documents related to my position: (a) Federal Personnel Manual Chapter 930, Subchapter 2, entitled "Appointment, Pay and Removal of Administrative Law Judges," (b) Standards of Ethical Conduct for Employees of the Executive Branch promulgated by the United States Office of Government Ethics, 5 CFR Part 2635; (c) Administrative Law Judge Program Handbook; (d) Department of Health and Human Services Supplemental Standards of Conduct; (e) Social Security Administration Guide on Employee Conduct; and (f) Administrative Law Judge Position Description.

9.    At no time since my appointment as an ALJ has either OPM or SSA provided me a copy of any rule, regulation or official position description that contains a requirement that I maintain an active license to practice law after my appointment to the ALJ position by Social Security nor have I been verbally advised of this requirement.

10.    As a condition of my employment as a Social Security Administration Administrative Law Judge, I am generally prohibited from practicing law. On April 27, 1993 I received from then Regional Chief Administrative Law (Region IX) Judge Stanley

S. Sadur a copy of the recommended decision of the Merit Systems Protection Board which, according to the cover letter [Exhibit "A"- cover letter only] "addresses the issue of an ALJ engaging in the practice of law." The allegation of engaging in the practice of law was subsequently upheld, and the ALJ was discharged. SSA v. Whittlesey, 59 M.S.B.P. 684.

11.  Since my appointment as an ALJ with SSA, I have not practiced law. My duties as an ALJ are judicial in nature and function, and do not constitute the practice of law.

12.  The rules pertaining to "Judicial" bar status in the State of Virginia are summarized in a letter from James M. McCauley, Ethics Counsel, Virginia State Bar, to R. Neely Owen, dated May 21, 1999. [Exhibit "B"].

13.  The rules pertaining to "inactive" status in the State of New York are summarized in a letter from Michael Colodner of the Unified Court System to Marilyn Zahm dated February 14, 2006. [Exhibit "C"]

14.  Prior to March 20, 2007 and currently, I was and continue to be in "Judicial" status in the State of Virginia and in "inactive" status under the rules and regulations of the state bar of the State of New York.  From 1991 until the present, I have been a legal resident of the State of California.

15.  As a sitting judge, I have never been asked by an agency supervisor (Hearing Office Chief Administrative Law Judge, Regional Chief Administrative Law Judge or Chief Administrative Law Judge) to provide documentation as to my State bar membership, my state bar status as a licensed attorney or my compliance, if any, with state bar continuing legal education requirements.

16.  I have been aware of intra-agency (SSA) and inter-agency (SSA-OPM) disagreements concerning whether as in my capacity as an ALJ I am subject to an "active status" or comparable requirement as an incumbent judge, and I have actively participated in that disagreement at various times since 1998.

17.  OPM's final ALJ Rules which are effective April 19, 2007, will impact me in the following manner:  I am not in compliance with the rules, in that I am not an active member of any state bar, and I am, therefore, in jeopardy of removal proceedings.  Specifically, in contravention of the express language of the rules, Virginia (where I have never practiced law, in which I have never been domiciled, and where I have not lived for almost 40 years) classifies me as a "Judicial" member, and, while I am in that capacity, prohibits me from practicing law, but does not prohibit me from electing "active" status if I choose to do so, if I can satisfy the State's financial, educational, and other professional requirements for "active" status.

18.  As a consequence of my non-compliance with OPM's final ALJ rules, I am now subject to possible removal or other discipline by either OPM or by Social Security.

19.    Further Affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct this _11_ day of October 2007, in Pasadena, California.

David J. Agatstein
Administrative Law Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., ) ) ) | |
| Plaintiffs, ) ) | Case No. 07-0711 (RMC) |
| . v. ) ) | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., ) ) ) | |
| Defendants. ) ) ) | |

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF

I, KARL ALEXANDER, make the following declaration of facts based upon my personal knowledge:

1.      I am a United States Administrative Law Judge ("ALJ") employed by Social Security Administration.

2.      I was appointed to my position as an ALJ pursuant to 5 U.S.C. § 3105 on September 18, 1997, and I have been an ALJ with Social Security for the past ten years.  In my capacity as an SSA ALJ, I preside at formal hearings required by statute to be heard on the record in conformity to the provisions of the Administrative Procedure Act, 5 U.S.C. § 551 et seq. Although an employee of Social Security, I am an independent, impartial trier of fact in formal agency hearings and my function is similar to that of a trial judge who conducts civil trials without a jury.

3.      I am presently assigned to the Morgantown, West Virginia, Hearing Office, which is in Region III of the Office of Disability Adjudication and Review, SSA. My direct supervisor is George P. Mills III, Hearing Office Chief Judge. My Regional Chief Administrative Law Judge is Glynn F. Voisin.

4.      My present case load consists of about 200 pending claims. The typical claim that I hear involves the issue of entitlement to disability benefits under Titles II and XVI of the Social Security Act. Of my total pending claims, approximately 90 percent are awaiting hearing and approximately 10 percent are post hearing and awaiting decision.  In a typical month, I issue approximately 45 written decisions, each decision having an average actuarial value in excess of $200,000.00.

5.     I am a member of the bargaining unit represented by the Association of Administrative Law Judges, International Federation of Professional and Technical Engineers, AFL-CIO, IFPTE Judicial Council 1.

6.     I initially became licensed to practice law in the State of Pennsylvania on March 23, 1970. My bar license number is 115. Prior to my appointment as an ALJ, I was engaged in the active practice of law in the State of Pennsylvania.

7.     I have never been subject to discipline or cited for breach of ethics or unprofessional conduct by the bar of the State of Pennsylvania.

8.     Prior to my appointment as an ALJ, I had to go through an extensive application process which involved applying to the United States Office of Personnel Management ("OPM") to see if I qualified to take the Administrative Law Judge Examination. In that process, I relied upon and followed the directions for application set forth in OPM's Administrative Law Examination Announcement No. 318 dated June 1996. Those requirements included, but were not limited to, demonstrating to OPM that I had a license to practice law and a total of 7 years experience as an attorney preparing for, participating in, and/or reviewing formal hearings or trials involving administrative law and/or litigation at the Federal, state or local level.

9.     After successful completion of the ALJ application process, my name was placed on the register of qualified applicants to become an Administrative Law Judge. In August, 1997, Social Security offered to employ me as a United States Administrative Law Judge and I accepted the offer.

10.     Upon or subsequent to my appointment as an ALJ with the Social Security Administration, I was provided by my employer and/or OPM with a copy of the following documents related to my position: (a) Federal Personnel Manual Chapter 930, Subchapter 2, entitled "Appointment, Pay and Removal of Administrative Law Judges," (b) Standards of Ethical Conduct for Employees of the Executive Branch promulgated by the United States Office of Government Ethics, 5 CFR Part 2635; (c) Administrative Law Judge Program Handbook; (d) Department of Health and Human Services Supplemental Standards of Conduct; (e) Social Security Administration Guide on Employee Conduct; and (f) Administrative Law Judge Position Description.

11.     At no time since my appointment as an ALJ has either OPM or SSA provided me a copy of any rule, regulation or official position description that contains a requirement that I maintain an active license to practice law after my appointment to the ALJ position by Social Security nor have I ever been verbally advised of such a requirement.

12.     As a condition of my employment as a Social Security Administration Administrative Law Judge, I generally am prohibited from practicing law. Since my appointment as an ALJ with SSA, I have not practiced law outside of my duties as an ALJ.

13.    The State of Pennsylvania bar rules provide that an attorney may elect to be in one of the following statuses: "active," "inactive" or "judicial."

14.    The State of Pennsylvania bar rules do not recognize federal Administrative Law Judges to be "judges" for the purpose of holding "judicial" status under the rules or to be otherwise eligible to hold "judicial status". Therefore, the only choices open to ALJ's are "active" or "inactive."

15.    Prior to March 20, 2007 and currently, I was in inactive status under the rules and regulations of the state bar of the State of Pennsylvania.

16.    My decision to be in inactive status under the rules was guided and influenced by the following facts: no one ever mentioned during Judge training school a need to maintain an active law license; the only time I ever heard the subject mentioned was to the effect that this "policy" was not enforced; in the past 10 years, no one has ever inquired as to my status or asked me to show proof of my status; and, maintaining an active status did in all honesty appear to me to be somewhat of an empty gesture, inasmuch as I cannot practice law. At that time, I also thought that I would have to meet the CLE requirements applicable to active members. Living in West Virginia at the time, I would have been required to travel to Pennsylvania for CLE courses, thereby losing valuable time from my hearings and case load (into which I put at least 50 hours per week), in order to take courses which would be of essentially no value to me. I have since learned that I could probably have received an exemption from the CLE requirements.

17.    As a sitting judge, I have never been asked by an agency supervisor (Hearing Office Chief Administrative Law Judge, Regional Chief Administrative Law Judge or Chief Administrative Law Judge) to provide documentation as to my State bar membership, my state bar status as a licensed attorney or my compliance, if any, with state bar continuing legal education requirements.

18.    OPM's Final Rule impacted me in the following manner: If the requirement and date are enforced, I would lose my position as an ALJ after 10 years of hard and diligent work serving the public.

19.    Since learning about the final rules on or about March 20, 2007 and after making appropriate inquiries with my state bar, I determined that I would not be able timely to comply with OPM's rules for the following reason: Under Pennsylvania rules, I am required to file a Petition for reinstatement to active status, which I have already done. However, this is a complex procedure. I am advised by the Disciplinary Board of the Pennsylvania Supreme Court, which is the body that handles these matters, that the process typically takes 4 to 6 months. I am permitted to request expedited processing, setting forth the reasons therefore, and I have done that as well, but even the expedited process can take up to 3 months. The most difficult and onerous requirement is that it takes 36 hours of CLE before I can possibly be reinstated. This would require a significant period of time to accomplish.

3

20.    Further Affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct this _17_ day of October, 2007, in Morgantown, West Virginia.

Karl Alexander
Administrative Law Judge

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 07-0711 (RMC) |
| v. | ) ) ) | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | ) ) ) | |
| Defendants. | ) ) | |

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF

I, Jon R. Hunt , make the following declaration of facts based upon my personal knowledge:

1.    I am a United States Administrative Law Judge (ALJ) employed by Social Security Administration.

2.    I was appointed to my position as an ALJ pursuant to 5 USC § 3105 on August 12, 1990 and I have been an ALJ with Social Security for the past 16+ years. In my capacity as an SSA ALJ, I preside at formal hearings required by statute to be heard on the record in conformity to the provisions of the Administrative Procedure Act, 5 United States Code § 551 *et seq*. Although an employee of Social Security, I am an independent, impartial trier of fact in formal agency hearings and my function is similar to that of a trial judge who conducts civil trials without a jury.

3.    I am presently assigned to the Raleigh, North Carolina, Hearing Office, which is in Region 4 of the Office of Disability Adjudication and Review, SSA. My direct supervisor is William Andersen, Hearing Office Chief Judge. My Regional Chief Administrative Law Judge is Ollie Garmon.

4.    My present case load consists of 159 pending claims assigned to me which are scheduled for hearing or are in post-hearing development or are awaiting decision. There are 10 judges in this office and the cases are equally divided. The total number of pending claims in this office (assigned and unassigned) is around 9,000, so if the pending claims were to be evenly divided up among and assigned to all judges, the number of pending cases that would be assigned to me would probably be in excess of 900. The typical claim that I hear involves the issue of entitlement to disability benefits under Titles II and XVI of the Social Security Act. In a

typical month, I issue approximately 40-60 written decisions, each decision having an average actuarial value in excess of $200,000.00.

5.  I am a member of the bargaining unit represented by the Association of Administrative Law Judges, International Federation of Professional and Technical Engineers, AFL-CIO, IFPTE, Judicial Council 1.

6.  I initially became licensed to practice law in the State of Washington on March 1, 1968.  My bar license number is 1662.  Prior to my appointment as an ALJ, I was engaged in the active practice of law in the State of Washington and was an active member of the Washington State Bar Association.

7.  I have never been subject to discipline or cited for breach of ethics or unprofessional conduct by the bar of the State of Washington.

8.  Prior to my appointment as an ALJ, I had to go through an extensive application process which involved applying to the United States Office of Personnel Management (OPM) to see if I qualified to take the Administrative Law Judge Examination.  In that process, I relied upon and followed the directions for application set forth in OPM's Administrative Law Examination Announcement No. 318 dated *May 1984*.  Those requirements included, but were not limited to, demonstrating to OPM that I had a license to practice law and a total of 7 years' experience as an attorney preparing for, participating in, and/or reviewing formal hearings or trials involving administrative law and/or litigation at the Federal, state or local level.

9.  After successful completion of the ALJ application process, my name was placed on the register of qualified applicants to become an Administrative Law Judge.  In June or July, 1990, Social Security offered to employ me as a United States Administrative Law Judge and I accepted the offer.

10.  Upon or subsequent to my appointment as an ALJ with the Social Security Administration, I was provided by my employer and/or OPM with a copy of the following documents related to my position: (a) Federal Personnel Manual Chapter 930, Subchapter 2, entitled "Appointment, Pay and Removal of Administrative Law Judges," (b) Standards of Ethical Conduct for Employees of the Executive Branch promulgated by the United States Office of Government Ethics, 5 CFR Part 2635; (c) Administrative Law Judge Program Handbook; (d) Department of Health and Human Services Supplemental Standards of Conduct; (e) Social Security Administration Guide on Employee Conduct; and (f) Administrative Law Judge Position Description.

11.  At no time since my appointment as an ALJ has either OPM or SSA provided me a copy of any rule, regulation or official position description that contains a requirement that I maintain an active license to practice law after my appointment to the ALJ position by Social Security nor have I been verbally advised of this requirement.

12.  As a term of employment as a Social Security Administration Administrative Law Judge, I am generally prohibited from practicing law. I am also prohibited from practicing law

by the ethics rules of the Washington State Bar Association. Since my appointment as an ALJ with SSA, I have not practiced law outside of my duties as an ALJ.

13.  The Washington State Bar Association rules provide that an attorney may elect to be in one of the following statuses: Active, inactive or judicial. There are other statuses such as emeritus, corporate counsel or honorary, but active, inactive or judicial are the only categories which one can elect to choose.

14.  The State of Washington bar rules do not recognize federal Administrative Law Judges to be "judges" for the purpose of holding "judicial" status under the rules or to be otherwise eligible to hold "judicial status".

15.  Prior to March 20, 2007, and currently, I was in inactive status under the rules and regulations of the state bar of the State of Washington.

16.  My decision to be in inactive status under the rules was guided and influenced by the fact that Washington has mandatory rules for continuing legal education. As of 1992, I was living outside of the state, employed by SSA in the Phoenix, Arizona hearing office. Under the rules at that time, if I had elected I would have been required to fulfill 15 hours of continuing legal education ("CLE") credit per year and/or a total of 45 CLE credits over a specified 3 year time frame. SSA's policy did not and does not allow for a judge to attend a CLE on duty time and their policy did not and does not reimburse an ALJ for the cost of CLE programs which can be and usually are substantial. To convert to active membership I needed to make up 30 CLE credits and then take another 15 CLE hours over the course of the year, which was the three year time frame referred to. That would mean that I would have to take whatever vacation time I had accrued to travel at my own expense to the state of Washington (very little, if any, video and computerized attendance in 1992) and pay for the CLE courses myself in order to maintain an active license when both the agency and the state ethics rules prohibit active practice. The alternative was to take inactive status which I knew Washington afforded. I was made aware of the January 9, 1989 memorandum of OHA's Chief Administrative Law Judge Rucker (copy of the memorandum is attached hereto and the contents of which are self-explanatory), relied on it and took inactive status with the Washington State Bar Association as a result.

17.  As a sitting judge, I have never been asked by an agency supervisor (Hearing Office Chief Administrative Law Judge, Regional Chief Administrative Law Judge or Chief Administrative Law Judge) to provide documentation as to my State bar membership, my state bar status as a licensed attorney or my compliance, if any, with state bar continuing legal education requirements.

18.  OPM's final ALJ Rules effective April 19, 2007 have impacted me from the standpoint that in addition to my bar association dues payment for inactive status, I have had to pay an additional $464.00 for 2007 fees and late payment penalties to be placed on the active roles. In addition, I have had to make up 30 hours of CLE credit that was in arrears at the time I took inactive status in 1992. To achieve this, I had to personally incur the expense of the CLE seminars, use vacation time and personally absorb the expense of travel and hotels to the sites of the CLE programs. I am now an active member in good standing with the Washington State Bar

Association although I am ethically prohibited from the practice of law. From the CLEs that I took to achieve active status, I also know somewhat more about patent law, elder law and post-separation support and alimony law but have a difficult time utilizing it in my present duties with the agency.

19.  Further Affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct this 19th day of October, 2007, in Raleigh, North Carolina.

Jon R. Hunt
Administrative Law Judge

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07-0711 (RMC) |
| v. | ) ) ) | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | ) ) ) | |
| Defendants. | ) ) | |

**AFFIDAVIT IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF**

I, John K. Kraybill, make the following declaration of facts based upon my personal knowledge:

1.      I am a United States Administrative Law Judge (ALJ) employed by Social Security Administration.

2.      I was appointed to my position as an ALJ pursuant to 5 USC § 3105 on October 15, 1994, and I have been an ALJ with Social Security for the past 13 years. In my capacity as an SSA ALJ, I preside at formal hearings required by statute to be heard on the record in conformity to the provisions of the Administrative Procedure Act, 5 United States Code § 551 *et seq.*   Although an employee of Social Security, I am an independent, impartial trier of fact in formal agency hearings and my function is similar to that of a trial judge who conducts civil trials without a jury.

3.      I am presently assigned to the Oak Brook, Illinois Hearing Office, which is in Region 5 of the Office of Disability Adjudication and Review, SSA.  My direct supervisor is Robert Senander, Hearing Office Chief Judge. My Regional Chief Administrative Law Judge is Paul Lillios.

4.      My present case load consists of approximately 200 pending claims. The typical claim that I hear involves the issue of entitlement to disability benefits under Titles II and XVI of the Social Security Act. Of my total pending claims, approximately 66 percent are awaiting hearing and approximately 34 percent are post hearing and awaiting decision.   In a typical month, I issue approximately 45 written decision, each decision having an average actuarial value in excess of $200,000.00.

5.     I am a member of the bargaining unit represented by the Association of Administrative Law Judges, International Federation of Professional and Technical Engineers, AFL-CIO, IFPTE Judicial Council 1.

6.     I initially became licensed to practice law in the Commonwealth of Pennsylvania on November 15, 1979. My bar license number is 15288. Prior to my appointment as an ALJ, I was a government attorney with the Federal Highway Administration working in Washington, D.C.

7.     I have never been subject to discipline or cited for breach of ethics or unprofessional conduct by the bar of the Commonwealth of Pennsylvania.

8.     Prior to my appointment as an ALJ, I had to go through an extensive application process which involved applying to the United States Office of Personnel Management (OPM) to see if I qualified to take the Administrative Law Judge Examination. In that process, I relied upon and followed the directions for application set forth in OPM's Administrative Law Examination Announcement No. 318 dated May, 1984. Those requirements included, but were not limited to, demonstrating to OPM that I had a license to practice law and a total of 7 years' experience as an attorney preparing for, participating in, and/or reviewing formal hearings or trials involving administrative law and/or litigation at the Federal, state or local level.

9.     After successful completion of the ALJ application process, my name was placed on the register of qualified applicants to become an Administrative Law Judge. In October, 1994, Social Security offered to employ me as a United States Administrative Law Judge and I accepted the offer.

10.     Upon or subsequent to my appointment as an ALJ with the Social Security Administration, I was provided by my employer and/or OPM with a copy of the following documents related to my position: (a) Federal Personnel Manual Chapter 930, Subchapter 2, entitled "Appointment, Pay and Removal of Administrative Law Judges," (b) Standards of Ethical Conduct for Employees of the Executive Branch promulgated by the United States Office of Government Ethics, 5 CFR Part 2635; (c) Administrative Law Judge Program Handbook; (d) Department of Health and Human Services Supplemental Standards of Conduct; (e) Social Security Administration Guide on Employee Conduct; and (f) Administrative Law Judge Position Description.

11.     At no time since my appointment as an ALJ has either OPM or SSA provided me a copy of any rule, regulation or official position description that contains a requirement that I maintain an active license to practice law after my appointment to the ALJ position by Social Security nor was I ever verbally advised of this requirement.

12.     As a condition of my employment as a Social Security Administration Administrative Law Judge I am generally prohibited from practicing law. Since my appointment as an ALJ with SSA, I have not practiced law outside of my duties as an ALJ.

13.    The Commonwealth of Pennsylvania bar rules provide that an attorney may elect to be in one of the following statuses: Active, Inactive, Non Resident Active (a more recent category), or Retired.

14.    The Commonwealth of Pennsylvania bar rules do not recognize federal Administrative Law Judges to be "judges" for the purpose of holding "judicial" status under the rules or to be otherwise eligible to hold "judicial status" unless actually residing in the Commonwealth of Pennsylvania.

15.    Prior to March 20, 2007 and currently, I was in Inactive status under the rules and regulations of the state bar of the Commonwealth of Pennsylvania.

16.    My decision to be in Inactive status under the rules was guided and influenced by information I have received that I am not required to be in active status as an ALJ. In addition, I am aware that I am prohibited from practicing law and representing clients as an ALJ.

17.    As a sitting judge, I have never been asked by an agency supervisor (Hearing Office Chief Administrative Law Judge, Regional Chief Administrative Law Judge or Chief Administrative Law Judge) to provide documentation as to my State bar membership, my state bar status as a licensed attorney or my compliance, if any, with state bar continuing legal education requirements.

18.    OPM's final ALJ Rules which were effective April 19, 2007 impacted me in the following manner: In order to pursue reinstatement to active status with the Commonwealth of Pennsylvania, I was required to complete 36 approved CLE credits (at least 12 credits in ethics) prior to filing a Petition for Reinstatement. On March 18, 2007 I flew to Pittsburgh to attend 6 credit hours of ethics training held on March 19 and was unable to schedule a return flight back to Chicago until March 20. On March 30, 31, and April 8, 2007, I was able to complete 3 ½ CLE credits online and on May 6, 2007, I flew to Harrisburg to attend CLE classes from May 7 to May 11 ,2007. I had to cancel one day of scheduled hearings (5 cases) to be able to attend the Pittsburgh training. Having completed my CLE credits and obtaining proof of attendance, I was then able to file a 22 page Petition for Reinstatement that was received by the Disciplinary Board on June 4, 2007. The Board then advertised my Notice of Special Reinstatement Hearing that was held by telephone on September 21, 2007. On October 5, 2007, the Designated Hearing Committee Member issued a determination that my request is appropriate to be processed under the Abbreviated Reinstatement Procedure and recommended Board approval. On October 12, 2007, the Disciplinary Board issued a recommendation to the Supreme Court of Pennsylvania that I be reinstated upon payment of $189.50 to cover the expenses incurred in the investigation and processing of my Petition for Reinstatement.

19.    The reinstatement effort has resulted in my missing at least 8 days of work and I have incurred personal expenses in excess of $1,900 in order to complete the CLE requirements and pursue Active status.

3

20. Since learning about the final rules on or about March 20, 2007 and after making appropriate inquiries with my state bar, I determined that I would not be able to timely comply with OPM's rules for the following reason: I was told the reinstatement process may take from 6 months to one year to complete. I have diligently completed every step in the process and have been approved for the expedited procedure but I am still in the process of regaining Active status with the Commonwealth of Pennsylvania.

21. Further Affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct this 16th day of October 2007, in Oak Brook, Illinois.

John K. Kraybill
Administrative Law Judge

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | ) ) ) |
| Plaintiffs, | ) Case No. 07-0711 (RMC) ) |
| v. | ) ) |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | ) ) ) |
| Defendants. | ) ) |

### DECLARATION IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF

I, James R. Norris, make the following declaration of facts based upon my personal knowledge:

1.    I am a United States Administrative Law Judge (ALJ) employed by Social Security Administration ("SSA"). I was appointed to my position as an ALJ on August 12, 1990 and I have been an ALJ with SSA for the past 17 years. In my capacity as an SSA ALJ, I preside at formal hearings required by statute to be heard on the record in conformity to the provisions of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* Although an employee of Social Security, I am an independent, impartial trier of fact in formal agency hearings and my function is similar to that of a trial judge who conducts civil trials without a jury.

2.    I am presently assigned to the Indianapolis, Indiana Hearing Office, which is in Region Five of the Office of Disability Adjudication and Review, SSA. My direct supervisor is Stephen E. Davis, Hearing Office Chief Administrative Law Judge. My Regional Chief Administrative Law Judge is Paul C. Lillios. My present case load consists of 1000 Requests for Hearings. In a typical month, I may hear approximately forty cases involving claims for disability benefits.

3.    I am a member of the bargaining unit represented by the Association of Administrative Law Judges, International Federation of Professional and Technical Engineers, AFL-CIO, IFPTE Judicial Council 1.

4.    Prior to my appointment as an ALJ, I had to go through an extensive application process which involved applying to the United States Office of Personnel Management (OPM) to

see if I was qualified to take the Administrative Law Judge Examination. In that process, I relied upon and followed the directions for application set forth in OPM's Administrative Law Examination Announcement No. 318 dated May, 1984. Those requirements included, but were not limited to, demonstrating to OPM that I had a license to practice law and a total of 7 years experience as an attorney preparing for, participating in, and/or reviewing formal hearings or trials involving administrative law and/or litigation at the Federal, state or local level.

5.    I initially became licensed to practice law in the State of Iowa on June 13, 1974. I have never been subject to discipline or cited for breach of ethics or unprofessional conduct by the bar of the State of Iowa, or the state of Illinois, where I was admitted to practice law on motion on September 13, 1989.

6.    Prior to my appointment as an ALJ, I was engaged in the active practice of law in the State of Illinois.

7.    After successful completion of the ALJ application process, my name was placed on the register of qualified applicants to become an Administrative Law Judge. In May, 1990, Social Security offered to employ me as a United States Administrative Law Judge and I accepted the offer.

8.    Upon or subsequent to my appointment as an ALJ with the Social Security Administration, I was provided by my employer and/or OPM with a copy of the following documents related to my position: (a) Federal Personnel Manual Chapter 930, Subchapter 2, entitled "Appointment, Pay and Removal of Administrative Law Judges," (b) Standards of Ethical Conduct for Employees of the Executive Branch promulgated by the United States Office of Government Ethics, 5 CFR Part 2635; (c) Administrative Law Judge Program Handbook; (d) Department of Health and Human Services Supplemental Standards of Conduct; (e) Social Security Administration Guide on Employee Conduct; and (f) Administrative Law Judge Position Description.

9.    At no time since my appointment as an ALJ has either OPM or SSA provided me a copy of any rule, regulation or official position description that contains a requirement that I maintain an active license to practice law after my appointment to the ALJ position by Social Security nor was I ever verbally advised of this requirement.

10.    As a condition of my employment as a Social Security Administration Administrative Law Judge, I generally am prohibited from practicing law. Since my appointment as an ALJ with SSA, I have not practiced law outside of my duties as an ALJ.

11.    The States of Iowa and Illinois bar rules provide that an attorney may elect to be in one of the following statuses: active and retired. It is my understanding that the retired status in which I was placed in Iowa and Illinois was the result of my declaring that I was no longer practicing law and was then in inactive status which was categorized by the bar as retired.

2

12   Prior to March 20, 2007 and currently, I was in retired status under the rules and regulations of the state bar of the States of Iowa and Illinois.

13.   My decision to be in retired status under the rules was guided and influenced by information that I received from the bar associations of Iowa and Illinois at the times that I stopped engaging in the active practice of law.  I was informed by both bar associations that what I was to do was to inform them in writing that I would no longer be in the active practice of law in the state and I complied.  I also further believe that my retired status was influenced, at least partially, by the fact that I no longer lived in the state in which I was licensed.

14.   As a sitting judge, I have never been asked by an agency supervisor (Hearing Office Chief Administrative Law Judge, Regional Chief Administrative Law Judge or Chief Administrative Law Judge) to provide documentation as to my State bar membership, my state bar status as a licensed attorney or my compliance, if any, with state bar continuing legal education requirements.

15.   OPM's final ALJ Rules which was effective April 19, 2007 impacts me in the following manner: I am in the process of completing the application for admission by motion to the D.C. bar, and the information with regard to the same states unequivocally that this is at least a six month process.  I have no other employment or prospects for employment and if I am unable to work as an administrative law judge I will be unable to support myself and my wife, since I am not a member of the bar of Indiana, where we currently live.

16.   Since learning about the final rules on or about March 20, 2007 and after making appropriate inquiries with my state bar,  I determined that I would not be able timely to comply with OPM's rules for the following reason: In order to become active in the state of Iowa I would be required to complete continuing legal education of 15 hours per year since 1990.  To activate my status in Illinois I would be required to pay the total of the back dues since 1990.  There is no reasonable way to fulfill the continuing legal education before April 19, 2007, or pay the several thousand dollars to reactivate my active status in the state of Illinois.

3

17.   Further Affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct this 17ᵗʰ day of October, 2007, in Indianapolis, Indiana.

James R. Norris, Administrative Law Judge

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al.,      ) ) ) | |
| Plaintiffs,      ) | Case No. 07-0711 (RMC) |
| v.      ) | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,      ) ) ) | |
| Defendants.      ) | |

**AFFIDAVIT IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF**

      I, Cheryl M. Rini, make the following declaration of facts based upon my personal knowledge:

      1.    I am a United States Administrative Law Judge (ALJ) employed by Social Security Administration.

      2.    I was appointed to my position as an ALJ pursuant to 5 USC § 3105 on June 4, 1995 and I have been an ALJ with Social Security for 12 years. In my capacity as an SSA ALJ, I preside at formal hearings required by statute to be heard on the record in conformity to the provisions of the Administrative Procedure Act, 5 United States Code § 551 et seq. Although an employee of Social Security, I am an independent, impartial trier of fact in formal agency hearings and my function is similar to that of a trial judge who conducts civil trials without a jury.

      3.    I am presently assigned to the Cleveland, Ohio Hearing Office, which is in Region V of the Office of Disability Adjudication and Review, SSA. For administrative purposes, my direct supervisor is Ronald Marks, Hearing Office Chief Judge. My Regional Chief Administrative Law Judge is Paul Lillios.

      4.    I am a member of the bargaining unit represented by the Association of Administrative Law Judges, International Federation of Professional and Technical Engineers, AFL-CIO, IFPTE Judicial Council 1.

5.      I initially became licensed to      practice law in the State of Ohio in 1979.  My bar registration number is 0027992.  However I have never practiced law in the State of Ohio.  I was on "inactive" status until I was suspended, I believe in 2005 for non-payment of my dues.  I did not receive the suspension notice.  I was appointed to the U.S. Army Judge Advocate General Corps in 1979 and served in Washington D.C. and Denver, Colorado.  Prior to my appointment as an ALJ, I was engaged in the active practice of law in the private sector as well as for the Securities and Exchange Commission in the State of Colorado where I became licensed in 1984.  My bar license number is 12107.  I was also employed by the Social Security Administration as an Attorney Advisor assigned to the Evanston and Oakbrook Terrace, Illinois Hearings Offices.  I was on "active" status in the State of Colorado until approximately 2001 when I elected "inactive" status since I was serving as an Administrative Law Judge in Omaha, Nebraska at that time.  Since that time, I have served as an Administrative Law Judge in Houston, Texas and Cleveland, Ohio.  I have never been licensed to practice law in the States of Illinois, Nebraska, Texas or in Washington, D.C.

6.      I have never been subject to discipline or cited for breach of ethics or unprofessional conduct by the bar of the States of Ohio or Colorado.

7.      Prior to my appointment as an ALJ, I had to go through an extensive application process which involved applying to the United States Office of Personnel Management (OPM) to see if I qualified to take the Administrative Law Judge Examination.  In that process, I relied upon and followed the directions for application described in OPM's Administrative Law Examination Announcement No. 318 dated May 1984.  Those requirements included, but were not limited to, demonstrating to OPM that I had a license to practice law and a total of 7 years' experience as an attorney preparing for, participating in, and/or reviewing formal hearings or trials involving administrative law and/or litigation at the Federal, state or local level.

8.      After successful completion of the ALJ application process, my name was placed on the register of qualified applicants to become an Administrative Law Judge.  In March 1995 Social Security offered to employ me as a United States Administrative Law Judge and I accepted the offer.

9.      Upon or subsequent to my appointment as an ALJ with the Social Security Administration, I was provided by my employer and/or OPM with a copy of the following documents related to my position: (a) Federal Personnel Manual Chapter 930, Subchapter 2, entitled "Appointment, Pay and Removal of Administrative Law Judges," (b) Standards of Ethical Conduct for Employees of the Executive Branch promulgated by the United States Office of Government Ethics, 5 CFR Part 2635; (c) Administrative Law Judge Program Handbook; (d) Department of Health and Human Services Supplemental Standards of Conduct; (e) Social Security Administration Guide on Employee Conduct; and (f) Administrative Law Judge Position Description.

10.     At no time since my appointment as an ALJ has either OPM or SSA provided me a copy of any rule, regulation or official position description that contains a requirement that I

2

maintain an active license to practice law after    my appointment to the ALJ position by Social Security nor was I ever verbally advised of any such requirement.

11.    As a condition of my employment as a Social Security Administration Administrative Law Judge, I generally am prohibited from practicing law.  Since my appointment as an ALJ with SSA, I have not practiced law outside of my duties as an ALJ.

12.    The State of Colorado bar rules provide that an attorney may elect to be in one of the following statuses: "active", "inactive" or "retired".

13.    The State of Colorado bar rules do not recognize federal Administrative Law Judges to be "judges" for the purpose of holding "judicial" status under the rules or to be otherwise eligible to hold "judicial status".

14.    Prior to March 20, 2007 I was in "inactive" status under the rules and regulations of the state bar of the State of Colorado.

15.    My decision to be in "inactive" status under the rules was guided and influenced by the advice of Acting Chief Administrative Law Judge Jose Anglada.

16.    As a sitting judge, I have never been asked by an agency supervisor (Hearing Office Chief Administrative Law Judge, Regional Chief Administrative Law Judge or Chief Administrative Law Judge) to provide documentation as to my State bar membership, my state bar status as a licensed attorney or my compliance, if any, with state bar continuing legal education  requirements.

17.    OPM's final ALJ Rules which went into effect on April 19, 2007 affected me in the following manner:  I elected "active" status in the State of Colorado.  I had to pay an additional fee and penalty to change my status.  I am now also subject to continuing education requirements.

18.    Since learning about the final rules on or about March 20, 2007 and after making appropriate inquiries with my state bar, I determined that I would not be able timely to comply with OPM's rules for the State of Ohio for the following reason:  I would not be able to complete the continuing education requirements by April 19, 2007 to go from "suspended" status to "active" status and paying all the fees and penalties would be an additional financial hardship.  I remain in "suspended" status in the State of Ohio.

19.    Further Affiant sayeth not.

3

I declare under penalty of perjury that the foregoing is true and correct this 15th day of October, 2007, in Cleveland, Ohio.

Cheryl M. Rini
Administrative Law Judge

4

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., ) ) ) | |
| Plaintiffs, ) | Case No. 07-0711 (RMC) |
| v. ) | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., ) ) | |
| Defendants. ) | |

### AFFIDAVIT IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF

I, EDWIN J. SHINITZKY, make the following declaration of facts based upon my personal knowledge:

1. I am a United States Administrative Law Judge (ALJ) employed by Social Security Administration.

2. I was appointed to my position as an ALJ pursuant to 5 USC § 3105 on October 15, 1995 and I have been an ALJ with Social Security for the past eleven years. In my capacity as an SSA ALJ, I preside at formal hearings required by statute to be heard on the record in conformity to the provisions of the Administrative Procedure Act, 5 United States Code § 551 *et seq.* Although an employee of Social Security, I am an independent, impartial trier of fact in formal agency hearings and my function is similar to that of a trial judge who conducts civil trials without a jury.

3. I am presently assigned to the Chicago, Illinois Hearing Office, which is in Region 5 of the Office of Disability Adjudication and Review, SSA. My direct supervisor is Judge Michael McGuire, Hearing Office Chief Judge. My Regional Chief Administrative Law Judge is Judge Paul Lillios.

4. In a typical full month, I issue approximately 20 written decisions, each decision having an average actuarial value in excess of $200,000.00.

5. I am a member of the bargaining unit represented by the Association of Administrative Law Judges, International Federation of Professional and Technical Engineers, AFL-CIO, IFPTE, Judicial Council 1.

6.   I initially became licensed to practice law in the State of Illinois on May 19, 1955.  My bar license number is 2588641.  Prior to my appointment as an ALJ, I was engaged in the active practice of law in the State of Illinois.

7.   I have never been subject to discipline or cited for breach of ethics or unprofessional conduct by the bar of the State of Illinois

8.   Prior to my appointment as an ALJ, I had to go through an extensive application process which involved applying to the United States Office of Personnel Management (OPM) to see if I qualified to take the Administrative Law Judge Examination.  In that process, I relied upon and followed the directions for application set forth in OPM's Administrative Law Examination Announcement No. 318 dated, *May 1984*.  Those requirements included, but were not limited to, demonstrating to OPM that I had a State license in good standing to practice law and a total of 7 years' experience as an attorney preparing for, participating in, and/or reviewing formal hearings or trials involving administrative law and/or litigation at the Federal, state or local level.

9.   After successful completion of the ALJ application process, my name was placed on the register of qualified applicants to become an Administrative Law Judge.  On September 8, 1995, Social Security offered to employ me as a United States Administrative Law Judge and I accepted the offer.

10.   Upon or subsequent to my appointment as an ALJ with the Social Security Administration, I was provided by my employer and/or OPM with a copy of the following documents related to my position: (a) Federal Personnel Manual Chapter 930, Subchapter 2, entitled "Appointment, Pay and Removal of Administrative Law Judges," (b) Standards of Ethical Conduct for Employees of the Executive Branch promulgated by the United States Office of Government Ethics, 5 CFR Part 2635; (c) Administrative Law Judge Program Handbook; (d) Department of Health and Human Services Supplemental Standards of Conduct; (e) Social Security Administration Guide on Employee Conduct; and (f) Administrative Law Judge Position Description.

11.   At no time since my appointment as an ALJ has either OPM or SSA provided me a copy of any rule, regulation or official position description that contains a requirement that I maintain an active license to practice law after my appointment to the ALJ position by Social Security nor was I ever verbally advised of this requirement.

12.   As a condition of my employment as a Social Security Administration Administrative Law Judge, I am generally prohibited from practicing law.  Since my appointment as an ALJ with SSA, I have not practiced law outside of my duties as an ALJ.

13.   The State of Illinois Supreme Court Rules provide that an attorney may elect to register with the Attorneys Registration and Disciplinary Commission (ARDC) as Active, Inactive or Retired.  The ARDC does not premise the "in good standing" of its licensed Illinois lawyers on the category selected, rather only upon disciplinary issues.  If none are pending, then upon Motion and tender of appropriate registration fees, any inactive or retired Illinois licensed

2

lawyer in good standing may move for return to active status and resume the practice of law, subject to thereafter satisfying Continuing Legal Education requirements.

14.  The State of Illinois Supreme Court Rules currently do not distinguish between federal or state Administrative Law Judges and both must register as "judges" for the purpose of holding "judicial" status under its rules.

15.  Prior to March 20, 2007 and currently, I elected to register in inactive status under the Rules of the Supreme Court of Illinois and the ARDC.

16.  My decision to be in inactive status under the rules was guided and influenced by the fact that I am precluded from practicing law other than under my federal appointment as an ALJ, my status under federal law and the ABA Model Code (2007) as a "judge", my inability to hold "judicial" status under the Illinois interpretation which excludes ALJ from the definition of a "judge" and my further understanding and belief that although I am inactive I am in good standing in Illinois.

17.  As a sitting Administrative Law Judge, I have never been asked or directed by an agency supervisor (Hearing Office Chief Administrative Law Judge, Regional Chief Administrative Law Judge or Chief Administrative Law Judge) to confirm or provide documentation as to my State registration, my state status as a licensed attorney or my compliance, if any, with state continuing legal education requirements.

18.  OPM's final ALJ Rules effective April 19, 2007 will have an adverse impact on me and other Illinois ALJs similarly situated as the Rules will require me to withdraw my inactive status and convert to an active status. As a result, I will have to comply with Illinois' mandatory continuing legal education requirements at a substantial expense in terms of time and money. Social Security does not pay for its ALJ's continuing legal education courses and, generally speaking, such courses bear little to no relevance to my work as a Social Security ALJ. Attending CLE courses will encroach on the time that I would have for vacation or for hearing and deciding Social Security disability claims.

19.  Upon becoming informed of the final OPM Regulations on or about March 20, 2007, and after making appropriate inquiries with the Illinois ARDC, I confirmed my licensure and inactive status in Illinois; that there have been no past or current disciplinary proceedings directed towards me and I am in good standing under the ARDC Rules.

20.  Further Affiant sayeth not.

   I declare under penalty of perjury that the foregoing is true and correct this 22nd day of
October, 2007, in Chicago, Illinois..

                              Edwin J. Shipitzky, # 2032
                              U.S. Administrative Law Judge

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | ) ) ) |
| Plaintiffs, | ) ) Case No. 07-0711 (RMC) |
| v. | ) ) |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | ) ) ) |
| Defendants. | ) ) |

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF

I, Russell L. Doty, make the following declaration of facts based upon my personal knowledge:

1. I am an attorney in the private practice of law in Billings, Montana. I also am admitted to practice in Colorado. I am on inactive status in Minnesota where I practiced administrative and other law for a number of years as a contract administrative law judge and trial advocate.

2. I am qualified as an applicant for a position as a federal administrative law judge. Almost a decade ago I received a score of 90.7 (reduced on appeal to 87.9) on the ALJ exam. I have been waiting to reapply giving updated experience since that time that would have improved my score.

3. Prior to the Office of Personnel Management's ("OPM's") decision for the early closing of the application submission period for positions as federal administrative law judges, it was my full intention to reapply for a position as a federal administrative law judge, updating the application I made in the mid 1990s. Because I have been diligent in watching for a new application announcement, I have for years been on a computerized USAJOBS electronic list waiting to be notified of the reopening of the ALJ list.

4. I did not receive advance notice of the Vacancy Announcement prior to May 4, 2007, as some applicants did. And I did not receive electronic notice of the Vacancy Announcement when it was issued on May 4, 2007 either. The automatic USAJOBS notification of the ALJ opening is dated May 7th, the date I looked at the email that automatic service provided me. That email indicated the closing date would be May 18th. Different information was contained in the actual application (which I read on May 7th). In the actual

application OPM said that the posting would be open until May 18, "or until 1250 applications had been received," whichever came first. Reliance on the conflicting notification is not an issue for me as it may be for others. **My issue is that unequal notice given different applicants and the one-day time for making application given me was not fair and denied due process, given the fact that I made every reasonable effort to apply in a timely fashion and am therefore not foreclosed by any doctrine of equity from making this claim.**

5.   When I read the notice on the same day I received it, May 7th, I was traveling 520 miles away from home. Therefore, I did not have access to my prior ALJ application. Nevertheless, while on the road, I began reconstructing my application from memory and material on my computer. I also began calling several persons whom the application required me to reference to verify current contact information. When ready to submit my application on May 11, I saw that the exam was closed.  Unbeknownst to me, even though I had been checking the OPM website daily after May 7th, the ALJ Vacancy Announcement had closed on or about May 8, 2007—one day after I received notice that after almost a decade, the ALJ test was open. Thus, as a consequence of the OPM's decision on giving some applicants more notice than others and on the early closing of the application submission period, I was not able to submit an application prior to the closing of the Vacancy Announcement.

6.   I affirm that if the application period was reopened, I would again attempt to apply for a position as a federal administrative law judge.

7.   As a consequence of the OPM's actions, I have been denied due process and missed out on the economic and personal benefit in having an opportunity to procure employment as a federal administrative law judge.

8.   Further Affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct this _16_ day of October 2007.

_Russell L. Doty_
Russell L. Doty

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RECEIVED

OCT 1 8 2007

|                                              |     |                        |
| -------------------------------------------- | --- | ---------------------- |
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | )   |                        |
|                                              | )   |                        |
| Plaintiffs,                                  | )   | Case No. 07-0711 (RMC) |
|                                              | )   |                        |
| v.                                           | )   |                        |
|                                              | )   |                        |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | )   |                        |
|                                              | )   |                        |
| Defendants.                                  | )   |                        |

**AFFIDAVIT IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF**

I, Mary Rita Luecke, make the following declaration of facts based upon my personal knowledge:

1.    I am an attorney in the private practice of law in Evanston, Illinois.

2.    I am qualified as an applicant for a position as a federal administrative law judge. I was admitted to the practice of law in 1979. I am a member of the bars of the Illinois Supreme Court, the Northern District of Illinois and the Seventh Circuit Court of Appeals. From 1979 to 1984, I was a federal civil rights litigation associate with the law firm of Singer and Stein. From 1984 to 1986, I worked as an associate with the law firm of Alexander, Fennerty and Fujimoto where I represented claimants in employment discrimination and Social Security disability matters. Both of these firms were located in the City of Chicago. In January 1988, I began full time employment as an instructor at DePaul University College of Law. I returned to the private practice of law in 1993. I have remained a solo practitioner since that time. A significant portion of my practice is devoted to representing claimants before the Social Security Administration.

3.    Prior to the Office of Personnel Management's ("OPM's") decision for the early closing of the application submission period for positions as federal administrative law judges, it was my full intention to apply for a position as a federal administrative law judge.

4.    I did not receive advance notice of the Vacancy Announcement issued on May 4, 2007.

5.    As a consequence of the OPM's decision on the early closing of the application submission period, I was not able to submit an application prior to the closing of the Vacancy Announcement on or about May 8, 2007.

6.    I affirm that if the application period was reopened, I would again attempt to apply for a position as a federal administrative law judge.

7.    As a consequence of the OPM's actions, I have missed out on the economic and personal benefit in having an opportunity to procure employment as a federal administrative law judge.

8.    Further Affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct this _16th_ day of October 2007, in Evanston, Illinois.

Mary Rita Luecke
Attorney
3330 Lake Street
Evanston, Illinois 60203-1919
(847) 679-4922

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | ) ) ) |
| Plaintiffs, | ) ) Case No. 07-0711 (RMC) |
| v. | ) ) ) |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | ) ) ) |
| Defendants. | ) ) ) |

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF

I, Edward J. Richardson, make the following declaration of facts based upon my personal knowledge:

1.   I am an attorney in the private practice of law in South Weymouth, Massachusetts.

2.   I am qualified as an applicant for a position as a federal administrative law judge. I was admitted to practice in Massachusetts in 1973 and in New York in 1980. A detailed resume of employment and experience would be provided as part of an application for employment.

My legal education and bar admissions are synopsized as follows:
   a.   Suffolk University Law School.  JD, 1973
   b.   Admitted to practice in Massachusetts, 1973
   c.   New York University Law School.  LLM, 1978.
   d.   Admitted to practice in New York, 1980.
   e.   Admitted to US Districts of Massachusetts, SD and ED New York, USCA First and Second Circuits, 1980.

My employment history as an attorney is synopsized as follows:
   a.   Associate, Grabill and Ley, P.C., Boston, Massachusetts. December 1973-August, 1974.  Real estate practice.
   b.   United States Coast Guard.  Legal officer, four years active duty. August, 1974-August, 1978.  Experience included military trials of approximately 40 criminal (UCMJ) matters and approximately 80 administrative hearings on disability and civil penalty matters.

c.    Seafarers International Union. August, 1978-January, 1981. Staff counsel to union and to jointly administered employee benefit plans. Experience included state and federal civil litigation and arbitration hearings as well as preparation of compliance opinions under ERISA.

d.    Private general practice in Massachusetts. January, 1981 to date. Practice includes civil litigation in all of the trial courts of the Commonwealth of Massachusetts, appellate matters before the Massachusetts Appeals Court and administrative hearings before state and federal administrative agencies and various town boards and commissions. I have served as Town Counsel to the Town of Pepperell, MA from July, 2001 to date. Duties as Town Counsel included litigation, administrative hearings and legal opinions to Town departments and boards.

3.    Prior to the Office of Personnel Management's ("OPM's") decision for the early closing of the application submission period for positions as federal administrative law judges, it was my full intention to apply for a position as a federal administrative law judge and to submit a detailed application which met the criteria for admission including copies of decisions, appellate briefs and administrative opinions.

4.    I did not receive advance notice of the Vacancy Announcement issued on May 4, 2007.

5.    As a consequence of the OPM's decision on the early closing of the application submission period, I was not able to submit an application prior to the closing of the Vacancy Announcement on or about May 8, 2007.

6.    I affirm that if the application period was reopened, I would again attempt to apply for a position as a federal administrative law judge.

7.    As a consequence of the OPM's actions, I have missed out on the economic and personal benefit in having an opportunity to procure employment as a federal administrative law judge.

8.    Further Affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct this 22nd day of October 2007, in South Weymouth, Massachusetts.

Edward J. Richardson
51 Columbian Street, South Weymouth MA, 02190
Attorney at Law/BBO#419040

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)  Case No. 07-0711 (RMC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND REQUESTED RELIEF

I, Ronald G. Bernoski, make the following declaration of facts based upon my personal knowledge:

1.    I am the President of the Association of Administrative Law Judges, International Federation of Professional and Technical Engineers, AFL-CIO, IFPTE, Judicial Council 1. I am also a United States Administrative Law Judge ("ALJ") employed by Social Security Administration.

2.    The Association of Administrative Law Judges ("AALJ"), an unincorporated association affiliated with the International Federation of Professional and Technical Engineers ("IFPTE"), AFL-CIO, is the certified bargaining representative of more than 1,000 federal Administrative Law Judges ("ALJs" or "Judges") who adjudicate cases involving the Social Security Administration ("SSA") and the United States Department of Health and Human Services ("HHS"). Any ALJ appointed pursuant to the statutory provisions contained in 5 U.S.C. § 3105 and employed by the federal government as an ALJ in a bargaining unit represented by the AALJ is eligible for membership in the AALJ. The AALJ also grants associate membership to ALJs not in bargaining units represented by AALJ.

3.    The purposes of the AALJ are to (a) preserve, promote, and improve the guarantees and protections provided by the United States Constitution, the Administrative Procedures Act, the Social Security Act and all other Federal laws; (b) to preserve, promote, and improve the working conditions of Administrative Law Judges; (c) to preserve promote, and improve the professionalism and competence of Administrative Law Judges by insuring opportunities for continuing professional education and training; and (d) to preserve, promote, and improve the rights of its

members through collective bargaining, political action and all other lawful concerted activities.

      4.     In order to achieve its statutory purpose, the APA creates a "comprehensive bulwark" to protect ALJs from agency interference. The independence granted to federal ALJs was designed by Congress to maintain public confidence in the essential fairness of the process through which claims by individuals aggrieved by agency action are adjudicated. *Nash v. Califano,* 613 F.2d 10, 20 (2nd Cir. 1980). The statutory framework mandates that ALJs are to function as independent and impartial adjudicators in the federal administrative process. The ALJ is the only independent and impartial adjudicator available to an aggrieved party in the federal administrative process. As such, the ALJ is potentially the only person who stands between the claimant and agency administrative whim or bias.

      5     On March 20, 2007, OPM issued final regulations, ("the Final Rule") affecting the terms and conditions of employment of federal administrative law judges. 72 Fed. Reg. 12947. The Final Rule mandates that incumbent ALJs maintain "active" bar membership. As this was a new requirement, there were several ALJs, who are members of AALJ, who were not incompliance with the "active" bar requirement. Since it appeared from the regulations that OPM was taking the position such ALJs were not qualified to serves as ALJs due to a failure to meet a continuing requirement of their jobs, I sent a letter to the Honorable Frank Cristaudo, Chief Judge, Office of Disability Adjudication and Review, Social Security Administration, raising several practical questions regarding the implementation of the Final Rule. (Attached as Exhibit 1 to this Affidavit). I did not receive a response to this letter.

      6.     On September 28, 2007, I sent a letter to Kerry B. McTigue, General Counsel, Office of Personnel Management seeking clarification regarding the Final Rule. Specifically, I asked that he advise me whether "judicial status" is acceptable alternative to "active" in the bars for the District of Columbia, Pennsylvania, and Virginia. (Attached as Exhibit 2 to this Affidavit). I did not receive a response to this letter.

      7.     The Final Rule, in Section 930.201(f)(2), alters the statutory mandate in the Administrative Procedures Act that Administrative Law Judges shall be assigned to cases in rotation so far as practicable under 5 U.S.C. §706(2)(c). The Final Rule purports to grant agencies the authority to assign ALJs in rotation.

      8     Section 930.201(f)(2) impairs the decisional independence of ALJs. ALJs' independence is threatened by the knowledge that agencies now may refuse to rotate them so that presumably they now may be assigned cases based upon the merits of prior decisions. The risk is that ALJs might conform their decision-making to cater to agencies in order to get cases or particular types of cases. Recognizing in agencies the power to marginalize judges whom agencies find problematic may prompt – and be designed to prompt – judges to hew to the agency line.

9.   Further Affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct this 22nd day of October, 2007, in Washington, D.C.

Ronald G. Bernoski
Administrative Law Judge

# ASSOCIATION OF ADMINISTRATIVE LAW JUDGES

Henry Reuss Federal Plaza, Suite 300
310 W. Wisconsin Avenue
Milwaukee, WI 53203
(414-297-3141 X 3009)



April 23, 2007

The Honorable Frank Cristaudo
Chief Judge
Office of Disability Adjudication and Review
Social Security Administration
One Skyline Tower, Suite 1500
5107 Leesburg Pike
Falls Church, VA 22041-3255

Re:    OPM Final Rule Regarding Bar Status of Administrative Law Judges

Dear Chief Judge Cristaudo:

Effective April 19, 2007, Office of Personnel Management ("OPM") issued a Final Rule that requires active state bar membership as a qualification for service by incumbent Administrative Law Judges. Although we have had discussions with OPM regarding our objections to the Final Rule, and we have instituted a legal challenge to the Final Rule, there are several practical questions regarding the implementation of the Final Rule.

As you may be aware, there are a significant number of SSA Administrative Law Judges who are not currently compliant with the active state bar membership requirement. OPM has taken the position that these Administrative Law Judges are not qualified to serve as Administrative Law Judges because they fail to meet a continuing requirement of their position. As to those affected Administrative Law Judges, we would like guidance regarding:

      (1) whether they are obligated to advise the claimants in their pending cases that they do not meet a continuing requirement for their position under the Final Rule;

      (2) whether they must cease scheduling cases until they can come into compliance with the Final Rules' requirements;

      (3) whether they are required to cease the adjudicatory process on cases pending before them, i.e. decision making processes; and

(4) whether they have to take any action to notify claimants in cases where a decision has been rendered, whether on appeal or not, that they did not meet a continuing requirement for their position under the Final Rule when they issued their decision?

We raised these issues with OPM in our informal discussions, but OPM directed us to raise these concerns with the individual agencies. As you know, there is a substantial backlog of cases at the Social Security Administration. We hope that your response to this inquiry will help alleviate any possible disruptions to the adjudication process caused by the issuance of the Final Rule

In view of the importance of the issue, I trust that you will give this matter your attention and respond to this inquiry as soon as possible.

Sincerely,

Ronald Bernoski

cc: FBA
    FALJC
    FORUM

# ASSOCIATION OF ADMINISTRATIVE LAW JUDGES

Henry Reuss Federal Plaza, Suite 300
310 W. Wisconsin Avenue
Milwaukee, WI 53203
(414-297-3141 X 3009)



September 28, 2007

Mr. Kerry B. McTigue
General Counsel
Office of Personal Management
1900 E Street, NW
Washington, DC 20415-9700


Dear Mr. McTigue,

On April 18, 2007, I had the pleasure of meeting with you, as one of the representatives of the Association of Administrative Law Judges (AALJ), together with representatives of the Federal Administrative Law Judges Conference and FORUM to discuss several matters arising due to the promulgation of the new OPM regulations found at 5 CFR Parts 337 and 930 that impact on Administrative Law Judges. Of particular concern to us was the Licensure regulation (5 CFR # 930.204 (b) that permits certain judges in "judicial status" to satisfy the new regulations. The particular language of concern is:

> Judicial status is acceptable in lieu of "active" status in States that prohibit sitting judges from maintaining "active" status to practice law.

At the conclusion of our meeting, you advised us that you would provide us with an opinion concerning whether 'judicial status" in the DC Bar would satisfy the new criteria.

The AALJ has many members who are currently in "judicial status" throughout the nation with the majority of our members who are currently in "judicial status" being members of the DC, Virginia, and Pennsylvania bar associations. None of our judges wish to be in an "unacceptable" status and I have been advised that these judges will promptly switch from "judicial status" if/when it is determined that "judicial status" does not satisfy the new regulation.

Please advise us at your earliest convenience whether "judicial status" is an acceptable alternative to "active" status in these jurisdictions.


Sincerely,


Ronald G. Bernoski
President, AALJ