IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil No. 07cv00711 (RMC) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
PURSUANT TO FED. R. CIV. P. 12(b)(1)**

Defendants' opening brief [Docket No. 11] established that Plaintiffs had failed to demonstrate standing as to each of the five claims asserted in their complaint, despite having taken two opportunities to amend the complaint, once by right and once by leave of the Court [Docket Nos. 6, 7, 9]. Plaintiffs' opposition now argues essentially that they are not required to allege in their complaint any specific, redressable injury-in-fact to either the individual Plaintiffs or to any member of the Association of Administrative Law Judges ("AALJ"), which asserts standing in its representative capacity. In the alternative, Plaintiffs contend that they can cure any jurisdictional defects on the face of their complaint through the submission of declaration testimony without being required to amend the complaint. As explained herein, neither argument is correct. Plaintiff have failed to cure their standing shortcomings, either on the face of their complaint or as a factual matter. Accordingly, the Court should dismiss each and all of Plaintiffs' claims.

**ARGUMENT**

**1.    CLAIMS I THROUGH III.**

Defendant's opening memorandum demonstrated that Plaintiffs' second amended complaint fails to allege facts sufficient to establish their standing to assert Claims I through III. Plaintiffs' opposition does not alter that conclusion, and Plaintiffs have not attempted to amend their complaint a third time to cure those facial deficiencies.

Plaintiffs' primary argument – that they are not required to identify any specific ALJs who are out of compliance with the Final Rule's licensure requirement to establish standing to challenge the requirement, Pls.' Opp. Mem. at 13-16 – is foreclosed by the controlling weight of D.C. Circuit authority. In particular, International Brotherhood of Teamsters v. Transportation Security Admin., 429 F.3d 1130 (D.C. Cir. 2005), makes clear that such a showing is a necessary prerequisite to standing. In facts similar to those of this case, the union plaintiff in International Brotherhood of Teamsters challenged a TSA regulation that strengthened criminal background requirements on certain employees in the air transportation industry. 429 F.3d at 1132-33. In an effort to establish its representative standing, the union plaintiff pointed to the example of a flight engineer who apparently had been suspended from his position because he had been convicted of one of the offenses enumerated in the new regulation. Id. at 1133, 1134-35. The court concluded that this showing was insufficient to establish the union's standing because there was no record evidence showing that the engineer was one of its members, or even that he had been disqualified on the basis of the challenged regulation. Id. at 1134-35 (citing United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 553 (1996) and Hunt v. Wash.

State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).[1] Thus, if a plaintiff attempting to show representative standing cannot identify at least one of its own members who has been injured by the challenged regulation (and who would satisfy all requirements for standing to sue in his or her own right), representative standing is not demonstrated. Id. at 1134-35; see also American Chemistry Council v. Dep't of Transportation, 468 F.3d 1130, 1135 (D.C. Cir. 2007).

Plaintiffs attempt to circumvent this controlling authority (which their opposition does not acknowledge) by arguing that the licensure requirement has altered the terms and conditions under which ALJs are employed, and that this alteration in and of itself constitutes injury-in-fact sufficient to support standing. But this argument relies solely on a pair of outdated and factually distinguishable district court decisions. The decisions cited by Plaintiffs – American Federation of Government Employees, AFL-CIO v. OPM, 618 F. Supp. 1254 (D.D.C. 1985), and National Treasury Employees Union v. Devine, 577 F. Supp. 738 (D.D.C. 1983) – each predate the D.C. Circuit's decisions in International Brotherhood of Teamsters and American Chemistry Council by at least twenty years, and thus should be disregarded insofar as they are inconsistent with either decision. And there is little question that they are inconsistent; under Plaintiffs' argument, the plaintiff union in International Brotherhood of Teamsters would have possessed standing to challenge the criminal background regulation simply because it altered its members' terms and conditions of employment, see Pls.' Opp. Mem. at 13-14, yet the court concluded that standing

---

[1] Under the three-part test for representational standing, "[a] trade union has representational standing to bring suit on behalf of its members if (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Int'l Brotherhood of Teamsters, 429 F.3d at 1134-35 (internal cites and quotes omitted). See also Defs.' Mem. at 7.

was not satisfied without a showing that at least one of the union's members was directly injured by the challenged regulation.  Int'l Brotherhood of Teamsters, 429 F.3d at 1134-35.

Moreover, the facts of AFGE v. OPM and NTEU v. Devine differ from those here in obvious and fundamental ways.  In each of those two cases, the plaintiffs challenged a broad set of OPM regulations governing reduction-in-force actions, performance appraisal and promotion systems, and pay-scale administration that would "affect almost every species of personnel action for the entire federal civilian workforce [] . . ."  See AFGE v. OPM, 618 F. Supp. at 1259; NTEU v. Devine, 577 F. Supp. at 740, 744-45.  Here, by contrast, the challenged regulation is a discrete provision that simply clarifies the type of bar membership status that sitting ALJs must maintain. Thus, this case is much more closely akin to International Brotherhood of Teamsters, in which the challenged regulation simply modified a similarly discrete criminal background employment condition.  See Int'l Brotherhood of Teamsters, 429 F.3d at 1132-33.  Accordingly, the decisions in AFGE v. OPM and NTEU v. Devine are not helpful to Plaintiffs here.

As an alternative to their primary argument that they are not required to allege specific injury in their complaint, Plaintiffs contend that they have now established standing through the submission of declaration testimony that certain individual Plaintiffs are out of compliance with the licensure requirement.  Pls.' Opp. Mem. at 17-18.  But this argument is based upon the faulty premise that declaration testimony may be used to cure jurisdictional defects on the face of a complaint, see id., in lieu of actually correcting the defective complaint.  Here, Defendants raised a facial challenge to subject matter jurisdiction.  See Defs.' Mem. at 7-11.  "Facial attacks on a complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction."  Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999).  The

opening brief and the above discussion evince that Plaintiffs have not sufficiently alleged a basis for jurisdiction in their complaint, as the complaint fails to identify a specific injury to any Plaintiff or AALJ member despite two rounds of amendments. The newly submitted declarations do not repair this defect because they do not alter the contents of Plaintiffs' complaint.

Similarly, the cases cited by Plaintiffs do not provide them with any succor. Warth v. Seldin, 422 U.S. 490, 501-502 (1975), states that a court can "require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." Defendants do not deny that courts have that power. But that courts have that power does not mean that affidavits can cure any defect in standing, and Warth does not say otherwise. Affidavits may be used to successfully rebut factual challenges to standing, which consist of a defendant challenging the existence of standing as a matter of fact, irrespective of the content of the pleadings. See U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). Affidavits do not rehabilitate facially defective pleadings, however, which is why courts have the power to require plaintiffs to supply "particularized allegations of fact deemed supportive of plaintiff's standing" by "amendment to the complaint." Warth, 422 U.S. at 501-502. Plaintiffs also quote and cite Tooley v. Bush, 2006 WL 3783142, at * 21 (D.D.C. Dec. 21, 2006), in support of their amendment-by-affidavit tack. See Pls.' Opp. Mem at 17. To the extent that this district court opinion suggests that an affidavit can cure a facial defect, it ignores the well-established distinction between facial and factual challenges to jurisdiction, see Zhu v. Federal Housing Finance Bd., 389 F. Supp. 2d 1253, 1269 (D. Kan. 2005) (suggesting that the distinction between facial and factual attacks is well settled), and undermines use of the complaint as the framework for a lawsuit, Synder v. Pascack Valley Hosp., 303 F.3d

271, 276 (3d Cir. 2002) (explaining that a complaint provides "the blueprint for the future course of a lawsuit"). Accordingly, Tooley is unpersuasive to the extent that it suggests that an affidavit can cure a facial defect. Plaintiffs' complaint remains defective, and dismissal is appropriate.

Alternatively, if the Court concludes that Plaintiffs have solidified the factual basis of their standing argument through the submission of declaration testimony and determines on that basis that dismissal is not appropriate, the Court should require Plaintiffs to cure their facially defective pleading by seeking leave to amend their complaint for a third time. If the Court is satisfied by the declaration testimony submitted by Plaintiffs, it is certainly within its discretion to require Plaintiffs to attempt to correct the facial deficiencies in their pleading. See, e.g., Warth v. Seldin, 422 U.S. at 501-02. Here, it would seem clear that Plaintiffs are obligated to do so by Fed. R. Civ. P. 8(a), which requires that a complaint "shall contain [] a short and plain statement of the grounds upon which the court's jurisdiction depends . . . ." Fed. R. Civ. P. 8(a) (emphasis added). As set forth in Defendants' opening brief and emphasized supra, Plaintiffs' second amended complaint is jurisdictionally defective on its face, and thus inconsistent with the mandatory provisions of Fed. R. Civ. P. 8(a). To the extent the Court concludes that there is an adequate factual basis for standing, requiring that Plaintiffs amend their complaint to comply with Fed. R. Civ. P. 8(a) would serve the interests of judicial economy by ensuring that the live pleading governing this action contains a sufficient basis for the Court's jurisdiction.

**2.    CLAIM IV.**

As to Plaintiffs' Claim IV, Defendants' opening memorandum demonstrated that Plaintiffs lacked standing for two reasons. First, their complaint identified no cognizable injury whatsoever from the regulation they challenge, 5 C.F.R. § 930.201(f)(2), which simply delegates

to the federal agencies that employ ALJs the authority "to assign [their ALJs] to cases in rotation so far as practicable."[2] Second, even if the existence of some alleged injury could be construed from the complaint, Plaintiffs failed to identify any ALJ who had suffered – or would suffer – any particularized injury. None of Plaintiffs' arguments in response rebut that showing. In fact, the arguments Plaintiffs now raise for the first time demonstrate that in addition to any standing problems, Claim IV is unripe and should be dismissed for that reason as well.

Plaintiffs' new arguments – that ALJs are injured because they now hold positions on "new [] and arguably less attractive [] terms" as a result of the challenged regulation, and because their "decisional independence" is threatened, see Pls.' Opp. Mem. at 19-20 – show that Claim IV is unripe, and thus non-justiciable. To be justiciable, a claim must satisfy Article III's case-or-controversy requirement, one component of which is ripeness. Allen v. Wright, 468 U.S. 737, 750-51 (1984). To demonstrate the ripeness of a claim, plaintiffs must establish (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties caused by withholding court consideration. National Park Hospitality Assoc. v. Department of the Interior, 538 U.S. 803, 808 (2003) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)). Plaintiffs fail both elements of this test as to Claim IV, as their opposition itself emphasizes.

Although the nature of the potential injury Plaintiffs allege for the first time in their opposition is unclear, what is clear is that whether such injury ever comes to fruition is entirely speculative and wholly dependent on future actions taken by agencies other than OPM. In short, Plaintiffs ask the Court to adjudicate an abstract and inchoate question. This is precisely what

---

[2] The regulation implements the statutory provision of the APA that ALJs "shall be assigned to cases in rotation so far as practicable . . . ." 5 U.S.C. § 3105.

the ripeness doctrine prohibits. By refusing to adjudicate unripe claims, federal courts avoid becoming entangled in abstract disagreements, enhance judicial economy, and ensure that a record adequate to support an informed decision exists when the case is heard. Abbott Labs. v. Gardner, 387 U.S. at 149; see also Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997) (ripeness "protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes"). More to the point, a claim "is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agr. Prods. Co., 473 U.S. 568, 580-81 (1985) (additional citation and internal quotation marks omitted)). Here, Plaintiffs make no showing how the regulatory provision at issue has made their positions "less attractive" or has threatened their "decisional independence." Thus, Plaintiffs have shown neither that the allegations of Claim IV are fit for adjudication or that withholding of consideration would impose any harm on them. For those reasons, Claim IV should be dismissed as unripe.

      Ripeness problems aside, Plaintiffs' contention that the regulatory provision at issue imposes new, less attractive employment terms suffers from even greater standing shortcomings than the virtually identical argument they made as to Claims I through III. First, despite raising an entirely new argument that appears nowhere in their second amended complaint, Plaintiffs fail to explain how the terms of their positions are any different than they were before. Second, even if it could be presumed that those terms are different in any material way, Plaintiffs fail to explain how such new terms are "less attractive" than they were before. Essentially, Plaintiffs are asking the Court to infer the existence of some speculative, unspecified injury from complaint language

that does not support even the inference of such an injury. Of course, as shown in Defendants' opening brief and in Part 1, supra, Plaintiffs cannot ask the Court to do that and still expect to satisfy their standing burden. American Chemistry Council, 468 F.3d at 1135; Int'l Brotherhood of Teamsters, 429 F.3d at 1134-35.

Plaintiffs' second, related argument – that the provision has impaired ALJs' right to "decisional independence," see Pls.' Opp. Mem. at 19-20 – is similarly speculative, and fails for the same reason. To show the injury-in-fact necessary to establish standing, plaintiffs cannot rely upon an alleged injury that is merely conjectural or hypothetical. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Here, there is nothing to suggest that the alleged threat to Plaintiffs' "decisional independence" is anything more than pure conjecture on their part. Plaintiffs cannot avoid this fatal flaw by relying on Nash v. Califano, 613 F.2d 10 (2d Cir. 1980), the chief basis for their "decisional independence" argument, as that decision addressed a factual scenario that is far different from that presented here. In Califano, the alleged threat to ALJs' independence was a broad and detailed system imposed by the Social Security Administration that created, inter alia, mandatory instructions as to the length of hearings and opinions, monthly quotas for the number of decisions rendered, and efforts to monitor and control the reversal rates of ALJs. 613 F.2d at 12-13. In its decision holding that the plaintiff (a single ALJ) had shown standing to challenge some, but not all, of these policies, the court emphasized the breadth and detail of the challenged policies:

> The scrutiny and affirmative direction alleged by [plaintiff] reaches virtually every aspect of an ALJ's daily role. Under the Quality Assurance System and the Peer Review Program, the number of reversals, the number of dispositions, and the manner of trying and deciding each case are recorded and measured against

> prescribed standards. [Plaintiff] and his colleagues allegedly receive mandatory, unlawful instructions regarding every detail of their judicial role.

Id. at 16. Even against that factual backdrop, the court concluded that the plaintiff had failed to satisfy his standing burden as to a claim challenging a pooling system that vested responsibilities including the drafting of decisions in personnel other than ALJs. Id. at 13, 17. Here, by contrast, Plaintiffs have utterly failed to show any consequences flowing from the challenged regulation, much less a set of consequences as broad and detailed as those challenged in Califano. Thus, there is no basis from which to infer Plaintiffs' standing to raise Claim IV.

**3.    CLAIM V.**

Defendants demonstrated in their opening brief that Plaintiffs lack standing to raise either of the two distinct claims encompassed within Count Five of their complaint. Nothing in Plaintiffs' reply undermines that showing. Consequently, dismissal is appropriate.

In the first claim of Count V, Plaintiffs challenge OPM's decision to remove from its rules references to the ALJ testing process and the substance of the ALJ vacancy announcement without first conducting preliminary studies called job analyses. 2d Am. Comp. ¶¶ 82-87. Defendants established in their opening brief that Plaintiffs lack standing to bring this claim because, among other reasons, Plaintiffs have not alleged that they were injured by OPM's decision not to conduct job analyses. Opening Brief at 16. Plaintiffs have not rebutted this argument. Indeed, they have not even tried to do so; Plaintiffs' response does not even mention this claim. Thus, plaintiffs apparently have accepted the validity of defendants' argument, and the Court should dismiss plaintiffs' claim for lack of subject matter jurisdiction. See Black v.

North Panola Sch. Dist., 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that failing to defend a claim in response to a motion to dismiss constituted abandonment of the claim).

The second discrete claim that plaintiffs advance in Count V is that OPM acted arbitrarily and capriciously by alerting agencies that it would be issuing a new vacancy announcement and administering a new test for ALJs, before providing notice to the general public of its intention to do so.[3]  2d Am. Comp. ¶¶ 82-100.  As relief for this claim, Plaintiffs ask that Court to (i) declare the vacancy announcement and notice of examination null and void and (ii) rescind the final rule.[4]  2d Am. Comp. at 26.

As set forth in Defendants' opening brief, Plaintiffs lack standing to prosecute this claim for the following reasons: (i) their injury will not be redressed by the relief that they seek because they have failed to allege that they plan to apply for administrative law judgeships; (ii) they have not demonstrated that the relief they seek will remedy their injury, because an order vacating the vacancy announcement would not bar OPM from providing advance notice to agencies of a replacement vacancy announcement; (iii) the vacancy announcement is already an irrelevancy, so rescinding it would not further Plaintiffs' cause; (iv) public statements about the imminent issuance of the vacancy announcement made by the Director of OPM days' prior to the its promulgation rendered the supposed advance notice harmless.  Opening Brief at 14-22.

Plaintiffs press three arguments in reply.  First, they maintain that the law of standing does not require them to allege that they would apply for administrative law judgeships in the

---

[3] Defendants do not concede that advance notice was provided to any agency.  Rather, Defendants accept Plaintiffs' allegation only for the purposes of this argument.

[4] For simplicity's sake, the term "vacancy announcement" will be used to refer to both the vacancy announcement and the notice of examination.

future and that the cases cited by Defendants, therefore, are distinguishable. Pls.' Opp. Mem. at 21-22. Second, they argue in the alternative that they have discharged, through the filing of declarations with their response, any obligation to profess an intention to apply for administrative law judgeships. Pls.' Opp. Mem. at 22-23. Third, Plaintiffs assert that the relief they seek (i.e., the "setting aside [of] the challenge[d] regulations," Pls.' Opp. Mem. at 24), if granted, would remedy their injury, because it would remove "the most significant barrier" to redress. Pls.' Opp. Mem. at 23-24.

None of Plaintiffs' arguments is convincing. Plaintiffs' only support for the contention that they need not plead an intention to apply for administrative law judgeships to demonstrate redressability and, by extension, standing is DKT Memorial Fund, Ltd. v. Agency for Int'l Development ("DKT"), 810 F.2d 1236, 1238 (D.C. Cir. 1987). DKT does not, however, support Plaintiffs' position. In that case, the court addressed the question of whether an entity that had not applied for a government benefit (a so-called "non-applicant") had standing to complain about the eligibility requirements for that benefit if it had not alleged that it was qualified for the benefit, but rather had alleged that it was not illegible for the benefit. Id. In other words, the court did not have to decide the question presented here of whether a non-applicant must allege that it would seek the benefit if the eligibility requirements were to change. But to the extent DKT touched on the issue in dicta, it suggested that such a requirement exists. First, the court noted that the Plaintiffs continue to seek the benefit conditioned by the challenged eligibility requirements. Id. Second, the court quoted a portion of a Supreme Court case involving a "non-applicant" which emphasized that the non-applicant continued to seek the benefit at issue. Id.

(citing Village of Arlington Hghts. v. Metropolitan Housing Development Corp., 429 U.S. 252, 264 (1977)).  DKT does not undermine Defendants' argument.

      Similarly unconvincing is Plaintiffs' attempt to distinguish the cases cited by Defendants in support of the proposition that Plaintiffs must allege an intention to apply for administrative law judgeships to secure constitutional standing.  Defendants cited Gratz v. Bollinger, 539 U.S. 244, 261 (2003), Worth v. Jackson, 451 F.3d 854, 858-59 (D.C. Cir. 2006), and U.S. Airwaves, Inc. v. FCC, 232 F.3d 227, 232 (D.C. Cir. 2000), for the proposition that, to establish that the relief sought is likely to cure his or her alleged injury, a plaintiff who is seeking prospective relief and complaining about the availability of a benefit must allege an intention to pursue the benefit if the complained-of impediment to its availability is swept away.  See Defs.' Mem. at 17. Plaintiffs attempt to distinguish these cases from this one based on their factual circumstances. They emphasize that Gratz involved an equal protection claim, 539 U.S. at 261, Worth a Title VII claim, 451 F.3d at 858, and U.S. Airwaves an FCC licensing process, 232 F.3d at 232.  See Pls.' Opp. Mem. at 22.  But Defendants cited these cases because they outline the contours of the constitutionally required redressability element of standing, and this requirement does not change depending on the factual settings of each particular case.  Indeed, as the Supreme Court explained in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), redressability is part of "the irreducible constitutional minimum of standing."  That is, Article III requires the same showing of redressability in equal protection, Title VII, and FCC cases as it does in APA cases, like this one.  And absent an allegation by Plaintiffs that they would seek administrative law judgeships if the Court were to order OPM to issue a new vacancy announcement, the Court cannot conclude that the relief sought is likely to remedy Plaintiffs' injury.  Why?  Put simply,

there could be another impediment to redress, namely, Plaintiffs' decision not to apply for the job. Accordingly, dismissal is appropriate.

As an alternative to the argument that they need not allege that they intend to apply for ALJ positions, Plaintiffs maintain that they have established standing by submitting declarations which confirm that they would apply for such positions if OPM were to reopen the application period. Pls.' Opp. Mem. at 22-23. This argument rests on the premise that "affidavits may be used to supplement standing allegations in a complaint." Id. at 23. For the same reasons set forth in Part 1, supra, with respect to Claims I through III, Plaintiff's argument is unconvincing. Defendants raised a facial challenge to subject matter jurisdiction; as both the opening brief and the above discussion evince, Plaintiffs have not sufficiently alleged a basis for jurisdiction, because they have not demonstrated that the relief sought is likely to redress their supposed injury. As the newly submitted declarations do not alter the contents of Plaintiffs' complaint, they do not repair this defect.

Plaintiffs' last argument is that an order setting aside the "challenge[d] regulation" will cure their injury because it will remove the most significant barrier to redress.[5] Pls.' Opp. Mem. at 23-24. (Recall, Plaintiffs allege that their injury is that they were not given a fair chance to apply to be ALJs because certain agency attorneys received advance notice of the vacancy announcement and so filled up the limited slots for ALJ applicants before they (Plaintiffs) could apply, see 2d Am. Comp. ¶¶ 91-97.) Plaintiffs' argument could mean several things depending

---

[5] As Defendants pointed out in their opening brief, Plaintiffs were not injured by any supposed advance notice provided to agency attorneys because, on May 1, 2007, OPM provided public advance notice of the then-imminent vacancy announcement. Defs.' Mem. at 19 n.5. Plaintiffs did not respond to this argument in their brief, and so apparently have conceded its validity. Black, 461 F.3d at 588 n.1.

on the meaning of the phrase "challenge[d] regulation." But this ambiguity is of no consequence because none of the possible meanings rescues Plaintiffs' claim. First, setting aside the "challenged regulation" could refer to upending the regulations challenged in Counts I through IV (i.e., the licensing requirement and the rule touching on the rotation of judges), or it could refer to scotching the regulation contested in the apparently abandoned first claim raised in Count V (i.e., the regulation which omits any references to the testing process and the contents of vacancy requirements). Overturning any (or all) of these rules, however, would not cure Plaintiffs' supposed injury. These regulations do not address whether OPM or the prospective hiring agencies could give advance notice of a vacancy announcement the next time, and thus rescinding any or all of then would not increase the likelihood that Plaintiffs could submit their ALJ applications before OPM would stop accepting them.

What is more, that OPM would issue a new vacancy announcement if it were to rescind the challenged regulation would not assist Plaintiffs. Nothing inherent in the issuance of a new announcement would prohibit OPM from providing advance notice of the new vacancy announcement to agencies that hire ALJs. Defs.' Mem. at 20-22. (Granting this freedom to OPM makes sense because valid policy considerations might persuade OPM that advance notice is necessary. Id. ) Nor would anything endemic to the promulgation of a new announcement in response to an order rescinding one or more of the challenged regulations prevent the agencies that hire ALJs from providing advance notice to their attorneys, especially as these agencies have not been named as defendants in this case.[6] See Fed. R. Civ. P. 65(d).[7]

---

[6] To reiterate a point made in Defendants' opening brief, such an order would be inadequate to redress Plaintiffs' injury for another reason: Nullification of the vacancy announcement would serve no purpose at this point. As OPM has already received more than

The cases cited by Plaintiffs in support of their last argument do not bolster their position. With respect to Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129, 135 (D.C. Cir. 2006), Plaintiffs correctly note that "the Food and Drug Administration ('FDA') challenged 'redressability on the grounds that, even if its regulations were changed, it is merely speculation that drug manufacturers would sell their investigational medications' to plaintiffs." Pls.' Opp. Mem. at 23 (quoting Abigail Alliance, 469 F.3d at 135). But Plaintiffs incorrectly recite the holding. Plaintiffs contend that "[t]he court rejected this argument[,] holding that the rescission of the challenged regulations would diminish the barriers faced by the plaintiffs." Pls.' Opp. Mem. at 23. In fact, though, the Court concluded that one need not speculate to conclude that the drug manufacturers would sell their investigational medications to plaintiffs because it would be in their pecuniary interests to do so. Abigail Alliance, 469 F.3d at 135. This holding does not help Plaintiffs because whether OPM would forbear from providing

---

1,250 applications pursuant to the announcement, the announcement is by now closed – and therefore moot – as to these Plaintiffs. Defs.' Mem. at 20 n.6. (Certain veterans may still submit applications pursuant to the vacancy announcement, but Plaintiffs have given no indication that they are veterans who are still eligible to apply; indeed, if they are eligible to apply, they lack standing for yet another reason.) Vacating the announcement would do nothing that the passage of time has not already done, and would not put Plaintiffs any closer to securing spots on the register. Plaintiffs did not respond to this argument in their response, and so apparently have conceded its validity. Black, 461 F.3d at 588 n.1.

[7] Rule 65 does allow courts to enjoin parties not named as defendants from aiding and abetting named defendants' violations of injunctions. 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2956 (2d ed. 1990). But here the named Defendants' actions (i.e., OPM's) would not violate the letter or spirit of an injunction rescinding one or more of the challenged regulations, as the injunction would not prohibit OPM from providing advance notice to hiring agencies, and valid policy considerations suggest that such notice could be reasonable. See Defs.' Mem. at 21. Therefore, a tip from a hiring agency to its attorneys would not aid or abet OPM, but would further some independent goal of the hiring agency.

advance notice to the hiring agencies if OPM were to issue a new vacancy announcement is a matter of sheer speculation. None of the elements of relief sought by Plaintiffs reduces the uncertainty, and "conjecture [is] not enough to support standing," Nat'l Wrestling Coaches Ass'n v. Dep't of Education, 366 F.3d 930, 944 (D.C. Cir. 2004). Neither of the other two cases cited by Plaintiffs, Tozzi v. HHS, 271 F.3d 301, 309-10 (D.C. Cir. 2001), and Block v. Meese, 793 F.2d 1303,1308-09 (D.C. Cir. 1986), provides them with a foothold for the argument that the relief they seeks is not speculative. Tozzi concludes, in factual circumstance different from those present here, that the relief sought was likely to remedy Plaintiffs' injury, 271 F.3d at 309-310, and Block deals with causation, not redress, 793 F.2d at 1308-09. In short, Plaintiffs' last argument furnishes no reason to sustain their claim.

## CONCLUSION

On the basis of the foregoing, and for the reasons stated in Defendants' opening memorandum, the Court should dismiss each and all of Plaintiffs' claims for lack of subject matter jurisdiction.

Dated: November 14, 2007               Respectfully submitted,

                                       PETER D. KEISLER
                                       Assistant Attorney General

                                       JEFFREY A. TAYLOR
                                       United States Attorney

                                       SUSAN RUDY
                                       Assistant Branch Director


OF COUNSEL:                             /s/ Christopher R. Hall
                                       CHRISTOPHER R. HALL
KERRY B. McTIGUE                       JUSTIN M. SANDBERG
General Counsel                        Trial Attorneys
KATHIE ANN WHIPPLE                     U.S. Department of Justice
Deputy General Counsel                 Civil Division
JULIE FERGUSON QUEEN                   Federal Programs Branch
Deputy Assistant General Counsel       P.O. Box 883
ANTONIO A. SAN MARTIN, JR.             Washington, D.C.  20530
Senior Policy Counsel
ROBIN M. RICHARDSON                    (202) 514-4778
ROBERT J. GIROUARD
Attorneys
Office of the General Counsel
U.S. Office of Personnel Management
1900 E St. NW, Room 7536
Washington, D.C. 20415

(202) 606-1700