IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., | )<br>)<br>) |
| Plaintiffs, | ) Case No. 07-0711 (RMC) |
| v. | ) |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | )<br>) |
| Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR STAY**

**INTRODUCTION**

Plaintiffs, by and through their undersigned counsel, hereby file this opposition to Defendants' Motion for Stay ("Motion"). Defendants' Motion is premised on its plan to initiate a new rule-making process that *may* alter its Final Rule requiring Administrative Law Judges ("ALJs") to maintain active bar licenses. The Defendants do not specify when this new rule-making will commence or come to fruition nor do they offer to stay the operation of the previously promulgated regulations. The Defendants also do not provide any specific information on how the Final Rule would be altered by the new rule-making. There is also no assurance that the product of this proposed rule-making will not be altered in the future. Most significantly, Defendants fail to show any hardship if the stay is not granted. The Plaintiffs, on the other hand, will suffer severe hardship by remaining subject to the Final Rule during the period of the indefinite stay. Additionally, Count I of Third Amended Complaint alleges that OPM does not have the authority to promulgate any rule concerning the post-appointment

employment of ALJs. Therefore, *any* new rule issued by OPM will not moot the claim in Count I. Lastly, the stay as proposed is overly broad because it ceases litigation as to Count IV, even though OPM admits that the new rule-making will not affect the allegations in Count IV. Accordingly, litigation of Count IV is required regardless of the outcome of this proposed rule-making. As a result, and as discussed more fully below, Defendants' Motion For Stay should be denied.

## PROCEDURAL BACKGROUND

On March 20, 2007, OPM issued the Final Rule stating that active bar membership was a continuing "condition of employment" for any person serving as a federal ALJ. (Complaint ¶ 41-42). In other words, ALJs may be removed from their positions by OPM under the guise of the "condition of employment" standard. This new power of removal would circumvent the longstanding statutory requirement that an agency establish good cause on the record during a hearing with the Merit System Protection Board ("MSPB") prior to the removal of, or other adverse action against, an ALJ. (Complaint ¶ 45).

On April 18, 2007, Plaintiffs filed their initial Complaint in this matter. The initial Complaint contained Counts I through III challenging the validity of the Final Rule regarding state bar lisencure.

On or about May 4, 2007, OPM issued an ALJ Vacancy Announcement and solicited qualified individuals to apply to take the new ALJ exam. (Complaint ¶ 88). The Vacancy Announcement stated that applications would be accepted until the earlier of May 18, 2007 or OPM's receipt of 1250 applications. (Complaint ¶ 88). On information and belief, OPM provided federal agencies with notice of the new examination and qualification standards in advance of

OPM placing the Notice on its web-site. (Complaint ¶ 91). Agencies who received pre-website notice of the Vacancy Announcement and the new ALJ examination process shared this information with attorneys employed by those agencies in advance of notice to the general public.  As a result of this advance notice, these agency attorneys received preferential treatment. (Complaint ¶ 92). On the same day that OPM posted the new ALJ exam on its web site, hundreds of federal agency attorneys with advanced notice of the Vacancy Announcement took the day off work in order to commence the time-consuming application process.  (Complaint ¶ 93). Within three (3) business days following the day the ALJ Vacancy Announcement was posted on OPM's web site, OPM closed the Vacancy Announcement as the total number of applications had reached the 1250 cut off mark. (Complaint ¶ 94).

On June 14, 2007 and July 2, 2007, Plaintiffs filed amended complaints in this matter. The amended complaints added a new Count V protesting OPM's Vacancy Announcement. On September 21, 2007, OPM filed a motion to dismiss Plaintiff's Second Amended Complaint.

On February 7, 2008, the Court entered an order granting in part and denying in part Defendants' Motion to Dismiss.  The Court dismissed Count IV of the Second Amended Complaint and the Court ordered the Plaintiffs to file an amended Complaint consistent with the Court's order.  On February 21, 2008, Plaintiffs filed their Third Amended Complaint in which Count V became Count IV.   The Defendants filed an Answer on March 17, 2008.

On April 8, 2008, the parties filed competing scheduling orders.  The Plaintiffs sought the ability to serve discovery on the Defendants.  Defendants' proposed scheduling order did not provide for a discovery plan.  Instead, under Defendants' plan, OPM would produce the Administrative Record on May 30, 2008, with a briefing schedule thereafter.  The Court adopted

the Defendants' Scheduling Order. On May 29, 2008, the Defendant filed a Motion to Extend the Deadline for filing the Administrative Record until June 27, 2008. Although the Plaintiffs requested that the deadline only be extended for two weeks, the Court granted Defendants' Motion.

Finally, on June 27, 2008, the day the Administrative Record was due under the extended deadline, the Defendants filed their Motion for Stay. Despite Defendants having requested the date for the production of the Administrative Record, and this Court having entered an Order requiring its production, the Defendants have failed to produce the Administrative Record.

## ARGUMENT

There is no doubt that the Court has the power to stay proceedings under appropriate circumstances. *Landis v. North Am. Co.*, 299 U.S. 248 (1936). The Supreme Court, however, stated that the movant "must make out a clear case of hardship or inequity" in the absence of a stay. 299 U.S. at 255. Likewise, the Court determined that it should be a "rare circumstance" that a litigant should sit idly by as the outcome of his case was determined by a process in which he does not participate. *Id.* The United States Court of Appeals for the D.C. Circuit, in *Hisler v. Gallaudet University*, 344 F. Supp. 2d 29 (D.C. Cir. 2004), stated:

> The Supreme Court has guided that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [the movant] prays will work damage to some one else." Thus, the plaintiff shoulders the burden in demonstrating a "clear case of hardship."

*Hissler*, 344 F. Supp. at 36 (*quoting Landis,* 299 U.S. at 255*)*. The D.C. Circuit has stated that the relevant considerations include: i), whether the moving party made a clear case for hardship if required to move forward; ii) whether there are additional factors beyond judicial efficiency to

4

serve as grounds for granting the stay; and, iii) whether the scope and length of the stay is properly defined to avoid injustice. *See Hisler*, 344 F. Supp. 2d at 29; *Dellinger v. Mitchell*, 442 F.2d 782 (D.C. Cir. 1971); *GLF Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 1993 (D.D.C. 2003)("[T]he right to proceed in court should not be denied except under the most extreme circumstances."). Here, OPM has failed to establish any of the factors required for a stay.

    A.    <u>OPM has not Established any Hardship if the Stay is not Granted.</u>

In this case, OPM has failed to establish a clear case of hardship. OPM argues that the stay *may* ensure that the "parties do not unnecessarily expend resources litigating a case that has been overtaken by events." Motion, at p. 2, ¶ 3. Litigation would only be avoided, however, if OPM is correct that the Final Rule will be altered in a manner acceptable to the Plaintiffs. OPM's claim cannot be evaluated because it refuses to provide any specific information on how the active bar requirement may change. OPM asks the Court and the Plaintiffs to take a leap of faith that its new rule-making *may* alter the current rule and *could* moot one of the issues in this case. Indeed, the OPM fails to articulate what proposed changes are before the Office of Management and Budget ("OMB"), how long the process of review will take, or offer any concrete assurances that the stay will serve any real purpose. OPM does not establish that the stay will result in judicial efficiency, rather OPM only establishes that the stay will delay of the litigation for an indeterminate period. Without any actual evidence that the objectionable portion of the Final Rule is going to be changed to alleviate the Plaintiffs' objections, it is purely

speculative that a stay will result in judicial economy.[1]  OPM's desire to delay this litigation does not justify a stay.

At this juncture, the only supposed hardship on the Defendants is that they must produce the Administrative Record at the time it is due under the extension to their original Scheduling Order.[2]

    B.    <u>OPM has not shown any Justification beyond its Faulty Assessment Judicial Economy in Support of a Stay.</u>

OPM has not alleged any justification beyond judicial economy in support of a stay.  On the contrary, the equities clearly weigh against granting a stay in this case.  As described in Plaintiffs' Third Amended Complaint, AALJ and its members will suffer hardship if Final Rule remains in effect during the proposed stay.  For example, AALJ members must either expend their time and money to meet an arbitrary and inappropriate regulation.  If they fail to do so, AALJ members may face possible termination for an undisclosed amount of time while the OMB reconsiders and proposed regulation.   The OPM has failed to offer when proposed changes will go before OMB, what proposed changes are before OMB, or how long the process of review will take.  The AALJ will incur the harm of having to sit idly by as a regulation, which went through

---

[1] Merely delaying suits produces at best a negligible conservation of judicial efforts and judicial economy alone is not a justification for broad curtailment of access to courts. *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983).

[2] We assume that the Administrative Record was in existence at the time of the original rule-making process and that it is not a work in progress such that it amounts to a hardship to produce.  The timing of the Defendants' Motion, on the very day the Administrative Record was due, coupled with their previous extension of the due date for production of the Administrative Record, begs the questions whether their Motion is simply a dilatory tactic to stall the production of the what Plaintiffs believe is a deficient Administrative Record.

public commentary and which the AALJ now challenges in open judicial review, goes through a closed reconsideration process. In addition, Count I of the Third Amended Complaint challenges OPM's statutory authority to regulate the conditions of an ALJ's continuing employment. Rather than resolve this issue, another rule-making on this issue compounds the statutory infirmity and reinforces the need to resolve the issues with dispatch. Conversely, the OPM has not articulated any hardship, only a list of couched possibilities. As such, the court should reject OPM's motion for stay.

Significantly, Defendants will apparently enforce the Final Rule during their requested stay and they do not offer to stay the obviously deficient Final Rule pending their indeterminate process of changing the rule.

    C.    The Scope of the Proposed Stay is Overly Broad.

In *Dellinger v. Mitchell*, 442 F.2d 782 (D.C. Cir. 1971), the D.C. Circuit court explained that a "stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." Id. at 786 (citations omitted). Where a stay precluded plaintiffs from proceeding in a civil action for an indeterminate amount of time when they were not part of the related criminal case, the "[i]mprovidence of the stay granted relates not only to its duration but to its scope." *Id.* Here, OPM proposes an indefinite stay of the entire action pending the outcome of an OMB reconsideration. Defendants rely upon the Ninth Circuit's decision in Leyva v. Certified Grocers of California, LTD, 593 F.2d 857 (9th Cir. 1979), in support of the stay. In Leyva, however, the Court stated that a "stay should not be granted unless if appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the

court." Id.. 864.   A blanket stay of proceedings without limitation, dependent only on the eventual reconsideration of the OMB, does not meet the criteria enunciated by the D.C. Circuit or the Ninth Circuit in Leyva.   A stay also would put the Plaintiffs affected by the allegations in Count IV in a suspended state, waiting on proceedings entirely irrelevant to their claims.  This delay of justice should render both the scope and limitless nature of the proposed stay immoderate.

## CONCLUSION

For the forgoing reasons, Defendants' Motion for Stay should be denied.

                              Respectfully submitted,

                              /s/ Robert H. Stropp, Jr.
                              Robert H. Stropp, Jr. D.C Bar #429737
                              Richard C. Welch, D.C Bar #485756
                              Mooney, Green, Baker & Saindon, P.C.
                              1920 L Street, N.W., Suite 400
                              Washington, D.C. 20036
                              Telephone: (202) 783-0010
                              Facsimile: (202) 783-6088
                              Attorneys for the Plaintiffs

July 3, 2008

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 3, 2008, a true and correct copy of the foregoing Opposition to Motion for Stay was served via the Court's ECF system/electronic mail and by U.S. Mail, first class postage prepaid, on the following:

Christopher Hall
Justin M. Sandberg
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, DC 20530

                                              /s/ Richard C. Welch
                                              Richard C. Welch
                                              Attorney for the Plaintiffs