**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., )<br>)<br>Defendants. )<br>) | Civil No. 07cv00711 (RMC) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR STAY**

Our opening memorandum [Docket No. 26] explained that the Office of Personnel Management ("OPM") has initiated a rule-making regarding the bar licensure requirement for incumbent Administrative Law Judges ("ALJs") found at 5 C.F.R. § 930.204(b). If successful, the rule-making would substantially alter the issues to be decided by the Court, and could moot most of Plaintiffs' claims. Thus, a stay of proceedings here would be an appropriate exercise of the Court's inherent discretion to govern its own docket, allowing the rule-making to run its course and preventing needless expenditure of the resources of the Court and the parties through the litigation of claims that could shortly become factually obsolete or even moot. In opposition, Plaintiffs fail to explain how judicial economy would be served by allowing the litigation to proceed pending the rule-making's outcome, and identify no real harm caused by the stay that would outweigh the benefits to judicial economy a stay would confer. For these reasons, the Court should grant our motion and stay the action until the rule-making has been finalized.

As an alternative, if the Court is not yet convinced that it is appropriate to stay this proceeding until the rule-making process has been finalized, we propose that the Court issue a

temporary stay through and including August 15, 2008, to allow time for the rule-making to develop to a stage that might permit us to share more detailed information regarding its scope and terms with the Court and Plaintiffs. If, at the conclusion of such period, the rule-making was sufficiently developed, we would provide additional information to the extent permitted by the Office of Management and Budget ("OMB"), which reviews agency rule-making, and reassert our request for a full stay. On the other hand, if we are not at that time able to provide such further detail, we would inform the Court and Plaintiffs and seek an additional defined stay if warranted. This alternative should address any concerns by the Court and Plaintiffs that they need additional information as to the rule-making, and would serve the same interests of judicial economy as a full stay.

## ARGUMENT

1. **A STAY OF PROCEEDINGS IS WELL WITHIN THE COURT'S BROAD POWER TO GOVERN ITS DOCKET AND WOULD SERVE JUDICIAL ECONOMY.**

The order we have requested is a garden variety stay of proceedings, one well within the Court's inherent and broad discretion to manage its own docket to best ensure "'economy of time and effort for itself, for counsel, and for litigants.'" Fairview Hosp. v. Leavitt, Civ. No. 05-cv-1065, 2007 WL 1521233, *1 (D.D.C. May 22, 2007) (quoting Landis v. North American Co., 229 U.S. 248, 254 (1936)). Even where a motion for a stay of proceedings is contested, the opposing party may be required "'to submit to delay not immoderate in extent and not oppressive in its consequences if . . . convenience will thereby be promoted.'" Id. The interests of economy and convenience are particularly likely to be well served by a stay of the case at hand where the outcome of parallel proceedings, including administrative rule-makings, could substantially affect the issues to be resolved by the court. See id.; see also Leyva v. Certified Grocers of

California, Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979) (rule applies whether parallel proceedings "are judicial, administrative, or arbitral in nature") (emphasis provided).  This is just such a case.

As we explained in our opening memorandum, OPM has initiated a rule-making that could well moot the majority of Plaintiffs' claims by altering the incumbent administrative law judge bar licensure requirement codified at 5 C.F.R. § 930.204(b).  The rule is pending before OMB.  If the rule-making is finalized as planned, it would, at a minimum, fundamentally alter the factual and legal issues relevant to Counts II and III of Plaintiffs' Third Amended Complaint, which assert substantive and procedural challenges against the rule-making that culminated in the current § 930.204(b).[1]  The new rule-making could also affect the issues to be decided in Plaintiffs' Count I, which challenges OPM's authority to regulate employment conditions as to incumbent ALJs in the first instance as a matter of law, by affecting Plaintiffs' standing to press such a claim.  With the outcome of this proceeding pending, it makes no sense for the Court or the parties to continue expending resources litigating issues that could well be mooted, or at a minimum substantially altered.

---

[1] Plaintiffs assert that a stay would not serve judicial economy unless "OPM is correct that the Final Rule will be altered in a manner acceptable to the Plaintiffs." Pls.' Opp. at 5.  This argument is incorrect.  Obviously, one of the ways in which a stay would conserve the resources of the Court and the parties would be if the rule-making obviated further litigation as to some or all of the claims brought on behalf of the incumbent ALJ Plaintiffs.  But even if that were not the case – for example, if the changes yielded by a successful rule-making were not "acceptable" to Plaintiffs for some reason – a stay would nonetheless serve judicial economy by preventing the expenditure of resources on factually obsolete claims.  In particular, Counts 2 and 3 challenge a specific rule-making that would no longer exist except as an artifact of recent administrative history, having been superseded by the rule-making currently under review at OMB.  Thus, any effort by the Court and the parties devoted toward the resolution or litigation of those two Counts – including review of the administrative record, any collateral litigation related to the record, and briefing and analysis of the merits of either Count – would represent needless expenditure.  And preventing such needless expenditure would certainly serve judicial economy.

Under substantively similar circumstances, the court granted the plaintiffs' motion for a stay of proceedings in Fairview Hospital v. Leavitt, Civ. No. 05-cv-1065, 2007 WL 1521233, (D.D.C. May 22, 2007). In Fairview Hospital, the plaintiffs sought a stay pending the outcome of parallel proceedings in another U.S. district court case featuring virtually identical facts and questions of law. Id. at **1-2. The basis for the plaintiffs' motion was singular and straightforward: the stay they sought would "'promote efficiency and conserve party and judicial resources.'" Id. at *2. The defendant, the U.S. Department of Health and Human Services, opposed the motion, arguing essentially that the plaintiffs had not demonstrated that they would sustain "hardship or inequity" absent the stay. Id. The court rejected that argument, noting that a lack of demonstrable hardship or inequity "are not limitations upon a court's power to stay proceedings." Id. The court noted that this is particularly the case "where simultaneous litigation may settle questions of law and simplify the proceedings." Id.

As with the parallel proceeding in Fairview Hospital, the parallel proceeding here, an agency rule-making, could eliminate or at a minimum substantially narrow the issues facing the Court. And even if the rule-making merely narrows the issues to be decided in this case, a stay is justified given that it would reduce the risk that the resources of the Court and the parties would be squandered through the litigation of issues that may not remain live in any event following the rule-making.

### 2. PLAINTIFFS INCORRECTLY SUGGEST THAT THE COURT LACKS AUTHORITY TO ENTER THE REQUESTED STAY IN THIS CASE.

Plaintiffs' opposition to our motion for a stay largely ignores the question of judicial economy in favor of asking the Court to perform a balancing of hardships – and to conclude that it is powerless to stay this case because we have not demonstrated a "clear case of hardship or inequity" absent a stay. Pls.' Mem. at 4-5. But Plaintiffs are incorrect when they suggest that it is outside the Court's authority to enter a stay unless we have established that OPM will suffer hardship or inequity without such a stay. Further, even if Plaintiffs' suggested rule controlled the outcome of this motion, they would fail their own preferred balancing approach because any harm allegedly caused by the stay we request would be outweighed by the benefits to judicial economy the stay would confer.

It is not the law that a party must establish "a clear case of hardship or inequity" to obtain a stay of proceedings. In Landis v. North American Co., the Supreme Court noted that requiring such a showing was appropriate "if there is even a fair possibility that the stay for which [the movant] prays will work damage to some one else." 299 U.S. at 255. But even where there is some conceivable possibility that the requested stay would harm another party, there is no hard-and-fast requirement that the moving party show a clear case of hardship or inequity, the Landis Court emphasized: "Considerations such as these, however, are counsels of moderation rather than limitations upon power." Id. Indeed, in Fairview Hospital, the court reiterated this point in entering a stay despite the fact that the moving party had not demonstrated hardship or inequity in the absence of the requested stay. Fairview Hospital, 2007 WL 1521233, *2 ("While defendant argues that the plaintiffs have not demonstrated that hardship or inequity

would result if the case is not stayed, these considerations are not limitations upon a court's power.") (internal citations omitted).

At the same time, even if the stay we have sought here would impose any harm on Plaintiffs, any such injury would not be substantial enough to outweigh the benefits in judicial economy a stay of proceedings would engender. While Plaintiffs suggest now that they would be injured by any delay in litigating the merits of the case through continued exposure to the bar licensure requirement, their actions to date belie any such assertion. Aside from their position here, Plaintiffs have made little to no effort to move this case along; in fact, Plaintiffs have advocated approaches that would prolong the case rather than expedite it. For instance, rather than agree to submit a proposed joint scheduling order that would establish mutually agreeable dates for the filing of the administrative record and subsequent dispositive motions, Plaintiffs instead sought a scheduling order that would have required the parties to pursue discovery prior to dispositive motions [Docket No. 24], an approach that certainly would have prolonged the case – and any alleged harm to which they were exposed. What is more, if the passage of time truly added to the harms that Plaintiffs alleged in their complaints, Plaintiffs could have sought interim injunctive relief along the way. That they have not suggests that a stay of reasonable duration would not inflict any meaningful increased harm, and certainly would not inflict any harm that would outweigh the considerable gains in judicial economy provided in the meantime.

### 3. PLAINTIFFS' ISOLATED SUGGESTIONS OF VOLUNTARY CESSATION AND DILATORY TACTICS DO NOT WEIGH AGAINST A STAY OF PROCEEDINGS.

Having addressed the core of Plaintiffs' opposition to our motion, we now turn to a handful of points they raised in somewhat abbreviated fashion. For instance, the introduction to Plaintiffs' memorandum asserts (without elaboration later in the brief) that "[t]here is also no assurance that the product of this proposed rule-making will not be altered in the future." Pls.' Mem. at 1. In effect, Plaintiffs are suggesting that even if the rule-making obviated most of their claims, those claims could still be asserted as falling within the voluntary cessation exception to the Article III mootness doctrine.[2] But Plaintiffs fail to acknowledge that the issuance of a new rule or regulation imposes requirements on an agency to act consistently with that new rule or regulation as a matter of law.[3] See, e.g., Schering Corp. v. Shalala, et al., 995 F.2d 1103, 1105 (D.C. Cir. 1993) ("No matter what an agency said in the past, or what it did not say, after an agency issues regulations it must abide by them. Having adopted a definition of 'bioequivalence' in its regulations, the FDA is not free to adopt-in [the challenged definition] . . . ."); see also Sannon v. United States, 631 F.2d 1247, 1250 (5th Cir. 1980), 1250 ("That newly promulgated regulations immediately applicable to litigants in a given case can have the effect of mooting what once was a viable case is without doubt."). Thus, assuming that the pending rule-making comes to fruition, "[i]t can be said with assurance that 'there is no reasonable expectation'" that OPM will turn back to the challenged procedures, absent hypothetical further rule-making that

---

[2] The voluntary cessation exception to mootness is described in Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000).

[3] This of course does not prevent an agency from reaching a result identical or similar to the challenged action in a future rule-making if the law and facts support such an outcome.

would be subject to public notice-and-comment and open to participation by Plaintiffs. <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Services</u>, 528 U.S. 167, 190 (2000).

Finally, Plaintiffs allege that the timing of our motion "begs the question whether the Motion is simply a dilatory tactic to stall the production of [] what Plaintiffs believe is a deficient Administrative Record." Pls.' Mem. at 6, n.2. This unsupported suggestion that our motion is no more than a "dilatory tactic" ignores the presumption of regularity to which federal officials are entitled. <u>See, e.g.</u>, <u>American Federation of Government Employees v. Reagan</u>, 870 F.2d 723, 727-28 & n.33 (D.C. Cir. 1989) ("Every public official is presumed to act in obedience to his duty, until the contrary is shown . . . ."). Plaintiffs offer no evidence for this assertion, and thus there is no basis for rebuttal of the presumption of regularity to which OPM is entitled. As we have explained, OPM has initiated a rule-making which could moot most of Plaintiffs' claims (if it proceeds as planned), and would in any event substantially alter the issues to be decided by the Court. There is no basis to question the truth of that assertion.

4. **IF THE COURT IS NOT YET PERSUADED THAT A FULL STAY IS WARRANTED, THE COURT SHOULD ENTER A TEMPORARY STAY TO ALLOW ADDITIONAL TIME FOR THE RULE-MAKING TO DEVELOP.**

Plaintiffs' contention that the stay we seek is overly broad because it does not include a specified end date, Pls.' Mem. at 7-8, is incorrect, as the stay would only remain in place until the rule-making is completed. But if the Court is not yet persuaded that judicial economy warrants a full stay based on the information presented to it, it should enter a stay of finite duration that would allow time for the rule-making to develop to a point at which we might be able to share more detailed information about the rule-making that would address specific concerns from the Court and Plaintiffs. In that regard, we propose a temporary stay through and

including August 15, 2008, with a status report due at that time, followed by conversion to a full stay, if warranted, or renewal of the temporary stay for another limited period, if not.

## **CONCLUSION**

Our motion seeks a garden variety stay of proceedings. The pending rule-making, if successful, would fundamentally alter the landscape of this action, and could moot most of Plaintiffs' claims. Plaintiffs' suggestion that the Court lacks authority to stay this action without a clear showing of hardship to OPM absent the stay is incorrect, as it ignores the breadth of the Court's discretion to govern its own docket. Moreover, Plaintiffs fail to demonstrate any true hardship to their interests if the case is stayed. Accordingly, to litigate this case while the rule-making continues would impose significant costs upon the Court and the parties that should be avoided for the sake of judicial economy. On that basis, the Court should grant our motion for a stay.

Dated: July 14, 2008                                Respectfully submitted,

                                                    GREGORY G. KATSAS
                                                    Assistant Attorney General

                                                    JEFFREY A. TAYLOR
                                                    United States Attorney

                                                    SUSAN RUDY
                                                    Assistant Branch Director


OF COUNSEL:                                          /s/ Christopher R. Hall
                                                    CHRISTOPHER R. HALL
KERRY B. McTIGUE                                    JUSTIN M. SANDBERG
General Counsel                                     Trial Attorneys
KATHIE ANN WHIPPLE                                  U.S. Department of Justice
Deputy General Counsel                              Civil Division
JULIE FERGUSON QUEEN                                Federal Programs Branch
Deputy Assistant General Counsel                    P.O. Box 883
ANTONIO A. SAN MARTIN, JR.                          Washington, D.C.  20530
Senior Policy Counsel
ROBIN M. RICHARDSON                                 (202) 514-4778
ROBERT J. GIROUARD
Attorneys
Office of the General Counsel
U.S. Office of Personnel Management
1900 E St. NW, Room 7536
Washington, D.C. 20415

(202) 606-1700