UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-711 (RMC) |
| U.S. OFFICE OF PERSONNEL MANAGEMENT, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

Plaintiffs filed a Third Amended Complaint against the U.S. Office of Personnel Management and its director, John Berry[1] (collectively "OPM"). In Count IV, Plaintiffs challenge as arbitrary and capricious under § 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, OPM's issuance of a Qualification Standard for applicants for positions as administrative law judges ("ALJs"), OPM's notice to federal agencies that a vacancy announcement for ALJ positions would be posted soon, and OPM's imposition of a numerical cutoff for ALJ applications.[2] As explained below, summary judgment will be granted in favor of OPM. Plaintiffs lack standing to bring their claims challenging the Qualification Standard. Also, OPM's notice that a vacancy

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), John Berry is substituted for his predecessor, Linda Springer, Director of OPM.

[2] Counts I, II, and III of the Third Amended Complaint challenge a Final Rule, 5 C.F.R. § 930.204(b), which requires sitting administrative law judges to maintain in at least one jurisdiction an "active" bar membership. When OPM decided to engage in new rule-making, the Court stayed this case as to Counts I through III. *See* Minute Order filed July 30, 2008. Thus, the sole count at issue here is Count IV.

announcement would be posted soon was not final agency action subject to judicial review. Finally, the numerical cutoff was not arbitrary and capricious.

## I.  FACTS

OPM has the authority to regulate the appointment of ALJs, including the authority to set qualification standards, to establish rules and procedures for hiring through competitive examination, and to create a register of qualified applicants from which other agencies can make appointments. 5 U.S.C. § 3301. Formerly, OPM managed the applicant pool for ALJ positions via ALJ Announcement 318, which set out the qualification standards for ALJs and described various aspects of the ALJ program including the testing process. OPM promulgated a Final Rule, effective April 19, 2007, which set out a new Qualification Standard for ALJs. *See* 72 Fed Reg. 12,947. The new Qualification Standard describes the ALJ application process as follows: (1) OPM screens applicants for meeting minimum qualifications; (2) OPM then invites those meeting the minimum qualifications to take a written exam and undergo an in-person evaluation; (3) OPM assigns each applicant a composite score and places those who meet or exceed a certain minimum score on a register (the "new register") for qualified applicants; and (4) agencies needing ALJs interview applicants from the new register. The Final Rule removed references to ALJ Announcement 318 and to the testing process, because, as OPM explained when the Rule was proposed, OPM sought greater flexibility to amend the process whenever appropriate without new rule-making. *Id.*; *see also* 70 Fed. Reg. 75,745, 75746 (Proposed Rule).

On May 4, 2007, OPM posted an ALJ Vacancy Announcement and Notice of Examination ("Vacancy Announcement") on its website to solicit individuals to apply to take the new ALJ examination so that OPM could create the new register. *See* Administrative Record

("AR")³ at AALJ000005-29. Until OPM created the new register around November 2007, federal agencies could continue to hire from the old register. *Id*. at AALJ000002-3. The Vacancy Announcement stated that applications would be accepted until the earlier of May 18, 2007, or 11:59 p.m. on the date that OPM received 1250 applications. *Id*. at AALJ000005-6. OPM received 1250 applications on May 8, 2007, and closed the Vacancy Announcement at the end of that day. *Id*. at 000002-3.

Plaintiffs are the Association of Administrative Law Judges ("AALJ"), seven administrative law judges, and three private practice attorneys — Mary Rita Luecke, Russell Doty, and Ned Richardson. The private practice attorneys allege that they did not receive advance notice of the May 4, 2007 Vacancy Announcement. Third Am. Compl. [Dkt. # 20] ¶¶ 29-34. They assert that they were qualified to be applicants for the ALJ position, that they were unable to submit an application, and that if the application period were reopened, they would apply for the position. *Id*. They allege that they were not able to apply "due to the early closing of the application submission period." *Id.* ¶¶ 29, 31, & 33.

Plaintiffs make four distinct claims, two regarding the Qualification Standard and two regarding the Vacancy Announcement. First, Plaintiffs allege that the Qualification Standard created an ad hoc "notice-based" process which replaced the "rule-based" process under ALJ Announcement 318. *Id*. ¶ 95. Second, Plaintiffs contend that OPM should have "professionally developed" the Qualification Standard, as required by 5 C.F.R. § 300.103. *Id*. ¶ 99. Third, Plaintiffs allege that OPM gave advance notice to federal agencies that it would be issuing the ALJ Vacancy

---

³ OPM filed the administrative record on July 16, 2008, and filed supplements on September 5, 20, and October 7, 2008.

Announcement and that such advance notice gave preferential treatment to agency lawyers because they were able to take leave time from work to undertake the time-consuming application process whereas private practice attorneys were not. *Id.* ¶¶ 102-104, 106-109. Finally, Plaintiffs allege that the numerical cutoff and the short time frame for acceptance of applications set forth in the Vacancy Announcement was arbitrary and capricious.

Plaintiffs challenge both the Qualification Standard and the Vacancy Announcement under § 706 of the APA. Plaintiffs seek an order of the Court: (1) declaring the Vacancy Announcement void; (2) requiring OPM to undertake notice and comment rule-making for the purpose of creating a new ALJ vacancy announcement; and (3) enjoining OPM from providing advance notice to agencies of future ALJ vacancy announcements. OPM moves for summary judgment, contending that Plaintiffs lack standing to bring certain of their claims and that all of the claims fail on the merits. Plaintiffs filed a cross motion for summary judgment.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.  ANALYSIS

#### A.  Plaintiffs Lack Standing to Bring Claims Challenging the Qualification Standard

Plaintiffs allege that OPM acted arbitrarily and capriciously by promulgating the new ALJ Qualification Standard.  Prior to the new Qualification Standard, OPM regulations described the internal examining process and procedures for ALJ selection.  OPM removed the detailed information from the regulation to give itself the flexibility to update the selection process "based on new technology and advances in the state of the art of examination methodology" without having to amend its regulations.  72 Fed. Reg. at 12951.  Under the new approach, OPM provides to prospective applicants a qualification standard, listing the desired qualifications for ALJs.  *Id*. at 12951-52.

Plaintiffs contend that the new notice-based process deprives the public of "transparency" and eliminates vital checks designed to ensure that the system avoids unequal

treatment and to ensure that individuals with superior qualifications are hired. Third Am. Compl. ¶ 96. Also, Plaintiffs allege that OPM failed to "find or make public any factual basis or professionally validated studies demonstrating that a [n]otice-based process was superior to a rule-based process" or that a "[n]otice-based process would avoid the unequal treatment" of federal attorneys and private practice attorneys. *Id*. ¶¶ 97-98. Plaintiffs also contend that OPM failed to professionally develop the Qualification Standard. *Id*. ¶ 99. Plaintiffs, however, have failed to demonstrate that they have standing to bring these claims because they point to no injury-in-fact traceable to OPM's new Qualification Standard.

A plaintiff's standing under Article III of the United States Constitution must be determined in order to establish the jurisdiction of a court to hear the case and reach the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *Grand Council of the Crees v. FERC*, 198 F.3d 950, 954 (D.C. Cir. 2000). "Standing focuses on the complaining party to determine 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Am. Legal Found. v. FCC*, 808 F.2d 84, 88 (D.C. Cir. 1987) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). To have Article III standing, a plaintiff must establish: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The injury alleged cannot be conjectural, hypothetical, remote, speculative or abstract; it must have occurred or be certainly impending. *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir.

1996). "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499.

Further, where a plaintiff asserts a procedural right (such as Plaintiffs' claim here that the Qualification Standard should have been professionally developed), he must show that he has suffered a personal and particularized injury — that the procedure endangers one of his concrete interests.  *Int'l Brotherhood of Teamsters v. TSA*, 429 F.3d 1130, 1135 (D.C. Cir. 2005). "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation — a procedural right *in vacuo* — is insufficient to create Article III standing."  *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1151 (2009).

None of the Plaintiffs — the AALJ, the seven administrative law judges, or the three private practice attorneys — has alleged that it has been injured by the failure to develop the Qualification Standard professionally or the implementation of the Qualification Standard.  Instead, they speculate that the Qualification Standard in the future will injure the public generally — *i.e.*, that the new process will result in unequal treatment and will not result in the appointment of people with the best qualifications.  This type of generalized grievance asserting speculative harm is insufficient to demonstrate standing.  *See Lujan*, 504 U.S. at 560-61; *Warth*, 422 U.S. at 499.

Plaintiffs belatedly attempt to demonstrate standing by alleging in their opposition brief that they challenge the substance of the Qualification Standard, not just the procedure by which it was created.  Plaintiffs do not identify how the new standards differ from the old standards, or, most critically, how any change has injured them.  Even the three private practice attorneys do not assert that they were injured due to the new Qualification Standard; they have not been affected by

the new Standard because they have not submitted ALJ applications under the new Standard. Plaintiffs' vague and conclusory allegations regarding the substance of the Qualification Standard are insufficient to overcome a motion for summary judgment. *See Greene*, 164 F.3d at 675 (in response to a motion for summary judgment, the nonmoving party may not rely solely on allegations or conclusory statements). The Court will grant OPM's motion for summary judgment regarding Plaintiffs' claims regarding the Qualification Standard.

### B. Notice Regarding Upcoming Vacancy Announcement Did Not Constitute Final Agency Action

Plaintiffs also allege that OPM acted arbitrarily and capriciously by giving advance notice of the Vacancy Announcement to federal agencies, thereby allowing agency attorneys to arrange leave time to engage in the time-consuming process of preparing an application. Third Am. Compl. ¶¶ 102-104; Pls.' Opp'n [Dkt. # 51] at 12. The three private practice attorneys who are Plaintiffs in this case allege that while they were qualified to be applicants for the ALJ position, they did not receive advance notice of the May 4, 2007 Vacancy Announcement, and the position closed before they were unable to submit an application. Third Am. Compl. ¶¶ 29-34. They specify that they were not able to apply "due to the early closing of the application submission period," *id.* ¶¶ 29, 31, & 33, implying that advance notice to agency attorneys caused those attorneys to submit applications quickly after the Vacancy Announcement was posted. As a result, Plaintiffs contend, the limit on the number of applications was reached within three business days — before Plaintiffs had time to apply.[4]

---

[4] AALJ and the administrative law judges who are Plaintiffs here do not have standing to bring this claim, as they have not shown any actual injury. The three private practice attorneys who are Plaintiffs do have standing to bring this claim.

On April 23, 2007, OPM sent letters to all applicants on the old ALJ register explaining that "OPM will soon issue a new ALJ vacancy announcement and will introduce a new ALJ examination to replace the existing register." AR at AALJ 0000039. The letter indicated that applicants who wanted to be considered for ALJ positions "will need to apply for the new announcement during the open period and successfully complete the new examination." *Id*. Then, on May 1, 2007, OPM Director Springer testified before Congress, stating:

> OPM has also now published its new qualification standards for ALJs, and we expect to open the ALJ vacancy announcement on our USAJOBS.gov website within the next few days with the goal of completing our initial review early this month. New ALJ candidates will need to submit their accomplishment records which OPM will review and score, followed by written demonstrations, which are also part of the scoring process.

*Id*. at AALJ0000037. Also on May 1, 2007, OPM issued a memo to the "Chief Human Capital Officers" at the federal agencies that employ ALJs, stating that "the new vacancy announcement will be posted in the next few days on OPM's USAJOBS website: http://www.usajobs.opm.gov/." *Id*. at AALJ000033. The next day, May 2, 2007, OPM emailed the memo to a distribution list that included the chief ALJs at each agency or their designees, professional associations, bargaining units representing ALJs, and various national bar associations. *Id*. at AALJ0000031-33. Recipients included Plaintiff AALJ; the Forum of U.S. Administrative Law Judges; the Federal Administrative Law Judges Conference; the Federal Bar Association; the Hispanic National Bar Association; the National Asian Pacific American Bar Association; the National Bar Association; the National Conference of the Administrative Law Judiciary of the American Bar Association; the National Conference of Women's Bar Associations; the National Native American Bar Association, and the following sections of the American Bar Association: the Commission on Mental and Physical

Disability Law, the Judicial Division Standing Committee on Minorities in the Judiciary, the Senior Lawyers Division, and the Administrative Law and Regulatory Practice Section. *Id.* at AALJ0000031.

Director Springer's testimony and the OPM memo do not constitute final agency action, a threshold requirement for an APA claim. The APA provides a cause of action to a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Review under the APA is limited to "final agency action" for which there is no other adequate remedy in a court. *Id.* § 704. An "agency action" is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). A final agency action "(1) marks the consummation of the agency's decision making process — it must not be of a merely tentative or interlocutory nature; and (2) the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Domestic Sec., Inc. v. SEC*, 333 F.3d. 239, 246 (D.C. Cir. 2003) (internal quotation marks omitted).

"Whether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable." *Fund for Animals, Inc. v. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006). Not everything an agency does constitutes final agency action reviewable by the courts. *Independent Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004). "Much of what an agency does is in anticipation of agency action. Agencies prepare proposals, conduct studies, meet with members of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs." *Fund for Animals*, 460 F.2d at 19.

OPM's notice that it planned to post an ALJ vacancy announcement "within the next

few days" does not constitute final agency action. The notice was not part of a rule, order, sanction or relief; it did not mark the consummation of a decision-making process; it did not determine the rights or obligations of any person or entity; and no legal consequences flowed from it. It was an anticipatory step, indicating OPM's plans to publish a vacancy announcement, and not the final step in a decision-making process. Because OPM's memo to agencies and professional associations was not final agency action, review is not available under the APA. *See Fund for Animals*, 460 F.2d at 18. Accordingly, summary judgment will be granted to OPM on Plaintiffs' advance notice claim.

### C.  Numerical Cutoff for Applications Was Not Arbitrary and Capricious

Finally, Plaintiffs challenge the time frame and numerical cutoff for acceptance of applications set forth in the ALJ Vacancy Announcement as arbitrary and capricious under the APA.[5] The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986).

---

[5] This claim is set forth in Plaintiffs' Opposition to the motion for summary judgment, s*ee* Pls.' Opp'n at 9-11 & 14-15, and is not set forth in the Third Amended Complaint. The Court treats the Opposition as though it included a motion for leave to amend the complaint to add this allegation, and grants the motion. *See* Fed. R. Civ. P. 15(a) (leave to amend is freely granted when justice so requires).

>An agency action may be arbitrary or capricious if:
>
>the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "[T]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id*. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

OPM's decision to use a numerical cutoff in conjunction with a time limitation for applications was not arbitrary or capricious. OPM surveyed agencies to determine the anticipated number of ALJ vacancies over Fiscal Years 2007 through 2009. AR at AALJ000093. OPM found that the range of anticipated ALJ appointments was between 43 and 343. *Id*. at AALJ000068 & 000071-72. OPM then determined that a register of between 500 and 600 qualified candidates was appropriate. *Id*. at AALJ0000205, 000212, & 000215-17. In order to create a register of this size, OPM decided that the applicant pool should be at least two times the number of qualified candidates needed, and thus OPM set the applicant pool at the slightly higher number of 1250. *Id*. at AALJ000205, 000212, & 000214-15. OPM projected that it would take twenty-four teams of two people each three weeks to review and rate 1250 applicants, at a cost of approximately $500,000. *Id*. at AALJ 000215 & 000219.

Plaintiffs concede that the usage of the numerical cutoff was reasonable based on the hiring needs and OPM resources, stating that they do not contend that usage of a numerical cutoff

"was by itself unreasonable." Pls.' Opp'n at 14; *see also id*. at 10. Plaintiffs instead tie their numerical cutoff claim to their advance notice claim. They contend that "OPM acted arbitrarily and capriciously in imposing a numerical cut-off in conjunction with providing advance notice to agency attorneys," *id*. at 14, and that "nothing in the record indicates that OPM considered the effect of imposing a numerical cut-off while also providing agencies advance notice of the opening of the Vacancy Announcement." *Id*. at 15; *see also id*. at 10.

As explained above, Plaintiffs' claim regarding the numerical cutoff standing alone fails because it was not arbitrary and capricious. The numerical cutoff claim as tied to the advance notice allegation also fails because both the government and the private sector received brief, very nonspecific "advance" notice. The administrative record indicates that OPM provided nonspecific notice that a vacancy announcement was imminent. Director Springer's May 1 announcement to Congress and OPM's May 1 memo stated only that OPM would post a vacancy announcement "within the next few days." Further, OPM provided this same information by email on May 2 to numerous professional and bar associations.[6] It then posted the vacancy announcement on Friday, May 4 and closed it on Tuesday, May 8. The one-day difference between generalized notice within

---

[6] Plaintiffs point to extra-record evidence in support of their advance notice claim. As the Court explained in its Order denying Plaintiffs' motion for discovery, review of claims that an agency acted arbitrarily and capriciously under the APA are usually confined to the administrative record. Order [Dkt. # 49] (Jan. 9, 2009) at 2. Discovery beyond the administrative record is permitted only upon a "strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Id*. (citing *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)). Because Plaintiffs have not demonstrated bad faith or improper motive or that the record is too spare to permit judicial review, review in this case is limited to the administrative record. Moreover, the extra-record evidence of "advance notice" that Plaintiffs rely on is actually after-the-fact notice. *See* Pls.' Opp'n [Dkt. # 51] at 6 (noting that on May 4, 2007, Chief Regional ALJ for the Social Security Administration emailed agency attorneys that the ALJ Vacancy Announcement *had been* posted).

the Government and generalized notice to the private sector does not a federal case make.

Plaintiffs attempt to bolster their claim of advance notice to agency attorneys by asserting that eighty of the 189 individuals hired by the Social Security Administration ("SSA") from the May 2007 register were former SSA attorneys. Information regarding who applied and who was hired is not relevant, as this information did not exist at the time OPM issued the challenged Vacancy Announcement and cannot be a basis for finding that OPM acted arbitrarily in issuing the Vacancy Announcement, giving slight and vague advance notice and setting a numerical cap on the number of applications to be accepted. The record is limited to the information before the agency at the time the challenged action was taken. *Fl. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).

OPM's imposition of a numerical cutoff in conjunction with nonspecific notice that an ALJ vacancy announcement was imminent was not arbitrary and capricious. OPM considered relevant data regarding the number of applications it needed to create a register of sufficient size to fill upcoming ALJ positions for Fiscal Years 2007-2009 and articulated an explanation establishing a rational connection between the facts found and the choice made. *See Bowen*, 476 U.S. at 626. Further, the OPM's nonspecific notice to agencies and numerous professional associations does not somehow make the numerical cutoff arbitrary. Summary judgment will be granted in favor of OPM.

## IV. CONCLUSION

For the reasons explained above, OPM's motion for summary judgment [Dkt. # 40] will be granted, and Count IV of the Third Amended Complaint will be dismissed. Plaintiffs' cross motion for summary judgment [Dkt. # 52] will be denied. This case remains stayed as to Counts I through III. A memorializing order accompanies this Memorandum Opinion.

Date: August 10, 2009                                    /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge